## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

DANIEL V. MARINO,

                     *Plaintiff,*

vs.

USHER (a/k/a Usher Terry Raymond IV);
SONY MUSIC HOLDINGS, INC.; EMI
MUSIC PUBLISHING, INC.; JAMES
SAMUEL HARRIS III; TERRY STEVEN
LEWIS; BOBBY ROSS AVILA, JR.;
ISSIAH AVILA, JR.; WILLIAM C.
GUICE; DANTE E. BARTON; DESTRO
MUSIC PRODUCTIONS, INC.;
DEFENDERS OF MUSIC; FLYTE TYME
TUNES; SUBLIME BASEMENT TUNEZ;
UR-IV MUSIC, INC.; WARNER-
TAMERLANE PUBLISHING CORP.;
MARK PITTS; BYSTORM
ENTERTAINMENT; TOMMY VAN
DELL; IN2N ENTERTAINMENT GROUP,
LLC,

                     *Defendants*

11 Civ. 6811 (PSD)

BEFORE THE HONORABLE
PAUL S. DIAMOND

## O R D E R

     AND NOW, this     day of           , 2013, upon consideration of the

Moving Defendants' Motion for Sanctions and any opposition thereto, it is hereby

     **ORDERED** that Moving Defendants' Motion is **GRANTED,** and it is further

     **ORDERED** that Moving Defendants are awarded the sum of $_____ as

sanctions against Attorney Francis A. Malofiy.

**IT IS SO ORDERED.**

_____

Paul S. Diamond, U.S.D.J.

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL V. MARINO,<br><br>*Plaintiff,*<br><br>vs.<br><br>USHER (a/k/a Usher Terry Raymond IV);<br>SONY MUSIC HOLDINGS, INC.; EMI<br>MUSIC PUBLISHING, INC.; JAMES<br>SAMUEL HARRIS III; TERRY STEVEN<br>LEWIS; BOBBY ROSS AVILA, JR.;<br>ISSIAH AVILA, JR.; WILLIAM C.<br>GUICE; DANTE E. BARTON; DESTRO<br>MUSIC PRODUCTIONS, INC.;<br>DEFENDERS OF MUSIC; FLYTE TYME<br>TUNES; SUBLIME BASEMENT TUNEZ;<br>UR-IV MUSIC, INC.; WARNER-<br>TAMERLANE PUBLISHING CORP.;<br>MARK PITTS; BYSTORM<br>ENTERTAINMENT; TOMMY VAN<br>DELL; IN2N ENTERTAINMENT GROUP,<br>LLC,<br><br>*Defendants* | 11 Civ. 6811 (PSD)<br><br><br><br>BEFORE THE HONORABLE<br>PAUL S. DIAMOND |

## MOVING DEFENDANTS' MOTION FOR SANCTIONS

Defendants IN2N Entertainment Group, LLC, Usher Raymond IV, Sony Music Entertainment, EMI April Music Inc., EMI Blackwood Music Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc., Bystorm Entertainment, Mark Pitts, Issiah Avila, Jr., Bobby Ross Avila, Jr., Sublime Basement Tunez, Defenders of Music, Flyte Tyme Tunes, James Samuel Harris III, Terry Steven Lewis and Thomas van Dell, by the undersigned, hereby move for sanctions against Attorney Francis A. Malofiy for the reasons set forth in the accompanying Memorandum of Law.

Respectfully submitted,

MANATT, PHELPS & PHILLIPS,
LLP

/s/Mark S. Lee
*Admitted pro hac vice*
Mark S. Lee
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Fax:  (310) 312-4224
Email:  mlee@manatt.com

ROGERS & ASSOCIATES, LLC

/s/Lance Rogers
Lance Rogers
25 Elliott Avenue
Bryn Mawr, PA 19010
Telephone:  (610) 649-1880
Fax:  (877) 649-1880
Email:  Lance@RogersCounsel.com
*Attorneys for Defendant*
*IN2N Entertainment Group, LLC*

JONATHAN D. DAVIS, P.C.

/s/ Jonathan D. Davis
*Admitted pro hac vice*
Jonathan D. Davis
Derek A. Williams
99 Park Avenue
Suite 1600
New York, New York 10016
Telephone:  (212) 687-5464
Fax:  (212) 557-0565
Email:  jdd@jddavispc.com
Email:  daw@jddavispc.com

FOX ROTHSCHILD LLP

/s/ Michael Eidel
Michael Eidel
Matthew Olesh
2000 Market Street, 20th Floor
Philadelphia, PA 19103

Telephone:  (215) 299-2000
Fax:  (215) 345-7507
Email:  meidel@foxrothschild.com

*Attorneys for Defendants Usher
Raymond IV, Sony Music
Entertainment, EMI April Music Inc.,
EMI Blackwood Music Inc., UR-IV
Music, Inc., Warner-Tamerlane
Publishing Corp., Mark Pitts, Bystorm
Entertainment, Issiah Avila, Jr., Bobby
Ross Avila, Jr., Defenders of Music,
Flyte Tyme Tunes, Sublime Basement
Tunez, James Samuel Harris III, and
Terry Steven Lewis*


Thomas van Dell, *Pro Se*
10900 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
Telephone: (310) 443-5332
Email:  vandell@hudcan.com

Filed Electronically
Dated:  October 8, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL V. MARINO<br><br>                                        *Plaintiff,*<br><br>vs.<br><br>USHER (a/k/a Usher Terry Raymond IV);<br>SONY MUSIC HOLDINGS, INC.; EMI<br>MUSIC PUBLISHING, INC.; JAMES<br>SAMUEL HARRIS III; TERRY STEVEN<br>LEWIS; BOBBY ROSS AVILA, JR.;<br>ISSIAH AVILA, JR.; WILLIAM C.<br>GUICE; DANTE E. BARTON; DESTRO<br>MUSIC PRODUCTIONS, INC.;<br>DEFENDERS OF MUSIC; FLYTE TYME<br>TUNES; SUBLIME BASEMENT TUNEZ;<br>UR-IV MUSIC, INC.; WARNER-<br>TAMERLANE PUBLISHING CORP.;<br>MARK PITTS; BYSTORM<br>ENTERTAINMENT; TOMMY VAN<br>DELL; IN2N ENTERTAINMENT GROUP,<br>LLC;<br><br>                                        *Defendants* | 11 Civ. 6811 (PSD)<br><br><br><br><br>BEFORE THE HONORABLE<br>PAUL S. DIAMOND |

## MOVING DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SANCTIONS

The Moving Defendants, [1] by the undersigned, respectfully submit this memorandum of law in support of their motion for sanctions against Plaintiff's attorney, Francis A. Malofiy ("Attorney Malofiy").

### I.      INTRODUCTION

Chief Justice Warren Burger once observed:

---

[1] The Moving Defendants are IN2N Entertainment Group, LLC, Usher Raymond IV, Sony Music Entertainment, EMI April Music Inc., EMI Blackwood Music Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc., Bystorm Entertainment, Mark Pitts, Issiah Avila, Jr., Bobby Ross Avila, Jr., Sublime Basement Tunez, Defenders of Music, Flyte Tyme Tunes, James Samuel Harris, III, Terry Steven Lewis, and Thomas van Dell.

> *[C]ivility is really the very glue that keeps an organized society from flying into pieces ... I submit that lawyers who know how to think but have not learned to behave are a menace and a liability, not an asset, to the administration of justice.* [2]

This motion addresses repeated misconduct by Attorney Malofiy. Defense counsel afforded him numerous verbal and written reminders to conform to required standards of behavior. But instead of heeding those reminders, Attorney Malofiy ignored them. During this litigation, Attorney Malofiy has:

- Misled an unrepresented defendant in direct violation of the Pennsylvania Rules of Professional Conduct;

- Repeatedly disobeyed this Court's direction prohibiting speaking objections during depositions; and

- Demonstrated lack of respect for the judicial process, this Court and his fellow lawyers by, among other things:

  o Verbally abusing defense counsel on a regular basis;

  o Repeatedly appearing significantly late to depositions;

  o Failing to comply with Magistrate Judge Rice's deadline for settlement statements when compliance would likely have resulted in Magistrate Rice's cancellation or delay of the settlement conference (thus saving multiple clients from out-of-town travel);

  o Telling defense counsel on the record at depositions that the Judge "***does not like you at all***" and that the Judge "***slammed you***" and will "***laugh***" at you.

Attorney Malofiy's conduct resulted in, among other things, an unnecessary trip to Denver, Colorado, to complete a deposition, greatly extended the length of multiple depositions and repeatedly subjected defense counsel and their clients to demeaning and

---

[2] "Encouraging Attorney Civility During Depositions: The Enduring Impact of *Hall v. Clifton Precision*," Pennsylvania Bar Association Quarterly, July 2013, *citing* Warren E. Burger, Delivery Of Justice 175 (1990).

inappropriate behavior.[3]  Attorney Malofiy's objectionable conduct continued at many of the expert depositions as well.

The Moving Defendants respectfully request that this Court impose monetary sanctions against Attorney Malofiy sufficient to reimburse them for the additional costs, expenses and attorney's fees they were forced to incur as a result of his misconduct, including the preparation of this motion, which can be presented either by written submission or at a hearing.[4]

## II.    BACKGROUND

Plaintiff Daniel V. Marino ("Marino") purports to allege copyright infringement and state law claims based on his alleged co-ownership of the song "Club Girl," later re-worked and recorded as the derivative work, "Bad Girl," which appears on Usher Raymond's 2004 *Confessions* album.  Plaintiff has sued his two other alleged co-writers of "Club Girl," Defendants Dante Barton ("Barton") and William Guice ("Guice"), as well as various entities and individuals who allegedly participated in recording, producing, selling and distributing "Bad Girl."

### A.    The Guice Statement And Deposition.

Defendant Guice failed to secure counsel or answer the Amended Complaint. Yet Attorney Malofiy was somehow able to obtain from him a signed statement against his own interests.  Guice did nothing when Plaintiff secured a default against him and

---

[3] Despite the Moving Defendants' frequent attempts to manage this issue with Attorney Malofiy without the Court's involvement during the condensed and active deposition schedule, they refrained from making this motion until after the settlement conference on August 29, 2013, to prevent it from impeding settlement discussions.

[4] Prior to imposing sanctions, this Court is required to provide "particularized notice" and an opportunity to be heard in order to satisfy the Due Process requirements of the Fifth Amendment. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 191 (3d Cir. 2002).

then voluntarily traveled, at Attorney Malofiy's expense, from his hometown of Aurora, Colorado, to Philadelphia to provide deposition testimony – against his own interests – without counsel.

As discussed and supported in Section III.B.1 below, the cause of Defendant Guice's curious behavior became clear during his Philadelphia deposition. Although named a "defendant" in this case, Guice mistakenly believed he had no personal liability and was only a "witness." Guice reached this conclusion after speaking with Attorney Malofiy.

Guice testified at his deposition that Attorney Malofiy prepared a statement for him to sign, sent it to him for signature, and then arranged and paid for his trip to the Philadelphia deposition, which Attorney Malofiy scheduled.

Contrary to the Pennsylvania Rules of Professional Conduct, Attorney Malofiy failed to advise Guice to secure counsel and failed to correct Guice's obvious misunderstandings about his and Attorney Malofiy's respective roles in this case.

Guice stopped the Philadelphia deposition before the Moving Defendants could complete their questioning when he wanted the opportunity to consult a lawyer after learning he was facing personal liability to Plaintiff. Had Attorney Malofiy properly advised Guice to consult an attorney before discussing the case with him and that Guice had the right to an attorney at his deposition, a second deposition would have been avoided.

**B.     Attorney Malofiy Repeatedly Engaged In Inappropriate Conduct Towards Defense Counsel And Disobeyed This Court's Direction.**

Attorney Malofiy's misconduct extends beyond his communications and dealings with Guice. As further discussed in Section III.B.2 below, he repeatedly disobeyed this

Court's direction prohibiting speaking objections at depositions and interfered with the Moving Defendants' ability to efficiently and effectively conduct many of their depositions.

In addition, Attorney Malofiy's conduct throughout the case – his frequent insults and discourteous behavior – was disrespectful to the judicial process, this Court and his fellow lawyers. He tried to mask his misconduct by repeatedly injecting into the record gratuitous and false statements that defense counsel were "playing tricks," engaging in "claptrap" and "hogwash," "lying" and being "sneaky."

To countenance Attorney Malofiy's misconduct would encourage him and possibly others to behave similarly in the future. His behavior far exceeded acceptable levels of zealous confrontation among professional adversaries.

## III.   ARGUMENT

### A.   Legal Standard.

"[S]anctions awards are discretionary rulings committed to the judges who are most familiar with the parties and their conduct." *Deville v. Givaudan Fragrances Corp.*, 419 Fed. App'x 201, 209 (3d Cir. 2011) quoting *Bowers v. Nat'l Collegiate Athletics Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007) ("The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court.").

This Court possesses a wide range of options for imposing sanctions. Rule 30(d)(2) and Rule 37(b) of the Federal Rules of Civil Procedure permit this Court to impose sanctions for improper conduct during a deposition and for failure to comply with a court order. In addition, 28 U.S.C. § 1927 provides for sanctions against counsel who, in "bad faith," "multiplies the proceedings in any case unreasonably and vexatiously" by

authorizing this Court to require them "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[5] *See Lewis v. Smith*, 480 Fed. App'x 696, 698 (3d Cir. 2012); *see also, In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008); *Ferguson v. Valero Energy Corp.*, No. 06-540, 2010 U.S. Dist. LEXIS 53198 at *22 (E.D. Pa. May 27, 2010) (McLaughlin, J.) (sanctioning attorney because of his failure to follow the court's rulings and holdings).

Finally, "[a] federal court may also impose sanctions under its inherent power to discipline attorneys who appear before it." *Ferguson*, 2010 U.S. Dist. LEXIS 53198 at *22. "The circumstances that justify sanctions under this inherent power include 'cases where the party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 278 F.3d 175, 188-89 (3d Cir. 2002)).  Courts may impose sanctions pursuant to this power even if the misconduct at issue is also sanctionable under statute or rules of court. *Id.*

### B.    Attorney Malofiy Engaged In Misconduct That Vexatiously Multiplied Discovery Proceedings.

#### 1.    Attorney Malofiy's Improper Dealings With An Unrepresented Defendant Required A Second Deposition In Colorado.

Pennsylvania Rule of Professional Conduct 4.3(b) provides:

> During the course of a lawyer's representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, *other than the advice to secure counsel*, if the lawyer knows or reasonably should know the interests of such person are or have a reasonable possibility of being in conflict with the interests of the lawyer's client.

---

[5] "[B]ad faith may be inferred when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *GMAC v. HFTC Corp.*, 248 F.R.D. 182, 197, fn. 18 (E.D. Pa. 2008) (Robreno, J.) (*citing In re Minniti*, 242 B.R. 843, 850 (Bankr. E.D. Pa. 2000)).

(Emphasis added).

And, Rule 4.3(c) goes on to provide:

> When the lawyer knows or reasonably should know that the unrepresented person *misunderstands the lawyer's role in the matter*, the lawyer should make reasonable efforts to correct the misunderstanding. (Emphasis added).

Attorney Malofiy violated both provisions of Rule 4.3 by misleading an unrepresented, adverse party to gain an advantage in the case.

In late 2011, Attorney Malofiy purported to serve Plaintiff's Amended Complaint on all Defendants. Defendant Guice received a copy, skimmed it, and called Attorney Malofiy (whose name and number appeared on the pleading) to discuss the lawsuit. *See* Transcript of May 2, 2013 Deposition of Defendant William Guice ("Guice Dep. 1") at 170, a copy of which is attached as Exhibit ("Ex.") A. Guice was later interviewed by Attorney Malofiy and eventually signed a document prepared and provided by Attorney Malofiy erroneously titled "Affidavit of Will Guice."[6] *Id.* at 158-70; a copy of the Statement is attached as Ex. B.

Three and a half months after Defendant Guice signed the Statement, Attorney Malofiy petitioned this Court to enter a default against Guice as a result of his failure to respond to the Amended Complaint. *See* Dkt. Doc. 31. This Court entered a default against Guice on June 14, 2012. *See Id.* Attorney Malofiy never told Guice that he had entered the default against him. *See* Ex. A at 191.

On April 11, 2013, Attorney Malofiy noticed the deposition of Guice for May 2, 2013, to take place in Attorney Malofiy's Philadelphia office. Attorney Malofiy coordinated and funded Guice's trip from Colorado to Philadelphia. *See Id.* at 144-48.

---

[6] While the document itself purports to be an "[a]ffidavit," it fails to include an oath as well as several other necessary components to qualify as an affidavit. Therefore, it will be referenced herein as the "Statement."

Attorney Malofiy started Defendant Guice's deposition by asking him a series of leading questions posed as "admonitions" designed to protect Attorney Malofiy rather than Guice:

> BY MR. MALOFIY:
>
> Q   All right.  So a couple things.  You understand I'm the attorney for Daniel Marino; correct?
>
> A   Yes.
>
> Q   All right.   You understand you're a defendant in this matter?
>
> A   Yes.

Ex. A at 9.  Minutes later, Attorney Malofiy led Guice through the same leading questions with the same results.  *Id.* at 19.  That afternoon it became obvious that, despite his answers, Guice did not fully understand Attorney Malofiy's questions.

Defense counsel learned during their examination of Guice that Attorney Malofiy failed not only to advise Guice to seek his own legal counsel, but also failed to properly disclose to Guice that his client, Plaintiff Marino, had interests in direct conflict with Guice's interests.

It became obvious from Guice's testimony that he misunderstood his own role in the case.  Guice did not know Plaintiff was seeking damages and other relief from him because he believed, incorrectly, that his role was limited to that of a "witness."  *See Id.* at 171-74.  Guice also believed that because he signed the Statement, he did not need to take any other action to answer the Amended Complaint.  *Id.*  He did not know that Attorney Malofiy had obtained a default against him.  *Id.* at 190-91.  Specifically, Guice testified:

BY MR. DAVIS:

Q       Well, I'll actually ask you, do you know what a defendant is?

A       Yes. Yes.

Q       Okay.  So you recognize you have been sued in this case?

A       Well, yeah. I was getting that.  Yeah, I was -- I -- I got that.

Q       And do you understand --

A       I got that part of it, yeah.

Q       Do you understand that Mr. Marino who's sitting across the table from me is seeking money from you?

A       Well -- well, that part -- I didn't know he was seeking it from me personally.

Q       Yeah.  He is seeking money from you and he's asking you to pay him monies that you received from the exploitation of Bad Girl.  Did you understand that?

A       No, I did not.

Q       Do you understand that he has made the same claim against Dante Barton?

MALOFIY:       Objection.  Different --

THE WITNESS:       I was under the impression that that's who it was.  I wasn't under the impression that -- that I -- yeah.

BY MR. DAVIS:

Q       *So all the time you were talking with Mr. Malofiy you didn't understand that Mr. Marino was suing you for money damages and for relief with respect to Club Girl and Bad Girl?*

MALOFIY:       Objection.

THE WITNESS:       *No, I didn't.  And that's -- and that's the -- when we started earlier, that's the level of my ignorance when it comes to --*

BY MR. DAVIS:

Q    Did you know anything you said to Mr. Malofiy was an
     admission against your interest potentially?

A    The only thing that I knew that I was saying was -- was --
     was the truth of --

Q    Did the --

A    -- was the truth, period.

Q    Did Mr. Malofiy explain to you what this Complaint meant
     before you started talking to him?

A    No.

Q    Did he explain to you that Mr. Marino had sued you for
     breach of contract, for fraud, for an accounting?

A    I wasn't -- *I was under the impression that it wasn't me.*
     You know, I was under the impression that it wasn't me. *I
     -- I was under the impression that it was -- that he was
     suing Usher. That's -- that was the impression I was
     under, because -- and, like I said, the ignorance of it, it's
     embarrassing, but, I mean, I got to be honest and be
     truthful. What I see is -- is, you know, Daniel Marino
     versus Usher, and then a lot of the stuff that I received
     after that, that's all it says.*

Q    Well --

A    *You know, a lot of paperwork -- I'm sorry -- stuff and all
     of that, I mean, all of the paperwork and contracts I
     received either in the mail and there were two that were
     hand-brought to me, it just said "Daniel Marino versus
     Usher" --*

Ex. A at 171-74 (emphasis added).

Attorney Davis then explored the Amended Complaint, asking Guice about each

count addressed against him.[7]  *Id.* at 174-92.  Guice testified that he did not understand

---

[7] At the Colorado deposition, Attorney Malofiy repeatedly called Attorney Davis a "liar" on the record
because he inadvertently included in a question a reference that Plaintiff sued Guice for "fraud," in addition
to the other claims.  Transcript of June 4, 2013 Deposition of William Guice ("Guice Dep. 2"), at 125, 155-
56, a copy of which is attached as Ex. C.  Guice did not recall the "fraud" reference, and Attorney Davis

that Plaintiff was seeking money damages from him and that Attorney Malofiy had not

mentioned it or advised him to consult an attorney[8]:

> Q    Did you understand that you were being sued for
>      contributory copyright infringement?
>
> A    No.
>
> Q    Did Mr. Malofiy explain that to you?
>
> A    No.
>
> Q    When he -- when he spoke to you, did he advise you to get
>      a lawyer?
>
> A    No.
>
> Q    Did he tell you that you had the opportunity or the choice to
>      get a lawyer to defend you in that case?
>
> A    No.
>
>                         * * *
>
> Q    You see where it says Count 3, vicarious copyright
>      infringement?
>
> A    Yes.
>
> Q    Again, underneath that it says "Marino versus," and I'm not
>      going to read the whole list, but it says Barton, Guice,
>      Usher and other names.  Did you understand that you were
>      being sued for vicarious copyright infringement by Mr.
>      Marino in this action?
>
> A    No.
>
> Q    And that he was seeking money damages from you in
>      relation to that claim?
>
> A    No.

---

never questioned Guice about a fraud claim once he recognized that it was alleged only against Defendant
Barton and his company. *Id.* at 155-56.

[8] Apparently the only time that Attorney Malofiy mentioned to Guice that he could speak to a lawyer was
after Malofiy had interviewed Guice and sent him the Statement to sign.  By then, Guice's rights had
already been prejudiced. Ex. C at 149-54.

Q       Did he advise you to get a lawyer to defend you with
        respect to that claim?

A       No.

Q       Turn to Page 64. You see where it says Count 4,
        constructive trust?

A       Yes.

Q       Underneath that it says, as in the previous counts, "Marino
        versus," and I think you can see yourself that your name
        appears in that list of names.

A       Yes.

Q       Did you understand that Mr. Marino was suing you for
        constructive trust?

A       No.

                        * * *

Q       Did he suggest to you that maybe you should seek counsel
        to defend yourself in this case?

A       No.

                        * * *

Q       Do you understand -- did you understand that at that time
        back in 2012 that Mr. Marino was suing you on this count
        [breach of songwriting agreement] for money damages?

A       No.

                        * * *

Q       Do you see at the top it says "relief requested"?

A       Yes.

Q       Did you happen to read this section of the Complaint when
        you skimmed it back in 2012?

A       No, I didn't.

                        * * *

                        12

Q    I'm sorry to interrupt you. At any time that you were discussing this with Mr. Malofiy back in 2012 did he suggest to you that you could seek a Pro Bono lawyer or any type of legal assistance with respect to the defense of this case?

A    No.

Q    Did he explain to you that there would be a court case regarding this matter?

A    No.

Q    Did he tell you you might be a witness in this case?

A    I believe -- yeah. I believe a wit -- the word "witness" came up during that first -- my statement and the Affidavit.

* * *

Q    Well, did you have any idea that by speaking to Mr. Malofiy that you could be prejudicing your rights?

A    No. I didn't know that.

Q    *He didn't give you any understanding that anything you said to him might be used against you in this case?*

A    *No. My understanding was that I -- I was a witness now.*

Q    Did you understand that when someone is served with a Complaint … and is a party to the action that an answer to that Complaint is required by law?

A    An answer?

Q    A response to the Complaint.

A    (No response.)

Q    Did he tell you that?

A    *I was under the impression that my Affidavit -- Affidavit was my response. As a witness, my testimony, my account of his participation in the song, that's --*

* * *

13

Q      *Mr. Guice, to get back on point, did he explain to you that
       by the statement that you were giving to him you were
       admitting liability to the causes of action, the claims that
       Mr. Marino had asserted against you in this case?*

A      *I see that now. At the time, no. No, I did not —*

                              * * *

Q      *It's a surprise to you, isn't it?*

A      *Wow, look at me. Yeah, it is. Yeah. It is a bit of a . . .*

Q      *Do you feel you were exploited?*

A      *Hmm. I just feel like I wasn't given all the information.*

                              * * *

Q      Did he ever tell you that he entered a default on the record
       that you had not answered the Complaint?

A      No.

Q      *Do you think he should have told you that?*

A      *Yes. Yes, yes.*

Q      Do you understand that because you have defaulted in the
       action, what he has left to do is move for a default
       judgment to enter judgment against you?

MALOFIY:          Which I haven't done; isn't that correct?

DAVIS:            Please do not interrupt my deposition.

MALOFIY:          Isn't that correct?

THE WITNESS:      Am I able to use the restroom, or no?

*Id.* at 177-91 (emphasis added).

Following a brief adjournment, at which time Guice (now visibly shaken)
collected himself, the deposition resumed.  Now aware of his actual role and potential
liability in the case, Guice indicated that he wanted to consult a lawyer before continuing
the deposition. *Id.* at 202-03. Attorney Malofiy supported this effort when he apparently

14

recognized it could not be stopped.

Guice's frustration and surprise then became ever more apparent in a final colloquy while the deposition was being formally suspended:

THE VIDEO OPERATOR:   At 2:55 we're adjourning the deposition
with witness, Mr. William Guice.

THE WITNESS:   ***Not a witness. A defendant now at this
point. I guess I've always been a defendant.***

*Id.* at 206-07 (emphasis added).

Shortly after the deposition was suspended, counsel engaged in a conference call with the Court. During the call, the Court provided an extension to complete Guice's deposition by a date certain to afford Guice the opportunity to secure counsel, and Attorney Malofiy agreed not to have any substantive contact with Guice. Attorney Malofiy violated that agreement several weeks later in an email, dated May 24, 2013, ostensibly addressed to Attorney Davis, but copied to Guice.[9] The email contained substantive comments about the case and condemned defense counsel.[10] A copy of this communication is attached as Ex. D.

Attorney Malofiy's May 24th e-mail was as damaging as the improper speaking objections he routinely made at depositions. The email attempted to influence Guice in advance of his continued deposition by, among other things:

(1) prejudicing Guice against defense counsel, asserting that Attorney Davis was not his "friend," was a "spin-doctor," was confusing Guice on "legal issues," and not being clear that Defendants were suing Guice for "MONEY DAMAGES" Ex. D;

---

[9] Guice was included on the email distribution list, and the email includes a note addressed directly to Guice by name.

[10] Attorney Malofiy sent this communication the day after Guice responded to Attorney Davis's email to schedule the continued Guice deposition. Ex. D.

(2) suggesting to Guice that the testimony he provided was important, would result in Plaintiff winning the case, and should not be changed (*i.e.*,"*Mr. Guice's words ended all hope you or your clients had (however remote) in being victorious in this case. It's over Mr. Davis – GAME OVER!*" *Id.* (emphasis added); and

(3) pandering to Guice by challenging the Moving Defendants to release Guice from liability on their indemnity claims, stating he "would like to entertain this with Mr. Guice's counsel and with all of counsel the possibility of such an arrangement." *Attorney Malofiy actually stated that the "deep pockets over at Sony" should "pay up" and that they "should leave Guice out of it."* Attorney Malofiy closed his communication by attempting to unilaterally cancel the continuation of Guice's deposition. *Id.*

Attorney Malofiy's May 24th email is troubling for many reasons, but first and foremost, because it was his actions that necessitated the termination of Guice's first deposition. According to Guice, Attorney Malofiy had "*played*" him, and now, Attorney Malofiy was attempting to avoid the consequences of his misconduct by wrongly placing criticism on defense counsel for Guice's predicament and seeking to prevent the deposition from resuming. Ex. C at 144-45 (Guice Dep. 2) (emphasis added). After submissions from both sides on May 28, 2013, the Court overruled Attorney Malofiy's objection to the continuation of the Guice deposition and granted the Moving Defendants until June 7, 2013 to complete that deposition.[11]

Attorney Malofiy's interference with the Moving Defendants' efforts to complete the Guice deposition is a prime example of his unreasonable and vexatious conduct that multiplied the proceedings. On May 3, 2013, the Court had already ordered that the parties had until May 31 to complete the Guice deposition. Rather than cooperate with

---

[11] Defense counsel learned of Attorney Malofiy's May 28th submission to the Court and Guice only because the Court's order to continue the deposition referred to it. Defense counsel immediately requested that Attorney Malofiy furnish them with a copy of his submission. In effect, Attorney Malofiy engaged in an *ex parte* communication with the Court, a practice prohibited by Rule 3.5(b) of the Pennsylvania Rules of Professional Conduct. This was not the only time that Attorney Malofiy's sent correspondence to the Court without concurrently sending copies to all counsel.

defense counsel and provide Guice more time to secure counsel (provided the Court approved of the extension), Attorney Malofiy tried to capitalize on Guice's difficulties to block Moving Defendants' ability to complete the deposition. By again challenging the Moving Defendants' right to depose Guice, Attorney Malofiy caused them needless cost and expense.

After considerable preparation, travel time and additional expense, Guice's deposition resumed on June 4, 2013. When Attorney Davis attempted to begin his examination of Guice, Attorney Malofiy commandeered the questioning by purporting to "set a record" and provide "admonitions" to the witness before Mr. Davis could begin:

> DAVIS:      Francis, please stop. You'll have your opportunity -
>
> MALOFIY:   Let me explain to you something. I can talk at this deposition. I can set a record, and you're not going to change that. I didn't fly out here to Colorado for this man not to be represented by counsel and then for you to ask him questions without providing him admonitions, so I want to ask him first --
>
> * * *
>
> DAVIS:      You can do what you want when your time comes up.
>
> MALOFIY:   No.
>
> DAVIS:      It is my deposition now. You passed the wheel to me at the Philadelphia deposition when you were completed. Admonitions were given to him at the beginning --
>
> MALOFIY:   That's right. Now it's a month later.
>
> DAVIS:      -- of the deposition and now. You don't know what I'm going to do. ***Please, Mr. Malofiy, would you stop interrupting --***
>
> MALOFIY:   Okay. Well, I'm going to set a -- I have to set a record, so this is what I am going to say.

| | |
|---|---|
| DAVIS: | *I haven't done anything yet.* |
| MALOFIY: | *I don't care.  I want to set a record because a lot happened and a lot of crap trap and hogwash from you.* |
| ROGERS: | Mr. Malofiy, please -- |
| MALOFIY: | *No. You just cut it out.* |

* * *

| | |
|---|---|
| ROGERS: | Mr. Malofiy, let Mr. Davis start.  If you have a problem with that, we can address it, but give the man a chance. |
| MALOFIY: | Here's what I'm going to say, I'm going to set a record, I'm going to state a couple of things on the record so it's clear.  And you can't prevent me from doing so. |

Ex. C at 7-9.  Attorney Malofiy purported to "set [his] record" and then tried to question

the witness, telling Attorney Davis "it's going to help you." *Id.* at 10.  The following

exchanged ensued:

| | |
|---|---|
| ROGERS: | Let him [Attorney Davis] finish his examination.  You can certainly have your opportunity.  There's a protocol for depositions.  I'm sure you're familiar with it.  Let's just follow it. |
| MALOFIY: | *Do you want to have Rule 408 communications with Mr. Guice right now?* |
| DAVIS: | Rule 4 --I don't know what you're talking about.  Francis -- |
| MALOFIY: | *Settlement negotiations -- would you like to have settlement negotiations based on this man's testimony from last --* |

* * *

| | |
|---|---|
| DAVIS: | All right.  This is stopping.  We're going to start the deposition. |

*Id.* at 10-11.

Attorney Malofiy's continued interruptions signaled to Guice that he was no longer Plaintiff's target:

> MALOFIY: I don't care about your plane. Let me say something. ***Based on Mr. Guice's prior testimony, it is clear he wasn't as involved as moving defendants were.*** And for that reason --
>
> DAVIS: This is improper.
>
> MALOFIY: No, it's not. ***And for that reason, plaintiff is filing an amended complaint because there are certain things that came out in his testimony that clearly, clearly indicate that he wasn't as involved as your moving defendants and he wasn't involved by counsel.*** So I want you to know, and I want --
>
> ROGERS: Francis --
>
> MALOFIY: No.
>
> ROGERS: -- you're coaching the witness.

*Id.* at 13 (emphasis added).

Attorney Malofiy later launched into a speech that Defendants "rooked" Plaintiff:

> DAVIS: At this point, you're interfering with our ability to continue this deposition.
>
> MALOFIY: ***I don't care.***
>
> ROGERS: Is that your intention?
>
> MALOFIY: You ended this? ***I don't care.*** If you want to think that, that's fine. I stated for the record what I'm going to do. That's what I'm going to do. ***You're sitting there with 15 defendants. Usher has $130 million. He makes $30 million a year. I'm going to take every penny of it from -- from -- from your moving defendants.***
>
> ROGERS: Are you going to let us proceed?
>
> MALOFIY: Proceed.

*Id.* at 14 (emphasis added). After Attorney Malofiy's speech, Guice testified that he first

became aware that he was a "defendant" and not a "witness" during "the first part of this deposition in Philadelphia" in May 2013. *Id.* at 144-45. Guice also testified that Attorney Malofiy's behavior had "confused" him, that Attorney Malofiy had made untrue representations to him, and that he felt "duped" or, in his words, "***played.***"[12] *Id.* at 144-45 (emphasis added).

Based on the foregoing, the Moving Defendants respectfully request that this Court sanction Attorney Malofiy under 28 U.S.C. § 1927 and award them costs, expenses and attorney's fees associated with Guice's Colorado deposition and for this motion.

> 2. **Attorney Malofiy Violated This Court's Direction By Engaging In Excessive Speaking Objections That Hindered The Effectiveness Of Depositions And Unreasonably And Vexatiously Multiplied Litigation And Costs.**

Attorney Malofiy engaged in continuous, lengthy speaking objections in direct violation of this Court's direction – even after being repeatedly reminded that he could not do so. Attorney Malofiy's conduct not only caused the depositions to run significantly longer, it sabotaged defense counsel's ability to conduct unimpeded lines of questioning.

At the fourth deposition in Los Angeles, counsel called the Court for guidance on the permissible scope of deposition objections.[13] The Court's guidance was clear:

---

[12] Despite his statements, Attorney Malofiy never dismissed Guice as a defendant in the case or filed a Second Amended Complaint. He misinformed Guice, created false expectations and delayed the deposition, which needlessly caused increased cost and expense to the Moving Defendants.

[13] Early on, Attorney Malofiy offered the following guidance on speaking objections: "In the course of depositions that I've gone through, which is hundreds, the way it works, at least in the Eastern District and in Pennsylvania, is an objection is noted for the record. And if I'm confused as to why you're making an objection, I ask you for grounds. That's how it's done." He added, "Now -- and that's how it should be done, and that's the proper way, just as if it was before a judge and a jury. It wouldn't -- you wouldn't -- you wouldn't state your objection, the reasons why. It would be strictly 'objection' and that's it, unless it was side bar or further information was needed." Transcript of April 11, 2013 Deposition of Bobby Ross Avila ("B. Avila Dep.") at 47-48, a copy of excerpts of which is attached as Ex. E.

| | |
|---|---|
| THE COURT: | If *either lawyer* makes an objection, speaking objection where he or she states *extended grounds for the objection and so is coaching the witness,* I'm really not going to be happy. I want you to state the objection and nothing more. No trial objection will be waived. Am I clear? |

* * *

| | |
|---|---|
| THE COURT: | If I have to order you into my courtroom to do the objection there, the attorney there in the transcript -- the attorney who necessitates this will pay for the travel and hours of the attorney who didn't. Am I being clear? |
| MALOFIY: | Yes, Judge. |
| DAVIS: | Absolutely, Your Honor. |

Ex. E at 57-58 (B. Avila Dep.) (emphasis added). This Court's instruction on speaking objections is consistent with applicable case law, which requires that objections be "succinct and verbally economical, stating the basis of the objection and nothing more." *Hall v. Clifton Precision*, 150 F.R.D. 525, 531 (E.D. Pa. 1993) (Gawthrop, J.); *see also Birdine v. City of Coatesville*, 225 F.R.D. 157, 158 (E.D. Pa. 2004) (Dalzell, J.). The standard governing deposition conduct is that "counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." Committee Notes (1993) to Rule 30(d)(3).

Attorney Malofiy, who demanded an even more restrictive view of permissible objections, then proceeded to repeatedly disregard this Court's direction.[14] The deposition transcripts are replete with Attorney Malofiy's speaking objections, offensive

---

[14] Attorney Malofiy once explained to counsel: "Objection to form in a deposition should merely be an objection without identifying or giving further information which could constitute as a speaking objection. It taints the testimony of the witness, and it also doesn't allow for true, accurate and the best testimony that can be had. *For that reason, it's plaintiff's position that if there is a stipulation for objection to form, it should strictly be 'objection' and not with additional guidance provided to a witness.*" Ex. E at 46 (B. Avila Dep.) (emphasis added).

speeches and insulting remarks – despite defense counsel's frequent reminders he was violating the Court's direction.  For example, at Plaintiff's deposition alone, Attorney Malofiy engaged in more than *65* speaking objections.[15]  Below are several examples:

> Q         Are you familiar with a company called Wavelab
>            Recording Studio?
>
> MALOFIY:  ***Objection, company.  You have to be very specific***
>            ***here.  You are playing games.  If it's a company,***
>            ***it's a company.  If it's an LLC it's an LLC.  If it's***
>            ***an Inc., it's an Inc.  Don't play games and call it***
>            ***something it is not.***
>
> DAVIS:    You are coaching the witness.
>
> MALOFIY:  You can't play tricks.

Ex. F at 52-53 (Marino Dep.).

A short while later, Attorney Malofiy interrupted again:

> Q         You were the only employees of the company?
>
> MALOFIY:  ***Objection.  Now you are getting tricky again there.***
>            ***Can't do that.  Can't do that.***
>
> DAVIS:    Mr. Malofiy, I warn you once more.  You are
>            making objections that are not permitted by the
>            order of the court.
>
> MALOFIY:  You are --
>
> DAVIS:    You are making speaking objections.
>
> MALOFIY:  You are telling him what he said, and it's wrong.
>            That is not what he said.
>
> DAVIS:    Repeat the question, please, so the witness
>            can answer.  You can object to the question, Mr.
>            Malofiy --

---

[15] Transcript of May 3, 2013 Deposition of Plaintiff Daniel V. Marino ("Marino Dep.") at 47, 50, 52, 62, 94, 113, 130, 140, 148, 149, 154, 156, 157, 158-62, 165, 168-70, 173, 180, 184, 188, 193, 201-02, 205-07, 212-13, 215-16, 238-41, 251, 258-61, 262, 269-70, 281, 284, 297, 307, 311, 317, 321, 325-28, 357-58, 362-63, 369-71, 372, 400-03, 406, 412-13, 418-22, 428-29, 430-32, 432-33, 452, 453-54, 459-60, 468, 485, 494, 500-01, 516, 523-24, 528, 529-30, 539-40, 550, 555-56, 558-59, 564, 568-69, 572, a copy of which is attached as Ex. F.

> MALOFIY:   *Don't be tricky, ask straight questions, get a*
> *straight answer. Isn't that what you want, the*
> *truth, or do you want something else? Do you*
> *want lies? Do you want to ask him a lied [sic]*
> *question and then you want him to answer a lied*
> *[sic] question?*

*Id.* at 62-63.

Attorney Malofiy continued to interrupt and insult Attorney Davis to hinder the deposition, using the excuse that defense counsel was asking the same questions repeatedly:[16]

> MALOFIY:   *He is answering your questions very thoroughly.*
> *That is the problem, you don't like the truth. You*
> *don't like the truth, it disturbs you. You've never*
> *seen the truth in a deposition. You've seen lots of*
> *lies by a lot of people. This is the truth.*
>
> DAVIS:   Is it true that you, Mr. Guice and Mr. Barton wanted
> Club Girl to be commercially exploited?
>
> A   Only if we were credited properly.
>
> Q   So the answer is yes?
>
> A   The answer is I didn't want to have it taken from
> me without being properly credited. That is my
> answer.
>
> Q   But you left it to Mr. Barton --
>
> MALOFIY:   *Objection. He answered your question*
> *thoroughly. You don't like the answer, too bad.*
> *The answer is the answer.*
>
> DAVIS:   Could you read back the question, please. -- (At
> this time the court reporter read back from the
> record as was requested.) --
>
> MALOFIY:   He answered that repeatedly.

---

[16] To the extent that a question was asked more than once or was varied, it was because of Plaintiff's failure or refusal to answer the question (or Attorney Malofiy's interference). Regardless, Attorney Malofiy should have simply objected, succinctly stating his grounds, instead of making speeches and offensive remarks about counsel.

DAVIS:        Please answer the question.

A             What is true is that I wrote the song, and the song
              was stolen from me.  That is what is true.

Q             Mr. Marino, please answer my question. Did you,
              Mr. Guice --

MALOFIY:      *He answered it five times now.*

DAVIS:        -- and Mr. Marino [sic] want Club Girl --

MALOFIY:      *Next question.*

DAVIS:        -- to be commercially exploited?

DAVIS:        Are you instructing him not to answer?

MALOFIY:      *I'm telling you, you asked the same question five
              times.  You ask it one more time, you get your
              answer, you go to the next question.*

DAVIS:        Please, are you instructing him not to answer?

MALOFIY:      You asked him five times.

DAVIS:        If you are not instructing him not to answer --

MALOFIY:      *Ask it one more time. You get the same answer,
              then you go to the next.*

DAVIS:        If you are instructing him not to answer, then I'll
              move on, but I'm not moving on until he answers
              the question.

ROGERS:       Mr. Malofiy, you are not letting Mr. Davis finish
              the question. I can't even hear him.

THE WITNESS:        *He has asked it five times. I gave him the
              same answer.*

ROGERS:       I can't even hear the second part of the question, so
              I don't know if he's asked it before or not.

MALOFIY:      On the transcript, it will show very clearly, just like
              the transcript from yesterday showed that Guice
              knew he was a defendant, just like you
              misrepresented that to the court. *So I don't want to
              hear your claptrap.  I don't want to hear these*

> *stories.  The transcript is the transcript.  You asked*
> *him five times the same question, he gives the*
> *same answer.  You don't like it, too bad.  That is*
> *the truth.  Now ask it one more time.*

*Id.* at 148-53 (emphasis added).

A short while later, Attorney Malofiy interrupted the deposition again:

> MALOFIY:   He answered this the last ten minutes, and it is the
> same answer he is going to give you for the next ten
> minutes or the next three hours.  *You are going to*
> *keep on asking the question trying to get an*
> *answer that wants to fit your lies and your stories,*
> *but the answer is the answer, the truth is the truth,*
> *and he'll give it to you again, Mr. Davis, because*
> *apparently you are confused by what happened*
> *here.  Give him the answer.*

*Id.* at 157-58 (emphasis added).

After a break, defense counsel tried, once again, to pursue the line of questioning

that Plaintiff had refused to answer, and Attorney Malofiy inserted himself again:

> DAVIS:   So subject to those caveats, you did give Mr. Barton
> authority to negotiate on your behalf for Club Girl?
>
> MALOFIY:   *Objection.  I think he answered this question*
> *before the break.  Now, after the break you can*
> *ask it again as many times as you want.  Do it 100*
> *times.  What you want is you want a little piece of*
> *information, but what you are getting is you are*
> *getting the truth, and you can't handle the truth.*
>
> DAVIS:   Mr. Malofiy, you are interrupting the answer.
> There is a question posed, and it is impermissible
> for you to do that.  I ask you not to do it.
>
> MALOFIY:   *What is happening here is you are going to sit*
> *here for three hours asking the same question, and*
> *you are going to try to break my witness, but he is*
> *not going to break because he knows what the*
> *story is, and the truth is always the truth.  There is*
> *only one truth.  Go ahead, answer the question.*

*Id.* at 168-70 (emphasis added).

Defense counsel reminded Attorney Malofiy numerous times during his client's deposition that it was impermissible to make speaking objections, but Attorney Malofiy persisted:

MALOFIY:   Let me just put my objection, this is asked --

DAVIS:   That is all you can do, is object. Why don't you understand that?

MALOFIY:   *Let me tell you something, I don't have to deal with this kind of BS. What is happening here -- what is happening here is you ask the same question for about an hour and a half. And then you keep on going to back to the question, and it is the same answer. All right. You are going to get the same answer every time you ask it.*

DAVIS:   Mr. Malofiy, I'm allowed to use my seven hours.

MALOFIY:   *Next question.*

DAVIS:   I'm allowed to use my seven hours as I choose fit. If I waste it, I waste it.

MALOFIY:   *No, I'll just shut it down. I'll shut it down. That is what I will do, I'll say, next question, and we'll go. That is what I'll do. That's what I do when games are being played.*

* * *

MALOFIY:   *This is nauseating -- wait. This is nauseating.*

DAVIS:   You are interrupting the answer.

MALOFIY:   *I am, because this is a waste of everyone's time.*

DAVIS:   Would you reread the question?

MALOFIY:   *I'm nauseated.*

*Id.* at 258-60 (emphasis added).

Attorney Malofiy also claimed that defense counsel was mischaracterizing Plaintiff's testimony. In such circumstances, Attorney Malofiy should have objected and

stated only that the question misstates prior testimony, raising the substance of the alleged mischaracterization for any trial. Instead, Attorney Malofiy made repetitive and disruptive speeches:

> MALOFIY: *I got to cut you off because you are*
> *mischaracterizing his testimony repeatedly. Not*
> *just once, not just twice, hours of testimony you*
> *are mischaracterizing. You can't do that. I'm not*
> *going to allow it to happen. All right. That is not*
> *what he said. He said it was a mistake in the liner*
> *credits, not that anyone did not recognize him as a*
> *song writer. Okay. You got to be clear when*
> *you're asking questions. What you are doing is*
> *playing games.*
>
> DAVIS: Mr. Marino --
>
> MALOFIY: *I'm tired of it. I'm tired of it. Everybody is tired*
> *of it.*
>
> DAVIS: Have you finished, are you finished with your
> speech?
>
> MALOFIY: *Are you finished with mischaracterizing the man's*
> *testimony and then trying to play games with*
> *words because you are a shrewd lawyer?*

*Id.* at 317-18 (emphasis added).

The above examples were taken from only one deposition in this case. Attorney Malofiy engaged in similar improper conduct in other depositions. For example, he wasted time by repeatedly accusing defendants of "*st[ea]l[ing]*" Plaintiff's work, offering *his own* testimony that defendants committed "*theft*," and professing his opinion that such theft was "*wrong*." Ex. C. at 158 (Guice Dep. 2); Transcript of May 14, 2013 Deposition of Wade Leak at 75-76, a copy of excerpts of which is attached as Ex. G (emphasis added). In addition, Attorney Malofiy acted in a disrespectful manner toward the corporate designees produced by Defendants Sony Music Entertainment (Wade Leak

and Thomas Pardo), Warner-Tamerlane Publishing Corp. (Gary M. Calderone), and the EMI entities (Vincent Famulari). *See, e.g.*, Transcript of April 17, 2013 Deposition of Gary M. Calderone ("Calderone Dep.") at 30-31, 57-59, 137-39, 165-66, a copy of excerpts of which is attached as Ex. H; Transcript of April 15, 2013 Deposition of Vincent Famulari ("Famulari Dep.") at 172, a copy of excerpts of which is attached as Ex. I; Transcript of April 19, 2013 Deposition of Thomas Pardo at 162, a copy of excerpts of which is attached as Ex. J.

Based on the foregoing, the Moving Defendants respectfully request that this Court sanction Attorney Malofiy and award them monetary damages to reimburse them for their additional costs, expenses and attorney's fees, including for this motion.

### 3.   Attorney Malofiy Has Shown Disrespect For This Court And His Fellow Lawyers.

The Pennsylvania Rules of Professional Conduct, Preamble at ¶ 5, provides: "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." Attorney Malofiy's conduct has not conformed to this standard.[17]

### a.   Attorney Malofiy Has Made Inappropriate Comments About This Court And Defense Counsel.

Attorney Malofiy has made inappropriate comments that serve no other purpose but to belittle the recipient in front of others, *e.g.*, counsel, witnesses, court reporters and

---

[17] His attitude about the legal profession (and those who serve it) is illustrated by a recent advertisement Attorney Malofiy placed in a magazine, a copy of which is attached as Ex. K. In the ad, Attorney Malofiy depicts himself driving into a courtroom in a hot rod with the label the "***Devil's Advocate***," ripping up the wood floor, bringing the presiding judge to his feet and leaving defense counsel in a cloud of smoke. *See Id.* While there are a number of disturbing images portrayed in this ad, defense counsel are depicted as spineless (one lawyer is holding a spine in his hand) and as infants (a baby's bottle and a toy rest on defense counsel's table). The disrespect shown to the court and defense counsel in this ad explains Attorney Malofiy's behavior in this case and his rejection of the decorum and solemnity that has defined the federal courts since the Judiciary Act of 1789.

videographers. While typically careful to make such comments off the record, in many instances, these comments were captured on the record.

      **i.**    **Attorney Malofiy Improperly Purported To Speak On Behalf Of This Court.**

During Guice's deposition in Denver, Attorney Malofiy denigrated Attorney Davis by stating:

> *"Listen. Cut it out. I'll call the judge. **He doesn't like you at all.**"*

Ex. C at 172 (emphasis added). This was not the only instance where Attorney Malofiy made inappropriate comments about the Court. During Plaintiff's deposition, Attorney Malofiy retorted to Attorney Davis (regarding his complaint about Attorney Malofiy's speaking objections):

> MALOFIY:    Listen, you littered my record with Van Dell. *You coached him to hell, and the judge came and slammed you. Slammed you.*
>
> DAVIS:    That is improper for you to make such statements on the record.

Ex. F at 206-07 (emphasis added).[18]

Later during the same deposition, Attorney Malofiy continued to make inappropriate representations about this Court:

> MALOFIY:    Again, these are all the same questions that have been asked and answered. I mean it is over and over and over and over again.
>
> ROGERS:    You are just drawing this out.
>
> MALOFIY:    *Well, we'll shut it down.*

---

[18] Attorney Davis did not represent Mr. van Dell at his deposition or at any time in this lawsuit, and he did not make any objection on the record until page 136 of the transcript. His limited objections were brief, proper and consistent with the Court's direction.

> ROGERS:   You are just drawing it out.
>
> DAVIS:   Francis, please, let him finish.
>
> MALOFIY:   ***Because the judge is going to laugh at this.***

*Id.* at 539-40 (emphasis added).

Attorney Malofiy's decision to speak for this Court to gain a tactical advantage during a deposition undermines the judicial process, the lawyers and this Court. His actions detrimentally impacted the effectiveness of the depositions.

### ii.   Attorney Malofiy Made Repeated Inappropriate Comments About Defense Counsel.

Attorney Malofiy has engaged in verbally abusive and inappropriate behavior towards Attorney Rogers and others, including *pro se* Defendant van Dell. For example:

> ROGERS:   Quit raising your voice, Francis.
>
> MALOFIY:   No, Lance. No. ***You're like a little kid with your little mouth.***

Ex. C at 91 (Guice Dep. 2) (emphasis added). During van Dell's questioning of Guice, Attorney Malofiy interrupted:

> MALOFIY:   No. He just answered that question, Tom. It was asked and answered and it's clear. ***This is bullshit.***

*Id.* at 146 (emphasis added). During one of his numerous speaking objections, Attorney Malofiy said to Attorney Davis:

> MALOFIY:   ***Objection. That is not what he said. He said the song was done. You are playing games now. Cut it out. This is the stuff that bothers me that drives someone up the wall. I never seen any lawyer do this so bad ever. He just said it.***
>
> DAVIS:   Mr. Malofiy, I will ask you to stop denigrating me during the course of this deposition.

Ex. F at 362-63 (Marino Dep.). At the same deposition, Attorney Malofiy questioned

Attorney Davis' veracity in the presence of the witness, an ongoing theme he pursued:

> MALOFIY: I want to make sure you're reading it correctly, **because there were issues with you stating things incorrectly.**
>
> DAVIS: Mr. Malofiy, I would appreciate you not to denigrate me in the course of this deposition.
>
> MALOFIY: **Listen, everyone gets treated the way they are supposed to be treated. When you haven't been straight with me, I'm going to call you out on it. That is what you have to understand you are dealing with me. All right. I'm not afraid to say it. What page?**

*Id.* at 281-82 (emphasis added).

In addition to denigrating defense counsel, Attorney Malofiy's behavior impacted testimony. In particular, Plaintiff watched the manner in which his counsel treated defense counsel and felt empowered and entitled to act similarly. This became another form of coaching the witness. For example, on at least *10* occasions in the Marino deposition, Attorney Malofiy accused Attorney Davis of trying to "***trick***" the witness and being "***sneaky***." *See* Ex. F at 51 ["Don't play tricks, Mr. Davis. No claptrap."], 53 ["You can't play tricks."], 62 ["Now you are getting tricky again there. Can't do that. Can't do that."], 63 ["Don't be tricky, ask straight questions…"], 188 ["You've been sneaky this whole litigation, you have."], 194 ["Let's not be tricky."], 284 ["You don't get it. That is fine, if you want to play tricks."], 363 ["…trying to trick him."], 406 ["…so, you are trying to be tricky again…"], 556 ["Now you are trying to play fast and loose and try to trick the man."].

Plaintiff eventually followed Attorney Malofiy's lead and began treating Attorney Davis in the same inappropriate manner during his deposition. *See Id.* at 161 ["I feel like you are tricking me…"], 163 ["I don't feel like you are being very straight with me, and I

feel like you are tricking me with your questions…."], 165 ["It is like you are tricking me."], 190 ["This is why I'm saying you're being tricky. I don't get you, man. Like, you are not being straight. For real, what is going on?"], 448 ["It has be [sic] a little bit tricky throughout the day with you."], 553 ["because I feel like you are being tricky with this question and I don't trust you…"], 559 ["You are being tricky."], 571 ["So now is this a trick thing you are trying…."].

Along the same lines, the following example shows how Attorney Malofiy coached Plaintiff to question Attorney Davis's character:

| DAVIS: | Are you telling me that what you stated in your complaint is not correct? |
| MALOFIY: | ***Here you go with your claptrap again.*** |
| THE WITNESS: | That is not what I said. My song was stolen from me, and you defend these people. |
| DAVIS: | There is no question. |
| MALOFIY: | Let him finish. |
| THE WITNESS: | ***And you are defending these people, and you're basically saying that stealing is acceptable.*** |

*Id.* at 156 (emphasis added).

Rather than preventing his client from engaging in inappropriate behavior, as he is required to do, Attorney Malofiy took *affirmative* steps ("let him finish") to enable and encourage the witness to make offensive comments about a fellow lawyer.[19] This conduct continued throughout the deposition:

---

[19] *See GMAC Bank*, 248 F.R.D. at 199 (imposing a nearly $30,000 sanction against a deponent and his attorney for misconduct by the deponent at a deposition and the attorney's failure to intercede and correct his client's behavior).

| | |
|---|---|
| DAVIS: | Did you ever try to e-mail him between 2004 and 2013? |
| MALOFIY: | *I mean, it is a silly question you are asking.* |
| DAVIS: | Did you? |
| MALOFIY: | *Childish.* |
| THE WITNESS: | *Mr. Davis, you are defending thieves and you are acting like somebody who should be hanging out with them at that point.* |

*Id.* at 321 (emphasis added).

Instead of fulfilling his duty to ensure an efficient and fair deposition, Attorney Malofiy's conduct prolonged the deposition and hindered defense counsel's ability to question the witness.

### iii. Attorney Malofiy Became Outwardly Aggressive.

At times during the Guice deposition, Attorney Malofiy became physically aggressive. For example:

| | |
|---|---|
| ROGERS: | Mr. Malofiy, please -- |
| MALOFIY: | No.  You just cut it out. |
| ROGERS: | Stop pointing your finger. |
| MALOFIY: | No. |
| ROGERS: | Lean back in your chair -- |
| MALOFIY: | No. |
| ROGERS: | -- and lower your voice. |
| MALOFIY: | No. |
| ROGERS: | There's no reason to treat counsel like this. |
| MALOFIY: | That's fine.  So I can set a record -- |

Ex. C at 8 (Guice Dep. 2); *see also id.* at 29-31, 155-56; Ex. H at 200-02 (Calderone

Dep.) (ripped exhibit and flung it at witness).

After *pro se* Defendant van Dell completed his questioning of Guice, van Dell summed up his deposition experiences with Attorney Malofiy, triggering an unprofessional response:

> MALOFIY:    Are you done, Tom?
>
> VAN DELL:   I'm done. And for the record, I would like to say that I feel -- this is subsequent to the LA depositions -- *that I feel menaced and threatened by Mr. Malofiy and his continual outbursts and seemingly anger-driven conduct today and also during the Los Angeles deposition really concerned me.*
>
> MALOFIY:    What I am concerned about is, *you rooked a man who wrote a song. You stole $200 million, you and the defendants, and he got nothing. And you're a cheat, and you cheated this man. You rooked him out of a song.* And everyone made money, including you, and you put it in your pocket.
>
> *And now you're sitting here trying to play spin doctor. And if I'm a little upset, I am.* And I'm going to represent my client. I'm going to be a zealous advocate. And that's what I'm required to do. *You took the money, you put it in your pocket, and you ran. And now you want to stick your head in the sand and pretend that no one knew that Mr. Marino wrote the song when you knew, and you told him that he was part of your publishing company. And that's the truth.*
>
> VAN DELL:   Those are all false accusations.
>
> MALOFIY:    No, they're not. They're not, Tom.
>
> VAN DELL:   They are.
>
> MALOFIY:    *All right.  Take the money and run, you know? And then throw this guy under the bus when he wrote the song.  That's the way you should act. That's real proper.*

Ex. C. at 146-47 (emphasis added).

The following colloquy further illustrates Attorney Malofiy's defiant attitude during depositions:

> DAVIS:      Mr. Malofiy, I'd prefer you to use a different tone
>              with me, please.
>
> MALOFIY:    I'm not (sic) going to use the tone I use, and *you*
>              *are not going to adjust my tone and my volume*
>              *knob over here.  All right.*

Ex. F at 201 (Marino Dep.) (emphasis added).[20]

Not surprisingly, following Defendant Guice's deposition, the Colorado-based stenographer expressed concern about Attorney Malofiy's conduct and asked defense counsel if his conduct was the norm on the East Coast.

### b.  Attorney Malofiy's Disrespectful Conduct Went Beyond Inappropriate Comments.

Attorney Malofiy's misconduct was not limited to his inappropriate comments to defense counsel, witnesses and support personnel.  An example is Plaintiff's deposition – which was noticed, well in advance, for May 3, 2013, at 9:30 a.m.  Defense counsel were ready to begin at the appointed time.  Attorney Malofiy and his client were absent, causing defense counsel to try and contact him by email and telephone.  At 10:30 a.m., Attorney Malofiy was finally reached by telephone.  He explained that he was running late and was *walking* with his client from his office (11th and Walnut Streets) to the deposition location (20th and Market Streets).  *See* Ex. F at 15-16 (Marino Dep.).

Although Attorney Malofiy *claimed* he sent an email to all defense counsel that explained he was going to be late, *none* of the attorneys received it.  *Id.* at 16-18. Attorney Malofiy then failed to produce the email upon request.  *Id.* Moreover, Attorney

---

[20] Attorney Malofiy frequently raised his voice at witnesses.  *E.g.*, Ex. H at 224 (Calderone Dep.); Ex. I at 131 (Famulari Dep.).

Malofiy walked the mile between his office and where the deposition was held even though he knew defense counsel, the court reporter and the videographer were waiting (and charging for their time).

Attorney Malofiy's conduct demonstrated disrespect for all concerned and the administration of justice. The deposition started nearly two hours late without so much as an apology from Attorney Malofiy for his lateness or failure to contact defense counsel. The deposition did not end until well into the evening. His conduct forced the Moving Defendants to incur additional costs, expenses and attorney's fees.[21]

In yet another example of Attorney Malofiy's disregard for this Court and defense counsel, his failure to abide by Magistrate Judge Rice's Conference Notice doomed the August 29, 2013 settlement conference. Under the Notice, each party was to submit a Settlement Conference Summary no later than August 19, 2013. It stated: "***Please notify the Court if settlement is not a real possibility***." The Moving Defendants fully complied. Magistrate Rice began the settlement conference by disclosing that Attorney Malofiy failed to submit his Settlement Conference Summary until the morning of the conference. Plaintiff's demand had increased four-fold, from $2.5 million to $10 million (despite the fact that this Court, in April, limited any damages for infringement to the three years prior to the filing of the Complaint).

Because of Plaintiff's substantially increased settlement demand, Judge Rice expressed skepticism about whether he would have proceeded with a settlement conference if he had known Plaintiff's demand in advance of the conference. He asked

---

[21] At several depositions, even some he noticed, Attorney Malofiy made defense counsel, witnesses and court reporters/videographers wait because he was either late or was getting himself ready for the deposition (*e.g.* the depositions of Bobby Avila, Wade Leak, James Harris and Thomas van Dell). These delays varied, but, in some instances, exceeded an hour.

Moving Defendants whether there was any point to continue. Having spent the substantial time and money to attend the conference (many of whom traveled from New York and Nashville), the Moving Defendants thought it important to try and explore a reasonable resolution of the case. After a brief conference with each side, Magistrate Rice dismissed the parties, concluding that it would not be worthwhile to continue. The settlement conference lasted just under a half hour.

Based on the foregoing, the Moving Defendants respectfully request that this Court sanction Attorney Malofiy and reimburse them for their additional costs, expenses and attorney's fees, including for this motion.

## IV.   CONCLUSION

When confronted about his conduct at the Marino deposition, Attorney Malofiy responded, "I am very comfortable with my actions." Ex. F at 241 (Marino Dep.). That statement is troubling. Zealous advocacy is important, but attorneys must be able to work together and behave professionally.

Attorney Malofiy has misled an unrepresented party in direct violation of the Rules of Professional Conduct, disregarded this Court's direction regarding speaking objections, and demonstrated a lack of respect for this Court, defense counsel, witnesses and support personnel.

Based on the foregoing, the Moving Defendants respectfully request an order from this Court imposing sanctions against Attorney Malofiy.

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

/s/Mark S. Lee
Mark S. Lee

37

*Admitted pro hac vice*
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Fax:  (310) 312-4224
email:  mlee@manatt.com

ROGERS & ASSOCIATES, LLC

/s/Lance Rogers
Lance Rogers
25 Elliott Avenue
Bryn Mawr, PA 19010
Telephone:  (610) 649-1880
Fax:  (877) 649-1880
Email:  Lance@RogersCounsel.com

*Attorneys for Defendant*
*IN2N Entertainment Group, LLC*

JONATHAN D. DAVIS, P.C.

s/ Jonathan D. Davis
*Admitted pro hac vice*
Jonathan D. Davis
Derek A. Williams
99 Park Avenue
Suite 1600
New York, New York 10016
Telephone:  (212) 687-5464
Fax:  (212) 557-0565
Email:  jdd@jddavispc.com
Email:  daw@jddavispc.com

FOX ROTHSCHILD LLP

s/ Michael Eidel
Michael Eidel
Matthew Olesh
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone:  (215) 299-2000
Fax:  (215) 345-7507
Email:  meidel@foxrothschild.com

*Attorneys for Defendants Usher*
*Raymond IV, Sony Music*

*Entertainment, EMI April Music Inc.,*
*EMI Blackwood Music Inc., UR-IV*
*Music, Inc., Warner-Tamerlane*
*Publishing Corp., Mark Pitts, Bystorm*
*Entertainment, Issiah Avila, Jr., Bobby*
*Ross Avila, Jr., Defenders of Music,*
*Flyte Tyme Tunes, Sublime Basement*
*Tunez, James Samuel Harris III, and*
*Terry Steven Lewis*

Thomas van Dell, *Pro Se*
10900 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
Telephone:  (310) 443-5332
Email:  vandell@hudcan.com

Filed Electronically
Dated:  October 8, 2013