UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DANIEL V. MARINO,
*Plaintiff*

v.

USHER, *et al.,*
*Defendants*

No.: 11-cv-06811

BEFORE THE HONORABLE
PAUL S. DIAMOND

PLAINTIFF'S RESPONSE TO DEFENDANTS'
JOINT MOTION FOR SANCTIONS

## I.   PREAMBLE

The purpose of the law is the pursuit of truth and justice. It is undisputed that Dan Marino wrote, recorded, produced, and engineered *Club Girl* and *Bad Girl*. However, even given the simple fact that all the defendant songwriters agree that Mr. Marino should be credited, the lawyers want to use a legal technicality to deny what is right.

This is a simple matter of right versus wrong. Unfortunately, Attorney Davis has been untruthful in his representation of Defendants throughout the course of this litigation; the motion before the court is more of the same. Mr. Malofiy's conduct, in contrast, is grounded in truth and he does not sugarcoat objective facts when dealing with Mr. Davis, something that is apparently a change of pace for defense counsel. Defense counsel's motion even states on page three, with respect to the Wil Guice matter, that "Attorney Malofiy was somehow able to obtain a signed statement [from Wil Guice] against his own interests." Mr. Davis is evidently unable to understand why a person would tell the truth when the truth does not help his finances. It is a nihilistic view of the world, one that Mr. Malofiy rejects absolutely.

This motion for sanctions—obviously penned and ghostwritten by Mr. Davis, although signed and submitted by all parties—continues Mr. Davis's history of attempting to manipulate

these proceedings, divert attention from Mr. Marino's grievances, and engage in the sophomoric gamesmanship of a well-financed attorney with a vested interest in delaying these proceedings. As Mr. Malofiy will demonstrate at length, this motion is filled with untruths, misdirection, material omissions, and outright lies.

There are several key issues for Your Honor to keep in mind as Plaintiff's counsel responds to this motion for sanctions:

- **MISDIRECTION** – This motion is designed to misdirect the Court's attention away from the motion for summary judgment and draw attention to Attorney's Malofiy's conduct, which is irrelevant to the factual and legal issues before the court.

- **UNTIMELY AND WAIVED** – This sanctions request was raised *months* after the fact and is therefore waived. Furthermore, should the court be so inclined, this request—especially given that it was timed to coincide with Plaintiff's answer to summary judgment—should warrant the imposition of sanctions for discovery abuse.

- **THE GUICE ISSUE** – The issues surrounding Wil Guice's affidavit and deposition have already been considered by the court and need no further consideration. **The matter was fully heard and summarily dismissed by the court.**

- **ZEALOUS ADVOCATE** – Plaintiff's counsel has a duty to zealously protect his client's interests, especially in light of defendants' clearly immoral and illegal behavior.

- **DEFENSE COUNSEL'S CONDUCT IS UNETHICAL-** Defendant counsel's legal advice to Mr. Guice, and material misstatements of fact, are punishable under the Pennsylvania Rules of Professional Conduct (RPC).

## II. THIS MOTION IS UNTIMELY, STRATEGICALLY FILED TO COINCIDE WITH THE DUE DATE FOR PLAINTIFF'S ANSWER TO THE MOTION FOR SUMMARY JUDGMENT, AND THE COURT SHOULD NOT ENTERTAIN DEFENSE COUNSEL'S PAROXYSMS OF FAUX OUTRAGE

This motion is nothing more than a blatant tactic to harass Plaintiff's counsel. In the first place, Defense counsel has already written to the judge, *twice*, concerning Wil Guice's affidavit and depositions. Mr. Malofiy responded with a ten-page letter copiously detailing the misrepresentations by defense counsel that bordered on outright lies. See Malofiy Letter of May 28, 2013, attached as Exhibit A. Defense counsel are crying about a dispute that **occurred in May 2013, fully over a *half year ago*, about a defendant who is not their client.**

In Singer v. Gates Rubber Company, 1987 U.S. Dist. LEXIS 6671 (E.D. Pa., July, 22, 1987) the court imposed sanctions **against** a defendant who had moved for sanctions, where the motion for sanctions was filed just two weeks after the plaintiff's counsel had submitted a letter explaining why the moving defendant's objections were unfounded. Here, the facts are far more extreme: **the moving defendants filed these sanctions nearly half a year after Mr. Malofiy submitted a detailed letter to the Court explaining his contacts with Mr. Guice, to the apparent satisfaction of the Court**. These same matters are now frivolously raised for no reason other than to burden the time and resources of this Court and Plaintiff's counsel. It would not be inappropriate for this Court to find, as did the Singer court, that the moving Defendants' motion for sanctions is itself a sanctionable abuse of discovery. See also, Alliance to End Repression v. City of Chicago, 899 F.2d 582, 583 (7th Cir. 1990) (stating that motions for sanctions filed for improper purposes are themselves sanctionable).

So why did defense counsel file this motion on October 8, 2013, well after the close of discovery and many months after Mr. Malofiy's alleged transgressions? They say they did not want to interfere with negotiations before the settlement conference on August 29, 2013. Def. Sanctions Brief, p.3 n.3. Unfortunately, this is, yet again, **clearly untruthful**.

**First**, they *already raised* their first issue complained about, Guice's deposition, in May 2013, so it is patently untrue that they were worried about impeding settlement negotiations. If the court recalls, Defendants never made any type of **serious offer** for settlement—and never intended to—so it is thoroughly absurd for them to tell Your Honor that they waited to file this motion to avoid impeding settlement negotiations. To be clear, to date Defendants have offered Plaintiff *zero dollars*.

**Second**, it is no coincidence that defense counsel filed this motion on **the exact day necessary** to make a response due within twenty-four hours of October 21, 2013, the very same day the answer to their Motion for Summary Judgment was due.[1] Defense counsel was no doubt aware that Mr. Malofiy also had three other major motions and briefs due that same day in another case. Given that Mr. Malofiy is essentially a one-man shop, it would have been rather difficult to write five briefs for the same due date. The court kindly granted Mr. Malofiy an extension to respond to this transparent attempt to force him to engage in busy work.

This motion is a ridiculous attempt by defense counsel to burden Mr. Malofiy with fake work; it abuses the sanction remedy and should be recognized for what it is: hogwash and claptrap.

---

[1] Defense counsel says they did not want to impede settlement negotiations.  Then why did they wait until October 8, 2013, over a month after the settlement conference date passed to file this motion?  Because **the only purpose of this motion** is to occupy the time of Attorney Malofiy could spend explaining the damning facts of this case to Your Honor.

### III. Mr. Malofiy was Completely Honest and Upfront with Wil Guice, and Mr. Davis's Behavior—Not Mr. Malofiy's—Violated the Rules of Professional Conduct, Thereby Vexatiously Multiplying Discovery Proceedings

This motion, being filed by attorneys accustomed to dishonesty, does not even make it past its second substantive sentence, Def. Sanctions Brief, p.3, without committing a lie to paper. Defense counsel writes "Defendant Guice failed to secure counsel or answer the Amended Complaint. Yet Attorney Malofiy **was somehow able to obtain from him a signed statement against his own interests**." (emphasis added). The truth, which defense counsel has been made aware of repeatedly, see, e.g., Exhibit A to 5/28/13 Malofiy Letter, is that Mr. Guice ***reached out to Mr. Malofiy*** after reading the Complaint.[2] Mr. Guice reached out to him because Mr. Guice thought it was wrong that Daniel Marino, who Guice knows is an author of *Club Girl* and *Bad Girl*, was ripped off in such an unjust manner by defense counsel's clients. Mr. Guice, throughout this entire dispute, **has never once changed his opinion that Daniel Marino wrote *Club Girl* and *Bad Girl* that Guice handed over an exclusive license in that song to Defendants**. Note how the phrasing of the sentence quoted *supra* practically drips with disbelief that a defendant in a lawsuit would ***ever*** tell the truth. This says far more about defense counsel's approach to the law than anything about Mr. Malofiy.

The specific rules defense counsel claims Attorney Malofiy violated reveal that Mr. Malofiy did nothing wrong and that defense counsel completely misunderstands the rules cited.

---

[2]      Defense counsel also knew about this because it was discussed in detail at Mr. Guice's Second Deposition. Second Guice Depo, at pp.147–54. Defense counsel even notes late in its brief, Def. Sanctions Brief, at p.7, that it was Mr. Guice who reached out to Mr. Malofiy. This type of misleading language is not acceptable argumentation, lies by omission, and is typical of defense counsel's litigation tactics.

A.   ATTORNEY MALOFIY COMPLIED IN EVERY WAY WITH RULE OF
PROFESSIONAL CONDUCT 4.3(B), AND MR. DAVIS'S CONDUCT
CLEARLY VIOLATED IT

Rule 4.3(b) states that an attorney "shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interests of such person . . . are in conflict with interests of the lawyer's client."

Attorney Malofiy is surprised that defense counsel cites this rule for two reasons. **First**, although defense counsel repeatedly asserts in their brief, see, e.g., Def. Sanctions Brief, at p.8, that Mr. Malofiy did not advise Mr. Guice to talk to an attorney, **defense counsel are lying through their teeth**. Defense counsel know with absolute certainty that Mr. Guice *was* so advised because they have previously been provided with Exhibit A to Mr. Malofiy's 5/28/13 Letter, detailing email exchanges between Mr. Malofiy and Mr. Guice. **These emails were also discussed in Mr. Guice's second deposition.** Guice Depo. 2, pp.149–54.

**Mr. Guice was served with a complaint and amended complaint, with a notice on the front page informing him of his rights.** In those email exchanges, Mr. Malofiy, in writing, informed Mr. Guice **to seek the advice of an attorney** if he wanted to.[3] Mr. Guice also stated in his second deposition, contradicting his original statement in his first deposition, Guice Depo. 1, at p.177–78, that Mr. Malofiy told him to speak to counsel, id. at p.150. Defense counsel, however, in their motion only quote Guice's incorrect statement that he did not initially remember Attorney Malofiy telling him to talk to counsel, Guice Depo. 1, completely omitting that this was later shown to be simply untrue. **This is highly unethical behavior and a violation of Rule of Professional Conduct 3.3(a)** ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal.") to present such an obvious misstatement of fact to the court. It is clear that defense counsel knew full well that Guice was informed to obtain

---

[3]   Guice said in his deposition that he was never told to seek counsel. This is false, and Mr. Guice's bad memory has no bearing on whether Attorney Malofiy satisfied his responsibilities under Rule 4.3(b).

counsel and that he later remembered such an admonition from Attorney Malofiy. The foundation of defense counsel's sanctions motion rests on this lie, and without it the logic supporting the motion crumbles.

**Second**, in his panicked rush to somehow close the gaping hole Mr. Guice's testimony opened up in his clients' defense, ***Mr. Davis* violated Rule 4.3(b)**. The rule specifies that an attorney with interests opposed to a person not represented shall not give any advice to that person, other than to seek a lawyer. RPC 4.3(b). Mr. Davis and the other defense counsel repeatedly suggest in their brief, and in Mr. Guice's deposition, that Attorney Malofiy should have advised Mr. Guice of the law—e.g., "Did Mr. Malofiy explain to you [Mr. Guice] what this Complaint meant before you started talk to him?" Def. Sanctions Brief, at p.10 (quoting Guice Depo. 1, pp.171–174).

This is an indication that defense counsel do not understand the rule they cite. If they did understand it they would know that **Mr. Malofiy is explicitly forbidden by the Rules from doing what they asked.** Mr. Malofiy carefully obeyed the rule by not giving legal advice to Mr. Guice. ***Mr. Davis was not so careful***. Although his client's interests are in direct opposition to those of Mr. Guice, **Mr. Davis saw fit throughout Mr. Guice's deposition to repeatedly inform him of the law and advise him concerning several legal matters**:

> "Did you know anything you [Mr. Guice] said to Mr. Malofiy was an admission against your interest potentially?"

> "[Mr. Malofiy] is seeking money from you and he's asking you to pay him monies that you received from the exploitation of Bad Girl. Did you understand that?"

"So all the time you were talking with Mr. Malofiy you didn't understand that Mr. Marino was suing you for money damages and for relief with respect to Club Girl and Bad Girl?"[4]

"Did [Mr. Malofiy] explain to you [Mr. Guice] that Mr. Marino had sued you for breach of contract, **for fraud**, for an accounting?"[5]

"Did you understand that you [Mr. Guice] were being sued for vicarious copyright infringement by Mr. Marino in this action? And that he was seeking money damages from you in relation to that claim?"

"[D]id [Mr. Malofiy] explain to you [Mr. Guice] that by the statement that you were giving to him you were admitting liability to the causes of action, the claims that Mr. Marino had asserted against you in this case?"

See Def. Sanctions Brief, at pp.9–14. It is altogether shocking that Mr. Davis would quote himself, at length, so blatantly flouting the Rules of Professional Conduct by coaching a witness his clients are suing.[6] It should be noted that Mr. Guice was never sued for fraud, this was simply an attempt by Mr. Davis to coach the witness by throwing in more visceral language. Notably, this complaint about Mr. Guice's testimony is not brought by Mr. Guice or his counsel, it is brought by attorneys who do not represent him, who retain clients with interests diametrically opposed to his, and who are **feigning outrage** because they realize the damaging import of Mr. Guice's words.

---

[4]      Mr. Davis attempted to portray himself as the good guy to Mr. Guice to turn Guice against Mr. Malofiy and ultimately retract what he wrote in the affidavit. Mr. Malofiy never informed Mr. Guice of the content of the complaint because he is specifically prohibited from doing so by the RPC. In fact, although completely omitted by Mr. Davis, Mr. Davis's clients are also seeking money from Mr. Guice. Mr. Davis's conduct violates RPC 4.3(a) which forbids a lawyer from stating or implying that he is disinterested in the matter.

[5]      **Mr. Marino never sued Mr. Guice for fraud.**

[6]      Mr. Malofiy warned Mr. Davis on May 24, 2013, that Mr. Davis's unilateral contact with Mr. Guice violated the Pennsylvania Rules for Professional Conduct, rules defense counsel now cites to support their own case.

Mr. Davis focused on Mr. Malofiy's alleged wrongdoing at the first Guice Deposition, and coached the witness, because he realized there was literally no relevant question he could ask Mr. Guice to qualify or change what Guice said about the authorship of *Club Girl* and the exclusive nature of the contracts he signed. This is probably why defense counsel never sought the deposition of Mr. Guice in the first place. Even after all of defense counsel's protests, Mr. Guice, in his second deposition, unequivocally reaffirmed what he had already said: that everything in his affidavit was 100% true. See Affidavit of Wil Guice.

> B.   ATTORNEY MALOFIY COMPLIED WITH RPC 4.3(C) IN ALL RESPECTS, AND IN CONTRAST MR. DAVIS VIOLATED BOTH RPC 4.3(A) AND (C)

RPC 4.3(c) states that "When a lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter the lawyer should make reasonable efforts to correct the misunderstanding."

Mr. Malofiy was very careful when Mr. Guice reached out to him to take all necessary precautions to make sure that Mr. Guice understood exactly Mr. Malofiy's role in the proceedings. As a result, the affidavit that Mr. Guice signed carefully delineated that Mr. Malofiy was Mr. Marino's attorney. See 5/28/13 Malofiy Letter, Exhibits B–C. It further stated that Mr. Marino was suing Mr. Guice and that Mr. Guice was a defendant. Id. Mr. Guice was then asked at his deposition the same questions:

> MR. MALOFIY:
>
> Q.   All right. So a couple things. You understanding I'm the attorney for Daniel Marino; correct?
>
> A.   Yes.
>
> Q.   All right. You understand you're a defendant in this matter?
>
> A.   Yes.

Guice Depo. 1, at pp.8–9. Following these questions, Mr. Guice read his affidavit into the record, again confirming that he was well aware of the role Mr. Malofiy played in this case. Id. at pp.19–37.

Mr. Davis then tried to get Mr. Guice to change his testimony by confusing him as to his role in the case. Guice was clear that he knew what it meant to be a defendant:

> MR. DAVIS
>
> Q.      You know what a defendant is?
>
> A.      Yes. Defending against – well, defending yourself against anything, really. I mean, if you're a defendant, **you're defending yourself against blame or wrongdoing** or – or – I don't know the wordage, so –

Id. at pp.170–71 (emphasis added). Mr. Davis, fundamentally incapable of conceiving that a defendant in a lawsuit would admit wrongdoing, continued to press Guice, only to see his questions backfire:

> MR. DAVIS
>
> Q.      Did you know anything you said to Mr. Malofiy was an admission against your interest potentially?
>
> A.      **The only thing that I knew that I was saying was – was – was the truth of – was the truth, period.**

Id. at pp.173 (emphasis added). Guice understood he was being sued for wrongdoing and, despite that, still wanted to tell the truth about what happened to Dan Marino. Defense counsel could take a page out of his book when it comes to candor with the tribunal.

Notably, the standard in subsection (c) is if a "lawyer knows **or reasonably should know** that the unrepresented person misunderstands the lawyer's role in the matter" that gives rise to a duty to correct any misunderstandings. RPC 4.3(c) (emphasis added). Mr. Malofiy was explicit about his role, and at no point before Mr. Davis started talking at Mr. Guice's first deposition did

Mr. Guice indicate he did not know what it meant to be a defendant or that he did not understand the role of Plaintiff's attorney.  Thus, even if all of defense counsel's assertions concerning Mr. Guice's understanding of Mr. Malofiy's role are taken as true, defense counsel has not alleged a **single fact or inference** that Mr. Malofiy should have been reasonably aware that Guice had such a misunderstanding. **Moreover, the lack of any such facts makes the filing of this motion frivolous—even pointless given that Guice did not change his testimony in any way.**

Mr. Davis, however, did violate RPC 4.3(a), which states that "a lawyer shall not state or imply that the lawyer is disinterested" when dealing with an unrepresented person. He did this at Mr. Guice's deposition by vilifying Mr. Malofiy's role in the litigation, falsely stating that Plaintiff was suing Guice for fraud and was going to take his money, and never informing Guice that Mr. Davis's clients are also suing Mr. Guice. Guice Depo. 1, at pp.171–75. **In other words, Mr. Davis implied that he was on Guice's side.** This is just one of many examples.

Mr. Davis also violated RPC 4.3(c). His questioning above, designed as it was, omitting any reference to the fact that Mr. Davis's clients are suing Mr. Guice, should have put a reasonable lawyer on notice that Guice did not understand Mr. Davis's role in the litigation. As a result of this Mr. Davis should have explicitly and immediately notified Guice of this fact, **as Mr. Malofiy did**. Yet, Mr. Davis never did so in the first deposition, and later emailed Mr. Guice several times without informing him of Davis's true role. See Def. Motion for Sanctions, Exhibit D.

## IV.    ATTORNEY MALOFIY DID NOT VIOLATE THE COURT'S ORDER ON SPEAKING OBJECTIONS DURING DEPOSITIONS, HOWEVER, DEFENSE COUNSEL DURING DEPOSITIONS WAS REPROACHFUL

Mr. Malofiy has already delineated *supra* why this entire motion is untimely, but would like to note the uniquely pointless aspect of this specific asked-for sanction. Discovery has long been closed in this case, there are no more depositions, and speaking objections are henceforth completely irrelevant. Mr. Davis was told explicitly by Mr. Malofiy that if Davis had a problem with his conduct he should call the judge. Deposition of Robert E. Allen, pp.86–87. Mr. Davis

chose not to do so and waived his right to complain. **If defense counsel wanted to file sanctions against Mr. Malofiy they should have done it when the parties were actually taking depositions.**

Mr. Malofiy first notes in response to this sanction request that when he was conducting depositions defense counsel vexatiously objected after almost every single question he asked. Every. Single. One. Not all of these were speaking objections, but the objections were so numerous and without purpose that they likely constitute grounds for sanctions in and of themselves. **The inordinate amount of time compiling the data below cannot be stressed enough.** These are the approximate total number of objections in this case by attorney:

| Attorney | Number of Objections | Percent of Total Objections |
|----------|----------------------|-----------------------------|
| EIDEL    | 1                    | 0.02%                       |
| LEE      | 20                   | 0.42%                       |
| ROGERS   | 127                  | 2.67%                       |
| MALOFIY  | 844                  | 17.73%                      |
| WILLIAMS | 1601                 | 33.63%                      |
| DAVIS    | 2168                 | 45.54%                      |
| TOTAL    | 4761                 | 100.00%                     |

The key to reading the next chart is to focus on the highlighted colors. Yellow represents depositions Mr. Malofiy took where defense counsel would usually object more, and green is for depositions defense counsel took where Mr. Malofiy would usually object more.

# OBJECTIONS BY DEPOSITION

| Depo ID | Deposition | Objecting Attorney | Number of times Attorney said "objection" in the same line or next line after their name | Total | Attorney Percentage of Objections in Deposition |
|---------|-----------|--------------------|----------------------------------|-------|------------------------------|
| 1 | James Samuel Harris III | DAVIS | 51 | | 86.44% |
| 1 | James Samuel Harris III | MALOFIY | 8 | 59 | 13.56% |
| 2 | Terry Steven Lewis | DAVIS | 112 | | 94.12% |
| 2 | Terry Steven Lewis | MALOFIY | 7 | 119 | 5.88% |
| 3 | Thomas Van Dell | DAVIS | 57 | | 57.58% |
| 3 | Thomas Van Dell | LEE | 20 | | 20.20% |
| 3 | Thomas Van Dell | MALOFIY | 22 | 99 | 22.22% |
| 4 | Bobby Ross Avila | DAVIS | 80 | | 89.89% |
| 4 | Bobby Ross Avila | MALOFIY | 9 | 89 | 10.11% |
| 5 | Issiah Joseph Avila | DAVIS | 18 | 18 | 100.00% |
| 6 | Usher Raymond IV | DAVIS | 104 | | 85.25% |
| 6 | Usher Raymond IV | MALOFIY | 1 | 122 | 0.82% |
| 7 | Vincent Famulari | MALOFIY | 1 | | 0.28% |
| 7 | Vincent Famulari | WILLIAMS | 350 | 351 | 99.72% |
| 8 | Gary M. Calderone | MALOFIY | 5 | | 1.13% |
| 8 | Gary M. Calderone | WILLIAMS | 439 | 444 | 98.87% |
| 9 | Mark Pitts | DAVIS | 280 | | 94.92% |
| 9 | Mark Pitts | MALOFIY | 15 | 295 | 5.08% |

| 10 | Thomas Pardo | MALOFIY | 1 | | 0.26% |
|----|--------------|---------|---|---|--------|
| 10 | Thomas Pardo | WILLIAMS | 382 | 383 | 99.74% |
| 11 | Wallace E. J. Collins, III | DAVIS | 61 | | 73.49% |
| 11 | Wallace E. J. Collins, III | MALOFIY | 22 | 83 | 26.51% |
| 12 | William C. Guice | DAVIS | 96 | | 41.38% |
| 12 | William C. Guice | MALOFIY | 18 | | 7.76% |
| 12 | William C. Guice | ROGERS | 118 | 232 | 50.86% |
| 13 | Dan Marino | DAVIS | 3 | | 1.14% |
| 13 | Dan Marino | MALOFIY | 261 | 264 | 98.86% |
| 14 | Dante Barton | ROGERS | 1 | 1 | 100.00% |
| 15 | Gary Wade Leak | DAVIS | 250 | | 99.60% |
| 15 | Gary Wade Leak | MALOFIY | 1 | 251 | 0.40% |
| 16 | Videotaped Deposition of William Guice | DAVIS | 22 | | 28.95% |
| 16 | Videotaped Deposition of William Guice | MALOFIY | 46 | | 60.53% |
| 16 | Videotaped Deposition of William Guice | ROGERS | 8 | 76 | 10.53% |
| 17 | Simon Rosen | MALOFIY | 8 | 8 | 100.00% |
| 18 | Dr. Alexander Stewart | DAVIS | 22 | | 14.19% |
| 18 | Dr. Alexander Stewart | EIDEL | 1 | | 0.65% |
| 18 | Dr. Alexander Stewart | MALOFIY | 132 | 155 | 85.16% |
| 19 | Michael Einhorn | MALOFIY | 163 | | 81.91% |
| 19 | Michael Einhorn | WILLIAMS | 36 | 199 | 18.09% |
| 20 | Brian Bricklen | DAVIS | 26 | | 21.31% |
| 20 | Brian Bricklen | MALOFIY | 96 | 122 | 78.69% |
| 21 | Lawrence Ferrara, Ph.D | DAVIS | 386 | | 97.23% |
| 21 | Lawrence Ferrara, Ph.D | MALOFIY | 11 | 397 | 2.77% |
| 22 | Robert E. Allen | DAVIS | 364 | | 98.38% |
| 22 | Robert E. Allen | MALOFIY | 6 | 370 | 1.62% |

| 23 | Gary Cohen, CPA | MALOFIY | 6 | | 1.50% |
| 23 | Gary Cohen, CPA | WILLIAMS | 394 | 400 | 98.50% |
| 24 | Johnny Wright | DAVIS | 236 | | 97.93% |
| 24 | Johnny Wright | MALOFIY | 5 | 241 | 2.07% |
| | | TOTAL | 4761 | | |

Out of the seven depositions in which Mr. Malofiy was not conducting the deposition he objected over 100 times for only 3 depositions, and over 200 just once—and that was for the lengthy Marino deposition. In contrast, defense counsel objected when they were not conducting the deposition:

- over 100 times in 12 out of 18 depositions, almost seventy percent of the time.
- In 10 of those depositions they objected over 200 times.
- In 6 of those depositions they objected over 350 times.
- **In one of those depositions they objected 439 times!**

It should stun the Court looking at these numbers that defense counsel has the unmitigated gall to file a motion attempting to sanction *Mr. Malofiy* for conduct in depositions when defense counsel had in fact completely and utterly littered every record of every deposition.

Incredibly, defense counsel begins its section on why Mr. Malofiy should be sanctioned for speaking objections by relating that the court was called by "counsel for guidance on the permissible scope of deposition objections" during the Deposition of Bobby Ross Avila. Def. Sanctions Brief, at p.20–21. This is true, but there is a slight wrinkle in the record: Your Honor was called **by Mr. Malofiy** because **Mr. Davis** refused under any circumstances to cease using speaking objections as made form objection after form objections. Your Honor, with great emphasis, told the assembled attorneys that speaking objections are impermissible, specifically **because of Mr. Davis misbehavior**.

In any case, no sanctions may be entered if the court finds that the party's failure to obey the order was "substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Defense counsel identifies only one deposition where Attorney Malofiy used speaking objections, that of Daniel Marino. In this deposition defense counsel repeatedly mischaracterized Plaintiff's testimony and engaged in the tactic of asking the same question over and over in an attempt to elicit inconsistencies or some wrinkle in Plaintiff's answers. See Def. Sanction's Brief, at pp.22–27; see generally Deposition of Daniel V. Marino. In one instance, Mr. Davis was insinuating that Plaintiff did not feel stolen from because he had not tried to contact Usher, the superstar artist, on **his personal telephone** to ask about the album liner credits. Marino Dep., at p.317. If Mr. Malofiy had not stood up for his client's rights in the deposition room defense counsel would have used the resulting confusion in the record to obscure the truth, and then likely respond to Attorney Malofiy's concern that his time to object had passed.

Moreover, Mr. Malofiy notes that Mr. Davis has had his own speaking objection transgressions after the judge's order, ones with no justification. In the Deposition of Johnny Wright, at pp.22–23, Mr. Davis engaged in a speaking objection claiming the witness was harassed when the record reveals no such thing occurred. In the Deposition of Lawrence Ferrara, at pp.28–29, Mr. Davis engaged in speaking objections and blatantly coached his witness how to answer questions.

The simple fact of the matter is that this pitiful sanction request was held back by defense counsel to pad an already weak motion for sanctions that they planned for months to coincide with Plaintiff's answer to summary judgment. This cheap trick should be rejected by the Court.

## V.    Attorney Malofiy Has Shown Respect for the Tribunal

Defense counsel claims that Mr. Malofiy has not abided by the preamble to the Rules of Professional Conduct, paragraph 5, stating that a "lawyer should demonstrate respect for the legal system and for those who serve it." The preamble to the Rules is not an enforceable rule and cannot serve as the basis for sanctions. See Huggins v. Coatesville Area Sch. Dist., 2009 U.S.

Dist. LEXIS 84971, *9 n.11 (E.D. Pa. Sept. 16, 2009). Mr. Malofiy thus considers this entire argument mere verbiage.

By way of further response, these complaints are largely frivolous and waste the Court's time. One ground cited by defense counsel is Mr. Davis's horror that Mr. Malofiy would have the temerity, during Daniel Marino's deposition, pp.206–07, to point out that the court cracked down hard on Mr. Davis's speaking objections during the Deposition of Bobby Avila.[7] This is the simple truth because Mr. Davis's conduct warranted it.

Another ground was that Mr. Malofiy used inappropriate language. Def. Sanctions Brief, at p.30. Although this is true, and Mr. Malofiy regrets the exact word used, the sentiment it conveys is wholly appropriate. Defendant Tommy van Dell was interrogating Mr. Guice and asked if Mr. Malofiy had paid him off for his testimony. Guice Depo. 2, at p.146. Mr. Guice responded truthfully that he did not. Id. Mr. van Dell unhappy that his outrageous accusation had come up empty then tried to ask the question again. Mr. Malofiy shut this immediately and rightfully so. Mr. Malofiy notes that defense counsel omitted this context from the part of Guice's deposition they did quote, in keeping with their less than honest representations throughout this litigation.

Mr. Malofiy concedes that he was late on occasion for depositions, which were sometimes a result of travel arrangements, sometimes because Defendants dumped reams of documents the morning of Plaintiff's deposition necessitating review, and sometimes from the pressing business needs that arise when working as a single lawyer traveling across the country while tending to a full case load. However, whenever Mr. Malofiy was late he cut his depositions short accordingly so the other attendees were not overly inconvenienced.

In short, Mr. Malofiy's conduct does not violate the RPC and many, if not all, of defense counsel's claimed violations simply twist the facts of the situations.

## VI.   Conclusion

---

[7]     Mr. Malofiy misspoke during Marino's deposition and said that the judge had cracked down on Mr. Davis during Tommy van Dell's deposition. It was, in fact, Bobby Avila's deposition. Mr. Davis tries to feign ignorance, Def. Sanctions Brief, at p.29 n.18, but he knew to what deposition Mr. Malofiy was actually referring.

This motion for sanctions is untimely, repetitive, frivolous and should be denied.

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.:  208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

*/d/ October 31, 2013*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR SANCTIONS has been electronically filed with the Court via the ECF Filing System, served upon all counsel of record via electronic mail, and mailed to any unrepresented parties.

JONATHAN D. DAVIS, P.C.
Jonathan D. Davis, Esquire
Derek A. Williams
99 Park Avenue | Suite 1600
New York, NY 10016
T:  (212) 687-5464

FOX ROTHSCHILD, LLP
Michael Eidel, Esquire
Matthew Olesh, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103
T:  (215) 299-2000

*Attorneys for Defendants*
*Usher Raymond IV a/k/a Usher ("Usher"), Sony Music Entertainment, EMI April Music,*
*Inc., EMI Blackwood Music, Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc.,*
*Bystorm Entertainment, Mark Pitts, Issiah Avila, Jr., Bobby Ross Avila, Jr., Sublime*
*Basement Tunez, Defenders of Music, Flyte Tyme Tunes, James Samuel Harris III, and Terry*
*Steven Lewis*

MANATT, PHELPS & PHILLIPS, LLP
Mark S. Lee, Esquire
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
T:  (310) 312-4000
F:  (310) 312-4224
E:  mlee@manatt.com

ROGERS & ASSOCIATES, LLC
Lance Rogers, Esquire
25 Elliot Avenue
Bryn Mawr, PA 19010
T:  (610) 649-1880

F:  (877) 649-1800
E:  lance@rogerscounsel.com
*Attorney for Defendant*
*IN2N Entertainment Group, LLC ("IN2N")*

THOMAS VAN DELL
10900 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
T:  (310) 443-5332
E:  vandell@hudcan.com
*Defendant, Pro Se*

DANTE E. BARTON
1111 Bergan Road
Oreland, PA 19075
*Defendant, Pro Se*

WILLIAM C. GUICE
16794 East Tufts Avenue
Aurora, CO 80015
*Defendant, Pro Se*

*****

*Respectfully submitted,*
FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19107
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

*/d/ October 31, 2013*