UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL V. MARINO,<br><br>      *Plaintiff,*<br><br>vs.<br><br>USHER (a/k/a Usher Terry Raymond IV); SONY MUSIC HOLDINGS, INC.; EMI MUSIC PUBLISHING, INC.; JAMES SAMUEL HARRIS III; TERRY STEVEN LEWIS; BOBBY ROSS AVILA, JR.; ISSIAH AVILA, JR.; WILLIAM C. GUICE; DANTE E. BARTON; DESTRO MUSIC PRODUCTIONS, INC.; DEFENDERS OF MUSIC; FLYTE TYME TUNES; SUBLIME BASEMENT TUNEZ; UR-IV MUSIC, INC.; WARNER-TAMERLANE PUBLISHING CORP.; MARK PITTS; BYSTORM ENTERTAINMENT; TOMMY VAN DELL; IN2N ENTERTAINMENT GROUP, LLC,<br><br>      *Defendants.* | 11 Civ. 6811 (PSD)<br><br><br><br>BEFORE THE HONORABLE<br>PAUL S. DIAMOND |

**THE MOVING DEFENDANTS' REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF THEIR MOTION FOR SANCTIONS**

  Attorney Francis Malofiy's Response to the Motion for Sanctions (the "Motion") fails to explain – *or even address* – the numerous, documented examples of his misconduct outlined in the Motion.[1] Regrettably, his response lacks candor.

  After careful consideration, the Moving Defendants filed this Motion, not as a litigation tactic, but rather out of a professional obligation. Putting aside the merits of the

---

[1] This reply memorandum incorporates the definitions in the Moving Defendants' Memorandum Of Law In Support Of Their Motion For Sanctions. Doc. No. 105. Page references to ECF filed documents refer to the ECF-assigned page numbers appearing at the top of each page.

litigation, the Moving Defendants believed it was important for Attorney Malofiy's misconduct to be brought to the Court's attention and addressed.[2]

Contrary to Attorney Malofiy's theories about the timing of this Motion, the Moving Defendants filed it at the earliest opportunity after the August 29, 2013 settlement conference.[3]  As defense counsel explained to Magistrate Judge Rice, filing the Motion prior to the settlement conference would have undermined the chances for compromise.  With a September 30 deadline for motions for summary judgment, this collaborative Motion was promptly filed.  And, had Attorney Malofiy requested more time to respond to it, the Moving Defendants would have obliged.

To Attorney Malofiy, our Motion is nothing more than "fake work" – an inconvenience and harassment.  Doc. No. 117 (Plaintiff's Response to Defendants' Joint Motion for Sanctions, the "Opposition" or "Opp.") at 4.  His Opposition is deaf to his manipulation of Defendant Guice, his unprofessional conduct toward defense counsel, the witnesses and support personnel, and his disregard for the directions of your Honor and Magistrate Judge Rice.  This case does not involve, as Plaintiff's counsel would have the Court believe, a heated dispute between professional adversaries in the midst of battle.

---

[2] Other counsel have felt the same obligation.  Last week, a Rule 11 sanctions motion was filed against Attorney Malofiy for his conduct in another case before this District Court.  *See* Proposed Order, Motion for Sanctions, and Memorandum of Law in Support of Defendants' Motion for Sanctions, *Webb v. Volvo Cars of N.A., LLC*, Civil Action No. 13-CV-2394-MMB (E.D. Pa. Oct. 30, 2013) (Doc. No. 32).

[3] Attorney Malofiy's allegation that the Moving Defendants did not make an offer at the settlement conference is wrong.  Magistrate Judge Rice can confirm that the Moving Defendants had appropriate authority to settle this case and were ready to negotiate in good faith (having present representatives from New York and Nashville).  Attorney Malofiy's non-compliance with Judge Rice's rules, coupled with Plaintiff's increased monetary demand, made the conference a wasted effort.

As the *actual record* discloses, each and every defense counsel has acted with the utmost civility and professionalism. Attorney Malofiy does not complain otherwise.

Attorney Malofiy's defense boils down to "it's not me, it's them." According to him, the only way he could pursue "truth and justice" for his client was to repeatedly engage in unethical and uncivil conduct. But, as demonstrated below, his evasive responses and reconstruction of the facts are not only obvious but quickly unveiled by the record.

## I. ATTORNEY MALOFIY VIOLATED PENNSYLVANIA'S RULES OF PROFESSIONAL CONDUCT IN AN ATTEMPT TO GAIN AN ADVANTAGE IN THIS LITIGATION.

Attorney Malofiy violated Pennsylvania's Rules of Professional Conduct by taking advantage of unrepresented Defendant Guice to gain an unfair advantage in this lawsuit.[4] Attorney Malofiy refutes any misconduct by arguing: (1) he advised Guice to seek counsel; and (2) he had no way of reasonably knowing that Guice did not understand Attorney Malofiy's role in the case.[5] Neither argument can succeed.

### A. Attorney Malofiy Violated Rule 4.3(b) By Advising Defendant Guice To Take Certain Actions And Failing To Advise Him To Seek Counsel.

Rule 4.3(b) imposes a clear duty on attorneys to refrain from offering advice to an unrepresented party other than to "secure counsel." Specifically, the Rule's authors

---

[4] Attorney Malofiy wrongly claims that the Moving Defendants' case is negatively impacted by Defendant Guice's testimony. They have *never* sought to exclude, amend or challenge Guice's testimony. To the contrary, his testimony regarding joint-creation and ownership of *Club Girl* fully supports the Moving Defendants' motions for summary judgment.

[5] Attorney Malofiy's argument that Attorney Davis somehow violated Rule 4.3 is a canard designed to distract from Attorney Malofiy's own conduct. The Moving Defendants will not validate such nonsense. Attorney Davis examined Guice as a *party witness during a deposition*, and emailed him *to schedule his continued deposition* on copy to Attorney Malofiy, other defense counsel and Mr. van Dell. *See* Ex. L. He had no other contact with Defendant Guice. In contrast, Attorney Malofiy is the only attorney in this case who had private communications with Guice. Attorney Malofiy did not inform Guice that he *could* consult an attorney until *after* he had interviewed Guice, sent him an "affidavit," and sought its execution and return.

3

recognized that "the possibility that the lawyer will compromise the unrepresented person's interests is so great that the Rule prohibits the giving of any advice, apart from the advice to obtain counsel." Rule 4.3, Comment 2.

Among other things, Attorney Malofiy violated Rule 4.3(b) when he advised Guice to sign the statement Malofiy admits to drafting ("Please sign and date and send back to me."). Ex. C at 152 (Guice Dep. 2). In addition, Attorney Malofiy advised Guice to give deposition testimony in Philadelphia – a trip Malofiy admits he planned and financed. Ex. A at 144-48 (Guice Dep. 1). But for Attorney Malofiy's requests and instructions, Guice would not have pursued these steps, which imposed legal consequences on him that were contrary to his interests.[6]

Moreover, despite what he claims, Attorney Malofiy failed to *advise* Guice to "secure counsel." Rule 4.3(b). Attorney Malofiy's initial email to Guice is silent on that issue and attached a statement that he prepared for Guice to sign. A copy of this email is attached as Exhibit M.[7] In a second e-mail sent a day later, Malofiy wrote: "If you would like to add any language [to the affidavit], feel free to do so. *If you want to* review it with a lawyer, that's fine too."[8] *Id.* (emphasis added).

---

[6] "Whether a lawyer is giving impermissible advice may depend on the experience and sophistication of the unrepresented person, as well as the setting in which the behavior and comments occur." Rule 4.3, Comment 2. Guice testified he was ignorant in the ways of the law and had only a high school diploma. Ex. A at 171-74 (Guice Dep. 1); Ex. C. at 21 (Guice Dep. 2).

[7] It is not surprising that Guice thought he was a witness rather than a defendant in this case. The email's subject line reads: "Marino v. Usher" (as opposed to "Marino v. Guice"); and the email bears no mention of Guice being a defendant. Ex. M.

[8] There is no evidence in the record that Attorney Malofiy gave Guice advice to "secure counsel." In his questioning of Guice, Attorney Malofiy recalled telling Guice that he "***could speak to counsel, correct, before you sign it [the "affidavit"],***" which Guice remembered around "the time of the first e-mail." Ex. C at 153-54 (Guice Dep. 2) (emphasis added).

Attorney Malofiy's reliance on his two email communications with Guice to satisfy Rule 4.3(b) is misplaced for at least two reasons:

First, Attorney Malofiy's mention of counsel comes after the point that an attorney's involvement would have benefitted Guice. Guice should have consulted an attorney *before* being interviewed by Attorney Malofiy (and he should have been advised to "secure counsel" before speaking about the merits of the case).

Second, Attorney Malofiy *didn't advise Guice to "secure counsel"* – he stated only that Guice *could* have counsel review the "affidavit" before signing it. There is a material difference between telling someone they *can* speak to counsel and advising a person to "secure counsel." Rule 4.3(b) requires the latter to protect unrepresented persons like Defendant Guice. Attorney Malofiy's failure to satisfy this Rule caused Guice to take steps that were inimical to his interests (and which unreasonably and vexatiously multiplied this litigation). 28 U.S.C. § 1927.

Soon after Attorney Davis began to examine Guice at his first deposition in Philadelphia, Guice recognized that he was ignorant of the Amended Complaint's purpose and meaning. Attorney Davis's prompt reaction was to ask Guice if he wanted to *consult* with an attorney before continuing with the deposition. Guice answered that it was in his "best interest" to do so. Ex. A at 197-98 (Guice Dep. 1). The deposition stopped.

### B. Attorney Malofiy Violated Rule 4.3(c) By Failing To Correct An Unrepresented Person's Obvious Misunderstandings.

Not only did he fail to advise Guice to "secure counsel," Attorney Malofiy also violated Rule 4.3(c), which imposes a duty on a lawyer to correct an unrepresented

person's misunderstanding about the lawyer's role when the lawyer "knows or reasonably should know" of the misunderstanding.[9]

Attorney Malofiy's claim that he was unaware of Guice's misunderstanding is unreasonable. *Any* practicing attorney standing in Attorney Malofiy's shoes would have immediately recognized that Guice (at a minimum) misunderstood Attorney Malofiy's role and their adverse interests. Guice willingly assisted Attorney Malofiy by: (1) providing information against his own interests; (2) signing an "affidavit" against his own interests that Attorney Malofiy drafted; and (3) traveling from Denver to Philadelphia to give sworn deposition testimony against his own interests without counsel.

Attorney Malofiy's assertion that Guice was driven by "the truth" is far-fetched. Assisting in the pursuit of truth and justice is one thing, but doing so at your own significant legal detriment is another. If Attorney Malofiy was genuinely under the impression that Defendant Guice was willing to put himself in harm's way to stand up for the truth – Attorney Malofiy should have (at a minimum) notified Guice before his deposition that he obtained an entry of default against Guice for failing to respond timely to the Amended Complaint, and that Plaintiff could move for a default judgment against him for money damages and equitable relief.

It is indisputable that Attorney Malofiy "kn[ew] or reasonably should [have] kn[own]" that Guice misunderstood Malofiy's role as well as the overall circumstances under which Guice was assisting him. Defendant Guice put any question about his understanding to rest when he testified in his second deposition in Denver that he felt misled and "played" by Attorney Malofiy. Ex. C at 144-45 (Guice Dep. 2).

---

[9] Pennsylvania Rule of Professional Conduct 1(j) provides: "'Reasonably should know'… denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question."

6

## II.     ATTORNEY MALOFIY'S MISCONDUCT AT THE DEPOSITIONS.

Throughout this litigation, Attorney Malofiy has verbally denigrated the witnesses, defense counsel and support personnel, and he has purported to speak for the Court.  His conduct was jarring not because the Moving Defendants have thin skin or, as Attorney Malofiy puts it, "*are Cry Babies*."  *See* Ex. N (Docket Text as entered by Attorney Malofiy for Doc. No. 117).  It was so because his misbehavior was so exceptional and beneath the standards of decency and decorum required of attorneys admitted to the bar of this Commonwealth and who appear before its federal courts.

Yet despite this Motion – which by its mere necessity is disturbing – Attorney Malofiy's response is that his astonishing behavior is "all in a day's work" and that it is not sanctionable because no ethical rule requires civil behavior.  While the preamble to Pennsylvania's Rules of Professional Conduct perhaps cannot support a court-imposed sanction, 28 U.S.C. § 1927 does and is intended to do so.

### A.     The Passage Of Time Is No Defense To Sanctionable Conduct.

Attorney Malofiy does not dispute that the Motion accurately recites his conduct and attitude towards defense counsel, the witnesses, support personnel, and the Court.[10] And how could he, given that he was quoted verbatim from the deposition transcripts. Regarding Attorney Malofiy's lateness at depositions, the Moving Defendants were not the cause of his tardiness.  His excuses fall short.

---

[10] His conduct since this Motion was filed further demonstrates why sanctions are appropriate here.  When Attorney Malofiy was asked whether he consented to the Moving Defendants' request to adjourn the trial date, he called counsel Michael Eidel and Jonathan D. Davis "Mikey-E and Johnny-D" and told them in writing he considered this Motion to be "bullshit" and "[v]ery entertaining."  Doc. No. 107 at 5.  Under any circumstances, a licensed attorney who considers a sanctions motion against him with such nonchalance is alarming.  Attorney Malofiy obviously remains "very comfortable with [his] actions" toward Guice, this Court, defense counsel, the witnesses and support personnel.  Ex. F. at 241 (Marino Dep.).

Instead of squarely addressing his conduct and apologizing for it, Attorney Malofiy argues that the clock has expired on the Moving Defendants' right to challenge it. He cites no support for his wishful argument that a sanctions motion cannot be brought after the close of discovery.

Time does not absolve sanctionable conduct. *In re Schaefer Salt Recovery, Inc.*, 542 F. 3d 90, 102 (3d Cir. 2008) (holding that, unlike a motion for sanctions under Fed. R. Civ. P. 11, a motion for sanctions under 28 U.S.C. § 1927 is not untimely even if made after final judgment in a case); *see also Lewis v. Smith*, 480 Fed. App'x 696, 699 (3d Cir. 2012) ("'1927 sanctions are not untimely if sought or imposed after final judgment'") (quoting *Schaefer*, 542 F.3d at 101).

Attorney Malofiy's belief that the Moving Defendants waived their right to complain about his conduct is plainly wrong. A waiver must be a voluntary and knowing relinquishment of a right. Here, because the Motion for sanctions was brought under 28 U.S.C. § 1927, none of the Moving Defendants or their counsel waived anything.

Attorney Malofiy tries to justify his inexplicable conduct under the rubric of "zealous" advocacy. But that is no defense to Attorney Malofiy's words and acts. Zealous advocacy does not permit name-calling. It does not permit insults. It does not permit aggressive or threatening behavior. It does not permit lengthy speaking objections. And it certainly does not trump Pennsylvania's Rules of Professional Conduct.

### B. It Was Attorney Davis Who Proposed Seeking This Court's Direction On The Scope Of Permissible Objections At Depositions.

Attorney Malofiy asserts he sought the Court's involvement to curb speaking objections made during the deposition of Bobby Ross Avila. The record shows

differently. It was Attorney Davis who suggested telephoning the Court to seek guidance concerning deposition objections because Attorney Malofiy asserted that counsel was limited to saying the solitary word "objection."

The telephone call to your Honor was neither prompted by any improper objection, nor does Attorney Malofiy cite to one during the Bobby Ross Avila deposition. The objection that precipitated the call was: "Objection to form. Vague." Doc. No. 118-1 at 380 (B. Avila Dep. at 44). Shortly thereafter the following colloquy between counsel occurred that shows that Attorney Davis proposed calling the Court and Attorney Malofiy agreed:

> MR. MALOFIY: Generally, I have a good idea of why you're objecting to things. I know why you're objecting to things, if you are. If I'm not sure, I can say "grounds." And that's how it's done. And then you can state the grounds for your objection either in the presence of your -- of the witness, or we can have the witness leave and we can do it that way. Now, with that being said --
>
> MR. DAVIS: Well, no --
>
> MR. MALOFIY: -- regardless of what happened with Mr. Lee yesterday or what happened in the prior depositions, this is the proper way for it to be done and how it should be done going forward.
>
> MR. DAVIS: Well --
>
> MR. MALOFIY: I have let -- allowed some leeway before, but there shouldn't be leeway.
>
> MR. DAVIS: You did the same thing yesterday.
>
> MR. MALOFIY: It doesn't matter.
>
> MR. DAVIS: ***Maybe what we should do, maybe we can speak to the magistrate and just clear it up, because I -- I don't want to have a disagreement with you, Mr. Malofiy. I really don't.***
>
> MR. MALOFIY: ***Okay.***

9

> MR. DAVIS:      And I -- I'm certain that what you're -- what you're expressing is -- my understanding, at least in the East -- in the Eastern District, it may be in state court, but with respect to federal practice, certainly in the Southern District, this is the method that is used every day.
>
> MR. MALOFIY:    Okay. So let the record reflect we're going to call the judge.
>
> MR. DAVIS:      I think we should speak to the magistrate.
>
> MR. MALOFIY:    Well, I have the judge's number right here. There's no problem with that.
>
> (Telephonic conference with the Court.)

Ex. E at 48-49 (B. Avila Dep.) (emphasis added).

The Court communicated to both sides that "speaking objection[s] where [the lawyer] states extended grounds for the objections and so is coaching the witness" would not be tolerated. *Id.* at 57-58. The Court's direction, which mirrors applicable case law, was not "because of Mr. Davis behavior (sic)," as misreported by Attorney Malofiy. Opp. at 15; Doc. No. 105 at 26. The direction resulted because Attorney Davis wanted to avoid any future disagreement about what any attorney could permissibly say when objecting to questions. *See* Ex. E at 48-49 (B. Avila Dep.).

The "simple truth" is that your Honor did not "crack[] down hard" on Attorney Davis as Attorney Malofiy falsely states, Opp. at 17, but instead addressed your Honor's direction to all counsel. Ex. E at 57-58 (B. Avila Dep.). After your Honor provided this direction, the Moving Defendants abided by it (self-imposing, at most times, a stricter limitation of stating the word "objection" only to avoid further controversy), but Attorney Malofiy did not do the same.

Attorney Malofiy claims that the Moving Defendants identified only one deposition where he made speaking objections. That statement is wrong. Although

10

Attorney Malofiy represented and defended *only one fact witness* during discovery (his client), his misconduct was not limited to his performance that day.

Attorney Malofiy made speaking objections during other depositions. His purported attempt to "set a record" at the second day of the Guice deposition is one big speaking objection. Doc. No. 105 at 22-23; Ex. C at 7-9. As were the other lengthy statements he made during that deposition. *See*, *e.g.*, Doc. No. 105 at 24; Ex. C at 13-14. When not making speaking objections, Attorney Malofiy was mistreating witnesses and opposing counsel. Doc. No. 105 at 30-33. And as the Moving Defendants stated in their Moving Brief, Attorney Malofiy's misconduct continued during the many expert depositions. Doc. No. 105 at 8.

Here are just a few examples, because to list more would take more space:

**At the Deposition of Brian Bricklin:**

Q. Are there any music organizations that you are a member of?

A. Can you define music organizations?

Q. I have to leave my question at that. Other than to say anything related to music, which is an organization.

MR. MALOFIY: *I want to object. If he's not going to define the words he's using in his question, it's silly for you to answer, because you don't know how to answer them. So, naturally, what's going to happen is, you're going to get an answer that is not even responsive to your question because your question hasn't even been defined, when it was asked to be defined by the witness. Now you gave him instructions in the beginning and you made it very clear. You said this gentleman, the witness, if he doesn't understand your question let me know. He's not a professional expert. It's his first case and his first deposition in his entire life of his fifty -- how many years, sir?*

THE WITNESS: *Fifty-three.*

11

>MR. MALOFIY: *Fifty-three years, and if he asked you a question saying you, sir, can you define a word, and you can't define the words that you're using in a question, well, that poses a serious problem. Because, the answer you're going to get, as you know, is not going to be an answer that's going to be responsive to your question. If this gentleman, following your instructions, asks you to define a word, or a question, I think it's imperative, and the burden is upon you, by providing him that instruction, to clarify your question, or the word that you are using.*

Doc. No. 118-3 at 172-73 (Bricklin Dep. at 40-42) (emphasis added).

### At the Deposition of Alexander Stewart:

>MR. DAVIS: Just state your objection.
>
>MR. MALOFIY: No, no, no.
>
>MR. DAVIS: Objection to form. I'll try to rephrase it if you have a problem with the question, if that's what your objection is. But if you're going to make a speech --
>
>MR. MALOFIY: *Don't be a girl about this, you can send him out.*
>
>MR. DAVIS: *Mr. Malofiy, I would appreciate you not referring to me as a girl, which you have done repeatedly off the record and on the record.*

Doc. No. 118-3 at 289 (Stewart Dep. at 55) (emphasis added).

>Q. If you knew that Mr. Marino had approved and participated in allowing the use of Club Girl, in creating Bad Girl, what is the relevance of analyzing the two musical works to determine whether they're substantially similar?
>
>MR. MALOFIY: *Objection. You can answer if you understand the question. Also, he's not a lawyer, and you're asking him to draw a legal conclusion.*

Doc. No. 118-3 at 295 (Stewart Dep. at 79-80) (emphasis added).

### At the Deposition of Michael A. Einhorn:

>Q. When you were referring to Club Girl, what are you referring to?

12

> MR. MALOFIY: *I'll just put an objection on the record. The proper question is does he have factual knowledge. That's the proper question. You're asking funny questions. You want to ask funny questions, you can ask funny questions. The proper question is do you have any personal knowledge to know which are the writers. If he doesn't know, he doesn't. You shouldn't be asking him silly questions. You can ask him his assumption for his report. That would be proper. If he doesn't have factual knowledge, it's meaningless.*

Doc. No. 118-3 at 12 (Einhorn Dep. at 46) (emphasis added).

> MR. MALOFIY: *I need to object. Your questions are continually improper, maybe because you're purposely asking improper questions. You're trying to be slick. Perhaps it's because you're having trouble asking the questions. If you're going to ask a question as such, say that they assume facts. You're stating something as fact when it's not.*
>
> MR. WILLIAMS: Mr. Malofiy, please limit your objection to the word objection.
>
> * * *
>
> MR. WILLIAMS: Please limit your objections, as directed by the Court.
>
> MR. MALOFIY: *It's not directed by the Court. When you're asking improper questions, you're going to be called out on it. I'm not going to listen to this claptrap.*

Doc. No. 118-3 at 16-17 (Einhorn Dep. at 64-65).

### C.  Counsel For The Moving Defendants Made Proper Objections.

The Moving Defendants have focused on Attorney Malofiy's incessant speaking objections, improper treatment of counsel, witnesses and court personnel, and disrespect toward the Court. Rather than defend the full scope of his misconduct, Attorney Malofiy alludes to regretting his use of some unidentified "word," Opp. at 17 (citing to the

Moving Brief at 30 (*i.e.*, ECF page 35)), and then pivots to criticizing the Moving Defendants for obeying the direction of this Court for objections at depositions.[11]

The *two* purported "speaking objections" Attorney Malofiy attributes to Attorney Davis are proper objections supported by the record and are different in kind from Attorney Malofiy's constant interjections and interruptions during depositions.[12] The one objection he cites from the Johnny Wright expert deposition addressed questioning about when Mr. Wright first knew that his deposition would be needed in this case. When Mr. Wright was unable to provide an exact date, Attorney Malofiy asked Mr. Wright whether he knew about the deposition two years ago or five years ago. Doc. No. 118-3 at 676 (Wright Dep. at 22-23). Because Plaintiff filed this action in 2011, Attorney Davis rightfully objected to the questions, which could serve no other purpose but to harass the witness. The objection was stated succinctly: "Objection. You're harassing the witness." *Id.*

Similarly off base is the objection Attorney Malofiy cited from the deposition of Dr. Lawrence Ferrara. Doc. No. 118-3 at 531-32 (Ferrara Dep. at 28-29). Attorney Davis's objection was not a speaking objection to inform the witness of anything. It was a short objection made only to describe an event that occurred earlier in the deposition, *i.e.*, Attorney Malofiy's refusal to allow the witness to review his expert report. *Id.*

---

[11] It appears from context that Attorney Malofiy only regrets saying "[t]his is bullshit," and not that your Honor "is going to laugh at this," or that Attorney Rogers is "like a little kid with [his] little mouth." Attorney Malofiy claims that the Moving Defendants omitted the context in which he said: "This is bullshit." The context (which is contrary to what Attorney Malofiy describes) does not justify such inappropriate language or comments. Opp. at 17.

[12] Counsel for the Moving Defendants defended eleven fact depositions. Attorney Malofiy defended only one. He cites no "speaking objections" from any of the fact-witness depositions.

14

Attorney Malofiy's number-counting exercise concerning "objections" is useless without looking at *the content* of the objection, the number of questions asked during the deposition, the purpose behind the particular objection, or whether counsel addressed the objection by either restating the question or moving on to a new question.  If Attorney Malofiy objected less frequently during discovery that says more about the questioning attorney's ability to ask clear and effective questions than about the attorney defending the deposition.

Attorney Malofiy's simplistic methodology of charting "objections" is defective because it only counts where the actual word "objection" follows an attorney's name. Attorney Malofiy's chart shows he counted only the "NUMBER OF TIMES ATTORNEY SAID 'OBJECTION' IN THE SAME LINE OR NEXT LINE AFTER THEIR NAME."  Opp. at 13.  But Attorney Malofiy's improper objections were simply disruptive speeches or coaching *that did not contain the actual word "objection."*  Thus, for example, by counting only the times when the word "objection" appears within two lines of the attorney's name, his chart *misses* his speaking objections like:

> MR. MALOFIY: *Don't be tricky, ask straight questions, get a straight answer.  Isn't that what you want, the truth, or do you want something else?  Do you want lies?  Do you want to ask him a lied [sic] question and then you want him to answer a lied [sic] question?*

Ex. F. at 62-63 (Marino Dep.).

> MR. MALOFIY: *He is answering your questions very thoroughly. That is the problem, you don't like the truth.  You don't like the truth, it disturbs you.  You've never seen the truth in a deposition.  You've seen lots of lies by a lot of people.  This is the truth.*

Ex. F. at 148 (Marino Dep.).

Attorney Malofiy's raw counting of "objections" attempts to penalize the Moving Defendants for scrupulously adhering to the Court's direction and taking care to avoid disagreements by mostly using the solitary word "objection."  His flawed methodology not only counted *proper* objections by Moving Defendants (the first example below), but also counted multiple objections to a single, repeated question, making it appear that a *proper* objection was unfounded (the second example below):

> Q. How is that determined? Do you determine that? Do you say, hey, listen I want this much because I'm -- I'm the superstar artist; I want this much, or do you say -- does it get worked out?  Does it get negotiated?  How does it happen where you determine how much your songwriting is as opposed to how much someone else's is?
>
> MR. DAVIS:      Objection.

Doc. No. 118-1 at 208 (Raymond Dep. at 60).

> Q. Okay. So go back.  I cut you off. You said basically -- I think you said register songs around the world and collect income on behalf of songwriters.  That's the main crux of what a publishing house does --
>
> MR. WILLIAMS: Objection to form.
>
> Q.  -- fair statement?
>
> MR. WILLIAMS: Objection to form.

Doc. No. 118-1 at 470 (Calderone Dep. at 46).  In the second example, a second objection is warranted because Attorney Malofiy asked the same question by merely adding the words "fair statement."

While the Moving Defendants' objections are "stated concisely in a nonargumentative and nonsuggestive manner," Fed. R. Civ. P. 30(c)(2); *see also Hall v. Clifton Precision*, 150 F.R.D. 525, 530 (E.D. Pa. 1993), Attorney Malofiy's were not. His objections were frequently improper, suggestive or argumentative speaking objections that warrant sanctions.  *See Deville v. Givaudan Fragrances Corp.*, Civil

16

Action No. 08-2034, 2010 WL 2232718, at *8-9 (D.N.J. June 1, 2010), *aff'd*, 419 Fed. App'x 201 (3d Cir. 2011) (affirming magistrate's award of sanctions where counsel made frequent speaking objections, effectively "testifying on behalf of [the] witness," that were "unprofessional, inexcusable, and in violation of the Federal Rules."); *DirecTV, Inc. v. Rowland*, No. 04-CV-297S, slip op. at 10 (W.D.N.Y. May 25, 2005) (awarding sanctions where counsel engaged in lengthy speaking objections and "impeded the fair examination of his client by the *manner* of his objections") (emphasis added); *In re Amezaga*, 195 B.R. 221, 228 (Bankr. D.P.R. 1996) (awarding sanctions where counsel "engaged in extensive and unnecessary colloquy, asserted groundless objections, improperly objected and took every opportunity to interrupt and argue with opposing counsel").

It is not the *number* of objections made by counsel that matters, but rather the *nature* of the objections. Attorney Malofiy's calculated attempt to steer the Court's attention away from his own misconduct by compiling the number of times each attorney said the word "objection" is irrelevant for the reasons stated above. Opp. at 13-15. When Attorney Malofiy asked objectionable questions, defense counsel were obligated to object or risk waiving the objection to form. Rather than risk such a waiver and rely on witnesses to defend themselves, the Moving Defendants' counsel had no choice but to assert their objections on the record when appropriate. But more importantly for the purposes of this Motion, they did so properly in the Court-directed manner.

## **CONCLUSION**

Attorney Malofiy has misled an unrepresented party in direct violation of the Rules of Professional Conduct, disregarded this Court's direction regarding speaking objections, violated a Magistrate's direction as to the deadline for submission of

17

settlement conference statements, and demonstrated an utter lack of respect for this Court, defense counsel, witnesses and support personnel.

He does not deny his conduct during the depositions in this case, regretting only one word that he uttered over the course of *twenty-three* depositions. And although his conduct with respect to Defendant Guice is indefensible, Attorney Malofiy continues to be combative rather than contrite.

Based on the foregoing, the Moving Defendants respectfully request an order from this Court imposing sanctions against Attorney Malofiy.

        Respectfully submitted,

        MANATT, PHELPS & PHILLIPS, LLP

        /s/Mark S. Lee
        *Admitted pro hac vice*
        Mark S. Lee
        11355 West Olympic Boulevard
        Los Angeles, CA  90064-1614
        Telephone:  (310) 312-4000
        Fax:  (310) 312-4224
        Email:  mlee@manatt.com

        ROGERS & ASSOCIATES, LLC

        /s/Lance Rogers
        Lance Rogers
        25 Elliott Avenue
        Bryn Mawr, PA 19010
        Telephone:  (610) 649-1880
        Fax:  (877) 649-1880
        Email:  Lance@RogersCounsel.com

        *Attorneys for Defendant*
        *IN2N Entertainment Group, LLC*

        JONATHAN D. DAVIS, P.C.

        /s/ Jonathan D. Davis
        *Admitted pro hac vice*
        Jonathan D. Davis

        Derek A. Williams
        99 Park Avenue, Suite 1600
        New York, New York 10016
        Telephone:  (212) 687-5464
        Fax:  (212) 557-0565
        Email:  jdd@jddavispc.com
        Email:  daw@jddavispc.com

        FOX ROTHSCHILD LLP

        /s/ Michael Eidel
        Michael Eidel
        Matthew Olesh
        2000 Market Street, 20th Floor
        Philadelphia, PA 19103
        Telephone:  (215) 299-2000
        Fax:  (215) 345-7507
        Email:  meidel@foxrothschild.com

        *Attorneys for Defendants Usher Raymond IV, Sony Music Entertainment, EMI April Music Inc., EMI Blackwood Music Inc., UR-IV Music, Inc., Warner-Tamerlane Publishing Corp., Mark Pitts, Bystorm Entertainment, Issiah Avila, Jr., Bobby Ross Avila, Jr., Defenders of Music, Flyte Tyme Tunes, Sublime Basement Tunez, James Samuel Harris III, and Terry Steven Lewis*

        /s/ Thomas van Dell
        Thomas van Dell, *Pro Se*
        10900 Wilshire Blvd., Suite 1400
        Los Angeles, CA 90024
        Telephone: (310) 443-5332
        Email:  vandell@hudcan.com

Dated:  November 5, 2013