

Rogers&AssociatesLLC
Attorneys-at-Law

November 12, 2013

**VIA FACSIMILE 267-299-5069**

The Honorable Paul S. Diamond
United States District Judge
United States District Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

      RE:    **Marino v. IN2N Entertainment Group, LLC, et al.**
               **Civil Action No. 11-06811**

Dear Judge Diamond:

I write on behalf of Moving Defendants to respectfully request that your Honor strike from the record Plaintiff's Sur-Reply Brief In Opposition To Defendants' Joint Motion for Sanctions (the "Sur-Reply"), filed close to midnight last night.

The Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Pennsylvania do not provide for a sur-reply. The only explanation for Mr. Malofiy's disregard for the rules is to have the last word, misreport the facts and to disparage defense counsel, particularly, Mr. Davis. Let there be no mistake, the Joint Motion for Sanctions was collaborated on and joined in by each counsel for the Moving Defendants and *pro se* Defendant Thomas van Dell. Furthermore, Mr. Malofiy's accusation that Mr. Davis did not disclose his role in the case to Defendant Guice is easily disproved. *See* Sur-Reply at 3-4; Doc. No. 105 (Moving Defendants' Motion for Sanctions), Ex. A (Guice Dep. 1)] at 8:8-18, 152:3-12; Doc. No. 105, Ex. C (Guice Dep. 2) at 4:5-17, 4:21-5:8. And Mr. Malofiy's continued avoidance in his Sur-Reply concerning his misconduct underscores the absence of any excuse or defense.

Since filing our reply brief last week, we have learned of yet another incident involving Mr. Malofiy's misconduct in the Eastern District of Pennsylvania. We previously advised the Court that Mr. Malofiy is now the subject of a Rule 11 sanctions motion before the Honorable Michael M. Baylson regarding Mr. Malofiy's alleged alteration of an original document and then using it in a pleading. *See* Proposed Order, Motion for Sanctions, Memorandum of Law in Support of Defendants' Motion for Sanctions, and Exhibits, *Webb v. Volvo Cars of N.A., LLC*, Civil Action No. 13-CV-2394-MMB (E.D. Pa. Oct. 30, 2013) (Doc. Nos.

32, 32-1, 32-2, and 32-3). Moving counsel in that case has asked that the matter be referred to the Chief Judge for consideration of disbarment from the Eastern District.

We now know that in June, 2013 Mr. Malofiy was also admonished by Bankruptcy Judge Stephen Raslavich of the Eastern District of Pennsylvania for his deposition conduct. Before holding the pending sanctions motion in abeyance, Judge Raslavich stated on the record:

THE COURT:    ... *However, in 20 years I have never seen behavior as disgraceful as -- how do I pronounce that gentleman's name?*

MR. KENNERLY:    *Mallife* (phonetic), Your Honor.

THE COURT    *Mallife. I see that Mr. Mallifie is not present. I would have thought he would have had the courage and the dignity to appear here and face the consequences of what I have just characterized as the most disgraceful behavior I have seen in 20 years.*

And I don't need to describe it any more, because it speaks for itself. There's a transcript. Shocking. It made me sick to my stomach to read his sarcastic, arrogant, braggadocio, his repeated, relentless attacks on his opponent's family, for goodness sakes.

And you were there, Mr. Barnes. *He was most notably an embarrassment, a total embarrassment to himself, but an embarrassment to our entire profession, to the members of the Bar, to the members of the public. I felt terrible for the people who had to witness those immature, out-of-control, unprofessional tirades.*

*I felt sorry for the lawyers in the room. I felt sorry for the lay people, the court reporter, the interpreter. I simply cannot understand, under any circumstances under the sun, how a member of our profession could conduct himself in that fashion at a deposition.*

*I was stunned* ....

* * * *

Maybe he thinks that's good, zealous advocacy. But, you know, people with your depth of experience have to know that there's a day [of] reckoning. Every word was being taken down. Sooner or later, someone was going to read this and say, what do you think you are doing?

2

\* \* \* \*

THE COURT:    ... *I don't know whether this man needs anger management therapy, ethics training, or both. I suspect it's the latter. I suspect it's both.*

\* \* \* \*

THE COURT:        I found myself wondering whether Mr. Mallife had mentors in his past, whether he has a family, whether in his past; law professors, perhaps. Maybe his law partners, maybe adult-aged children. And I wondered if he had such acquaintances whether he would be proud to have them read that deposition. *To say his conduct was disgraceful does a disservice to those who are merely disgraceful. I had half a mind to simply bundle it up and send it up and sent it to the Disciplinary Board. He needs discipline or help of some kind. That was atrocious.* You know that, don't you?

*See* Ex. A at 10-13 (Transcript of June 19, 2013 Hearing, *In re NTP Marble, Inc.*, Case No. 13-10087-SR (Doc. No. 250)) (emphasis added). Unlike this case, Judge Raslavich was never contacted by counsel and had not issued the kind of directive to counsel regarding deposition objections that your Honor issued here (and which Mr. Malofiy promptly and continuously ignored).

When Mr. Malofiy ultimately appeared before Judge Raslavich, a week later, on June 26, 2013, his Honor would not allow Mr. Malofiy to excuse his unprofessional conduct by digressing about his state of mind. Mr. Malofiy could not explain his misconduct, but said he read the case law regarding how he should behave and conduct himself going forward. *See* Ex. B at 21-24 (Transcript of June 26, 2013 Hearing, *In re NTP Marble, Inc.*, Case No. 13-10087-SR (Doc. No. 260)). His behavior in this case does not show it. Judge Raslavich did not sanction Mr. Malofiy. Perhaps if he had been sanctioned, the Moving Defendants would not have needed to file this Joint Motion for Sanctions.

This year Mr. Malofiy's conduct is the subject of three sanctions motions in the Eastern District of Pennsylvania (and, indeed, in the only three cases Mr. Malofiy had pending in the Eastern District). This is not a coincidence. Instead of being contrite, Mr. Malofiy relentlessly attacks Mr. Davis and defense counsel even though they have acted professionally and abided by this Court's direction and the Pennsylvania Rules of Professional Conduct. The transcripts prove this fact. This Court should take action before other parties, witnesses, counsel, and support personnel are exposed to his misconduct, abusive behavior and consistent disregard of the rules and procedures of the federal courts.

3

I thank the Court for its consideration of this letter.

Respectfully submitted,

LANCE ROGERS

LR/mp
Enclosures

cc:   Francis A. Malofiy, Esq.
      Jonathan D. Davis, Esq.
      Mark S. Lee, Esq.
      Michael Eidel, Esq.
      Mr. Thomas van Dell (*Pro Se*)
      Matthew S. Olesh, Esq.
      (All Via Email/PDF, *concurrently* with transmission of this letter to the Court)

4

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PENNSYLVANIA EASTERN

IN RE:

NTP MARBLE, INC.,

        Debtor.

)  Bankruptcy No. 13-10087-SR
)  Chapter 11
)
)
)
)
)
)  Philadelphia, PA
)  June 19, 2013
)  10:35 a.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE STEPHEN RASLAVICH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:

ALBERT A. CIARDI, III, ESQUIRE
JENNIFER E. CRANSTON, ESQUIRE
CIARDI, CIARDI & ASTIN, PC
2005 Market Street
Suite 1930
Philadelphia, PA 19103

For Tasos Papadopoulos:

MAXWELL S. KENNERLY, ESQUIRE
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA 19107

For Committee of
Unsecured Creditors:

RICHARD RILEY, ESQUIRE
RUDOLPH J. DIMASSA, JR., ESQUIRE
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196

For the Chapter 13
Trustee, Frederick
L. Reigle:

POLLY A. LANGDON, ESQUIRE
2901 St. Lawrence Avenue
P.O. Box 4010
Reading, PA    19606

For MS International:      ANTHONY M. SACCULLO, ESQUIRE
                          A.M. SACCULLO LEGAL, LLC
                          27 Crimson King Drive
                          Bear, DE 19701

For US Trustee:           GEORGE M. CONWAY, ESQUIRE
                          UNITED STATES TRUSTEE
                          833 Chestnut Street
                          Suite 500
                          Philadelphia, PA 19107

For Tasos Papadopoulos:   EDMOND M. GEORGE, ESQUIRE
                          DAVID ALEXANDER BARNES, ESQUIRE
                          OBERMAYER, REBMANN, MAXWELL &
                          HIPPEL, LLP
                          1617 JFK BLVD.
                          Suite 1900
                          Philadelphia, PA 19103-4210

Audio Operator:           LINDA LOBOSCO

Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P. O. Box 129
                          Gibbsboro, NJ  08026
                          Office: (856) 435-7172
                          Fax:    (856) 435-7124


                          Email:   dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

3

1                                        I N D E X

2            Agenda Items

3              Lease Agreements

4            Mr. Ciardi                                        5

5              Disclosure Statement

6            Mr. Ciardi                                        6

7            Motion for Deposition

8            Mr. George                                        7

9            The Court                                        10

4

1    (Call to the order of the Court)

2        THE COURT:  Okay.  I think that just leaves the Marble

3    Company case.  You folks can come up.

4        MR. CIARDI:  Good morning, Your Honor.

5        THE COURT:  Good morning.  Anyone want to say anything

6    preliminarily?

7        MR. CIARDI:  Your Honor if I could just run through

8    what you have on the list, because there might be an ability to

9    get rid of a couple of these matters first.  And appearances,

10    Albert Ciardi, counsel for the debtor.

11        MR. KENNERLY:  Max Kennerly, Your Honor.  One of the

12    counsel for creditor Tasos.

13        MR. GEORGE:  Your Honor, Edmund George and Alex

14    Barnes, also for Tasos Papadopoulos.

15        MR. CONWAY:  George Conway for the United States

16    Trustee.

17        MR. DiMASSA:  Rudolph DiMassa, Duane Morris, for the

18    Creditors Committee, Your Honor.

19        THE COURT:  Okay.

20        MR. CIARDI:  Your Honor, with regard to, I guess the

21    fourth matter on your list, the motion of the debtor for

22    authority to enter into lease agreements --

23        THE COURT:  Yes,

24        MR. CIARDI:  -- there have been no objection to that.

25    I don't believe that -- I mean, we write out, these are

Mr. Ciardi                                                    5

1       machines that the debtor needs to operate, and we'd ask that

2       Your Honor enter that order.

3                   THE COURT:  Anyone wish to be heard on that?  Okay.

4                   MR. CIARDI:  Your Honor, next I'd like to address the

5       disclosure statement.

6                   THE COURT:  Hold on one second, please.

7                   MR. CIARDI:  Okay.

8            (Pause)

9                   THE COURT:  Okay.

10                  MR. CIARDI:  With regard to the disclosure statement,

11      Your Honor, the debtor circulated last night, but did not file

12      a proposed black line of the disclosure statement.  There was

13      no amendment to the plan.  In the intervening couple of hours,

14      we have reached an agreement with PNC Bank on their treatment,

15      which will resolve their objection to the disclosure statement,

16      and also get their vote and their approval for their class

17      under the plan.  So we will need to amend the existing plan to

18      include that treatment.

19                  We are hopeful that in the next week we will be able

20      to come to a similar agreement with the Committee on the

21      treatment of the unsecured creditors.  So as to the disclosure

22      statement, what we would like to do, Your Honor, is adjourn for

23      one week to the 26th, allow us time to file the amended

24      disclosure statement with the revised treatment to both PNC

25      Bank and the unsecured creditors, so that when -- Your Honor

Mr. Ciardi                                                6

1    then would be looking at a document that now would have the

2    support of both PNC and the Committee. We have taken the other

3    remaining objection, added it as an exhibit, but also included

4    substantial amount of the factual issues that are raised in the

5    actual disclosure statement. So that from a fact standpoint,

6    we have included a lot of the information. And that would

7    then, I believe just leave confirmation issues.

8         But an issue that Your Honor could address next week

9    when you have the revised treatment to both PNC and the

10    Committee in front of you in amended dockets.

11         So that's how we'd like to proceed with the disclosure

12    statement. I know that PNC is on board with that suggestion, I

13    spoke with their counsel last night. She's not present. And

14    the Committee, obviously, we've had that discussion with them

15    this morning, they can speak. But that's how the debtor would

16    like to proceed as to the disclosure statement.

17         It would be our hope we could then get it approved

18    next week and send it out for vote. But that, again, is

19    something that could be addressed when Your Honor sees it.

20         THE COURT: All right.

21         MR. CIARDI: Or maybe we could address that document

22    first.

23         THE COURT: Okay.

24         MR. DiMASSA: Your Honor, we're in agreement with that

25    treatment at this point. We're remaining optimistic that we'll

Mr. George                                    7

1    have something hammered out by next week.

2            THE COURT:  Mr. Conway?

3            MR. CONWAY:  No opposition.  Thank you.

4            MR. GEORGE:  Your Honor, I have one issue which I

5    wanted to broach with Your Honor.  And it kind of ties into a

6    motion that we filed a day or two ago about getting the

7    deposition of the plan proponent.  We were supposed to have Ms.

8    Papadopoulos' deposition.  She's the plan funder (sic), she's

9    the one who's supposed to put up the million dollars, and we

10   scheduled her deposition, and with no notice she canceled.

11           And so, you know, I feel like the debtor's trying to

12   race to get the disclosure statement approved before we

13   actually have that deposition.  And I really believe that we

14   should have all of these on the same track, the motion to

15   dismiss and the disclosure statement, because all of the issues

16   that we've raised are really issues that Your Honor I think

17   should hear before the plan goes out to the parties.

18           I think it's unfair to say to my client that next week

19   the disclosure statement's going to be approved, when this

20   issue of Ms. Papadopoulos's deposition is still outstanding.  I

21   mean, we don't see, based on our depositions of the other

22   parties, it's clear to us that she's a straw person for this.

23           And I think those are issues that, Your Honor, we

24   would like you to look at as an issue of due -- of good faith,

25   which we think there's a good faith requirement at all the

Mr. George                                8

1   points in the case, including at the time that you send the
2   disclosure statement out. And we're concerned that we haven't
3   had a chance to talk to Ms. Papadopoulos, we don't know that
4   she has any financial resources with which to obtain a loan.

5          And it's clear from the depositions that all the same
6   people are going to be in control of this case -- of this
7   company, once Ms. Papadopoulos as the plan proponent moves
8   forward with it. And we think that those raise serious good
9   faith issues that we think should be heard by Your Honor before
10  the disclosure statement goes out.

11         In the interim, Your Honor, you know, the debtor is
12  operating profitably, it's paying its bills, and, you know,
13  there is no exclusivity so, you know, the rush to get this plan
14  out, you know, in our view, is just an effort to try to box our
15  client out of what we consider significant issues with respect
16  to that plan.

17         THE COURT: Okay. Well I'll carry the disclosure
18  statement until next week. Reserving judgment on the issue Mr.
19  George raises as to whether it will be approved prior to a
20  opportunity to conduct the deposition of Ms. Papadopoulos. I
21  saw your motion this morning. I'll put it on for a hearing
22  next week on Wednesday, as well.

23         So that's what we'll do with those two things.
24         MR. GEORGE: Thank you, Your Honor.
25         MR. CIARDI: Thank you, Your Honor.

Mr. George                                9

1    Your Honor, then I guess I then would have the next to
2    address the next business sort of issue would be the critical
3    vendor motion.

4            THE COURT:  Yes.

5            MR. CIARDI:  And I'd ask Your Honor's preference.  You
6    may have some thoughts on the motion that may address it up
7    front, without knowing what the treatment will be to creditors
8    under the plan, and how we intend to address that, or -- I
9    don't know whether you'd rather see that in the context of the
10   agreements that are reached with the Committee, with all
11   creditors, so that you could view it in that context as well.

12           So I -- I'm prepared to argue the critical vendor
13   motion.  I'm also prepared to adjourn that one week so that
14   Your Honor has the plan, the proposed plan and the treatment
15   that's been agreed to hopefully by the Committee, in front of
16   you as part of that argument.

17           I don't know what Your Honor's preference for that
18   would be.  It maybe easier to have every --

19           THE COURT:  Well I would agree -- yes, I have a pretty
20   good feeling about not approving it until the rest of the stuff
21   it seems sorted out to me.

22           So if you are out of that, that I'll just put it over
23   until next week as well.

24           MR. CIARDI:  That's fine, Your Honor.

25           THE COURT:  Okay.  Now then does that just leave us

The Court                                    10

1    with --

2           MR. CIARDI:  That just leaves, I think, the motion

3    to --

4           THE COURT:  Expedited hearing.  Well I think that it

5    was beneficial that -- are you smiling, Mr. Barnes?

6           MR. BARNES:  No, I'm not, Your Honor.

7           THE COURT:  Good.  I think it was beneficial that when

8    I saw this I think last Monday or Tuesday, that I didn't speed

9    it up and put it on for a hearing last Wednesday, and in the

10   alternative put it on for a hearing this Wednesday, because it

11   gave me time to calm down.

12          And over the course of the week, I assure you that I

13   not only researched the legal issues of conduct at depositions

14   and the scope of depositions, and so forth, but I read and

15   reread the transcript.

16          And your behavior, Mr. Ciardi, was far from exemplary.

17          However, in 20 years I have never seen behavior as

18   disgraceful as -- how do I pronounce that gentleman's name?

19          MR. KENNERLY:  Mallife (phonetic), Your Honor.

20          THE COURT:  Mallife.  I see that Mr. Mallife is not

21   present.  I would have thought he would have had the courage

22   and the dignity to appear here and face the consequences of

23   what I have just characterized as the most disgraceful behavior

24   I have seen in 20 years.

25          And I don't need to describe it any more, because it

The Court                                11

1    speaks for itself.  There's a transcript.  Shocking.  It made
2    me sick to my stomach to read his sarcastic, arrogant,
3    braggadocio, his repeated, relentless attacks on his opponent's
4    family, for goodness sakes.

5         And you were there, Mr. Barnes.  He was most notably
6    an embarrassment, a total embarrassment to himself, but an
7    embarrassment to our entire profession, to the members of the
8    Bar, to the members of the public.  I felt terrible for the
9    people who had to witness those immature, out-of-control,
10   unprofessional tirades.

11        I felt sorry for the lawyers in the room.  I felt
12   sorry for the lay people, the court reporter, the interpreter.
13   I simply cannot understand, under any set of circumstances
14   under the sun, how a member of our profession could conduct
15   himself in that fashion in a deposition.

16        I was stunned.  And so, so disappointed.  You've asked
17   for sanctions, Mr. Ciardi.  And I'm going to hold that aspect
18   of it in abeyance, because I read Mr. George's motion today and
19   I'm not particularly happy with the picture that's been painted
20   of Ms. Papadopoulos, and her absence from the scheduled
21   deposition at the last minute based on a claim of illness.

22        But I will address myself to certain other things.
23   Oh, and one reason I'm inclined to hold the sanctions motion in
24   abeyance, is because both sides failed to do what they should
25   have done, what they repeatedly threatened each other with

The Court                                              12

1    doing throughout the session, which was to call the Judge.

2          Both sides said any number of times, I'm going to call

3    the Judge, I'm going to call the Judge. Both sides said to

4    each other, so call the Judge, so call the Judge. Nobody

5    called the Judge.

6          Had you called the Judge, I would have resolved the

7    issues for you early on and avoided what followed. I don't

8    know if Mr. Papadopoulos took pleasure in seeing this

9    out-of-control gunslinger of his make such a fool of himself at

10   the deposition.

11         Maybe he thinks that's good, zealous advocacy. But,

12   you know, people with your depth of experience have to know

13   that there's a day reckoning. Every word was being taken down.

14   Sooner or later, someone was going to read this and say, what

15   do you think you are doing?

16         Every objection is overruled. Mr. Papadopoulos will

17   reappear for a continued deposition, and he will answer

18   questions about all of those issues that were raised about his

19   background, about his business dealings, about his contacts

20   with people at the operation. And I took notes of Mr.

21   Mallife's objection to Mr. Papadopoulos being asked to identify

22   the people who were providing him with this information from

23   the company, because he feared that he would be discharged in

24   retaliation.

25         And I don't take that lightly. But he will identify

The Court                                13

1   them.  And if they are discharged in retaliation, then I'm sure

2   consequences will follow from that.  But he is going to testify

3   to those matters.  And what we're going to do is schedule it on

4   a date that's mutually convenient for both sides and me.

5        (Transcriber change)

6        MR. GEORGE:  I'm sorry, Judge, I --

7        THE COURT:  -- and me as well.  And I'll be sitting by

8   the phone.  And if there are objections or there is misconduct,

9   I expect to be called.

10       Mr. George, I'm disappointed in your office.  Mr.

11  Barnes, you were there.  You should have done something.  I

12  don't know whether this man needs anger management therapy,

13  ethics training, or both.  I suspect it's the latter.  I

14  suspect it's both.

15       MR. BARNES:  I apologize to the Court, Your Honor.

16       THE COURT:  I found myself wondering whether Mr.

17  Mallife had mentors in his past, whether he has a family,

18  whether in his past; law professors, perhaps.  Maybe his law

19  partners, maybe adult-aged children.  And I wondered if he had

20  such acquaintances whether he would be proud to have them read

21  that deposition.  To say his conduct was disgraceful does a

22  disservice to those who are merely disgraceful.  I had half a

23  mind to simply bundle it up and send it to the Disciplinary

24  Board.  He needs discipline or help of some kind.  That was

25  atrocious.  You know that, don't you?

The Court                              14

1      MR. GEORGE: Yes, Judge. And I -- I take

2   responsibility for it. Even though I wasn't there, Your Honor,

3   it was my office's responsibility to make sure he behaved

4   himself, and I failed at that.

5      THE COURT: Grievously. I began by saying he didn't

6   have the courage or dignity to appear, and, Mr. Kennerly, you

7   seem to want to reply to that?

8      MR. KENNERLY: Yes, Your Honor, because I must share

9   in some of the blame for that. And the reason why he's not

10  here is because when he first received the scheduling of it for

11  today, he -- that same day -- where he is today, he's in

12  another jurisdiction. He has two weeks left on a product

13  liability case. He's the only counsel on it. It's the only

14  testing they can do for it.

15     He took the issue to me. I went through -- there's a

16  discovery master on that case. It's been extended three times.

17  I went through all the hearings of the discovery master to see

18  if there was any opportunity that the discovery deadline could

19  be reestablished because the testing has to be scheduled weeks

20  or months in advance. I went through all that. I looked

21  through his experts, what he was going to do. And upon

22  reviewing that, I told him that for that case he really had no

23  option, that there was no chance he could move discovery

24  several weeks or months. And so I conferred with him on that.

25     He -- it's my understanding that either he or Mr.

The Court                                    15

1   Barnes -- I don't want to involve Mr. Barnes, but I can't
2   remember who called the Court to see if it could be rescheduled
3   earlier and the answer was no. So I conferred with him, and I
4   told him I felt for that case he simply was the only person --
5   he's the only counsel of record. He had to go to that testing.
6   That had to occur or his client there was going to be
7   sanctioned or precluded from evidence or whatnot. And so I --
8   I advised him that I would come here, even though it would be
9   obviously not the ideal or preferable source. So, Your Honor,
10  I must share in the blame for that.

11          The -- the second that I'd say to Your Honor is, in
12  terms of Your Honor's remarks of -- Mr. Mallife, I know, has in
13  the past spoken with Mr. Sam Stretton about some of how to
14  practice law. And what I would offer to the Court is I can go
15  right back to my office and I can send that deposition to Mr.
16  Stretton. And I assure you that whatever Mr. Stretton tells
17  him about it would be taken very well to heart.

18          I think that would be an appropriate -- I would not
19  say final resolution, I know Your Honor is waiting for more on
20  this, but I think that would be a -- a good faith effort
21  forward on what to do. And I will certainly convey to Mr.
22  Mallife the severity of the problem and importance to Your
23  Honor, and convey the same to Mr. Stretton.

24          THE COURT: And suggest to Mr. Mallife that he
25  acquaint himself with the seminal decision in this jurisdiction

23

1          MR. CIARDI:  So we'll then just carry this then for

2    -- till next week just for calendar purposes?

3          THE COURT:  Yes.  We'll -- we'll carry this for

4    control purposes.

5               MR. CIARDI:  Thank you, Your Honor.

6               THE COURT:  All right.  Thanks.

7               ALL COUNSEL:  Thank you, Judge.

8               THE COURT:  Okay.

9          (Proceedings concluded at 11:11 a.m.)

10                   C E R T I F I C A T I O N

11          We, Josette Jones and Brenda Boulden, court approved

12   transcribers, certify that the foregoing is a correct

13   transcript from the official electronic sound recording of the

14   proceedings in the above-entitled matter.

15

16

17   *Brenda Boulden*          June 21, 2013

18   BRENDA BOULDEN

19   DIANA DOMAN TRANSCRIBING

20

The Court                               16

1  on these issues, being Judge Gawthrop's decision back in '93,

2  Clifton Precision. He should also read Judge Pollak's 2008

3  decision in Hopkins v. New Day Financial, where Judge Pollak

4  talks about the, quote, defense of depositions, end quote, and

5  issues of relevance. Judge Pollak in that case was faced with

6  counsel defending a deposition. And he said that the counsel

7  took what could be described as, quote, an active role, closed

8  quote.

9          I do not share, unfortunately, the temperance of Judge

10  Pollak -- the late Judge Pollak, for whom I have the greatest

11  respect. So I am compelled to vent some of my umbrage at what

12  transpired, no doubt, in a way that Judge Pollak would have

13  managed to avoid.

14          There are a legion of other cases germane to this

15  topic. I think one of the comments that stuck with me in

16  particular when Mr. Mallife, obviously in a loud tone of voice,

17  since he was remonstrated to lower his voice any number of

18  times, declared himself to, quote, be in control here, end

19  quote. And I thought this man is -- is an out-of-control

20  megalomaniac. He had a very limited role there that day. He

21  was not, quote, in control, closed quote. Shocking.

22          Confirm on yourselves and come up with a series of

23  three dates, so that I can attempt to accommodate them into my

24  schedule sometime over the next two or three weeks. It's

25  summer; it's the holiday. So do that, and then contact my

The Court                                17

1  chambers with those dates.  And Mr. Papadopoulos shall appear,

2  or he shall not testify.

3              MR. GEORGE:  Your Honor --

4              THE COURT:  And he shall be held in contempt.

5              MR. GEORGE:  -- I understand.

6              THE COURT:  All of the objections are overruled.

7  Every single one of them.  He's to answer --

8              MR. GEORGE:  Your Honor --

9              THE COURT:  -- in full all of the questions.

10             MR. GEORGE:  Your Honor, and I -- I'm not trying to

11 goat you, but with the objections to relevance at the time of

12 trial, that would be preserved?  As -- as long as that caveat,

13 I'm fine, Your Honor.

14             THE COURT:  And that's what he should have done.  But

15 too late for that.

16             MR. GEORGE:  Again, Your Honor, I -- I want to

17 apologize, Judge, for letting that get out of control in the

18 fashion that it did.  That -- it's been an emotional ride, I

19 think, for all of the parties, and I think that got the best of

20 -- of Mr. Mallife that day.  I apologize for not taking control

21 of it and -- and nipping it in the bud.  And so I want Your

22 Honor to understand that we take very seriously the comments

23 that you make to Obermeyer about our obligations to the Court

24 as well.

25             THE COURT:  Do you have anything to say about Ms.

The Court                                                18

1    Papadopoulos and this "I'm sick the morning of the test"?

2              MR. CIARDI: Yes, Your Honor. She was under the care

3    of a doctor that morning. I advised Mr. George about an hour-

4    and-a-half before the deposition and offered to substitute one

5    of the other adjourned depositions, so that we didn't lose a

6    day.

7              THE COURT: I saw your -- I saw your email.

8              MR. CIARDI: And then I then was asked to get some

9    dates the following week. I got three dates, the 17th, 18th,

10   and 19th. And this will be all in our response. We heard back

11   from Mr. George that the 18th was acceptable. It was not

12   acceptable to Mr. DiMassa or Mr. Biely (phonetic). And we were

13   in the process of getting another set of dates for next week

14   when the motion was filed. So we had been proceeding under the

15   assumption that we were getting dates.

16              And we'll address all of that in the response, Your

17   Honor, but we believe we acted appropriately. And there are --

18   there are issues and -- medical issues that she does have, and

19   we'll address them.

20              THE COURT: Okay. Bring proof.

21              MR. CIARDI: I will, Your Honor.

22              THE COURT: Bring proof that she was at a doctor's

23   office --

24              MR. CIARDI: Understood, Your Honor.

25              THE COURT: -- that morning. I don't want to hear, "I

The Court                                    19

1   was there." I want proof.

2            MR. CIARDI: Understood.

3            THE COURT: Weren't you able to serve as the honest

4   broker, Mr. DiMassa?

5            MR. DIMASSA: Your Honor, sorry, I -- I made attempts

6   during breaks. The deposition, as Your Honor, can see, was

7   somewhat out of control from the outset. I'm sorry that I

8   couldn't have done more to -- to try to influence the -- the

9   compartment of the attorneys at the deposition. Believe me,

10  I'll try even harder next time. I don't think it's going to be

11  necessary, but --

12           THE COURT: Well, you will have a number to reach me.

13  But it would be a risky move to push things to the point where

14  you have to, because you're -- you're on the edge now. Again,

15  I don't know what to say. It was -- it was sad to read that.

16  I have -- I have known you all a long time, and, you know, I

17  have respect for all of you. I don't know Mr. Mallife at all.

18  I couldn't pick him out of a crowd.

19           MR. GEORGE: And, Your Honor --

20           THE COURT: But he -- he made it clear that he was

21  counsel for Mr. Papadopoulos in that -- in that situation. You

22  were in the backseat, Mr. Barnes, but you shouldn't have been.

23           MR. BARNES: You're right, Your Honor.

24           MR. GEORGE: Your Honor, could I just mention one

25  thing? And I'm not saying this to ameliorate against anything

The Court                                                      20

1    that happened, but in -- in defense of Mr. Barnes, he did ask

2    Mr. Ciardi to try to hold those kind of issues that we thought

3    would be inflammatory until the end. And MR. Ciardi jumped

4    right into it.

5         And -- and I'm not suggesting he didn't have the right

6    to go in whatever order he wanted, but there is the -- you did

7    mention that there were two sides to this issue here. And I

8    think that Mr. Ciardi, you know, was attempting to --

9         THE COURT: Well, I may have said two sides of the

10   issue --

11        MR. GEORGE: And I'm -- and I'm --

12        THE COURT: -- two sides to the substance of the

13   issues, fair enough. Only one side, really, as to the

14   behavior. Again, I mean, telling your opponent to shut up, Mr.

15   Ciardi, is never a really good move to make when -- when

16   someone is going to take it down. It's in your own pleading.

17   And we've already been down the road with your off-color remark

18   at a deposition in a prior proceeding. But, I mean, again, ::

19   started out by saying your behavior wasn't exemplary. But it

20   -- it doesn't begin to compare to Mr. Mallife.

21        MR. GEORGE: Understood, Your Honor.

22        THE COURT: Okay. Well, that's -- that's all I have

23   for you then. I'll -- I'll look for the dates that you get to

24   me, and then we'll be in touch to set something up. I'll see

25   you next Wednesday on the matters that have been continued and

The Court                                                    21

1    the expedited hearing that I read this morning.

2            MR. DIMASSA:  Your Honor, if I may?  On a hopefully

3    somewhat lighter note, Your Honor may have received

4    correspondence from -- from me --

5            THE COURT:  I did.

6            DIMASSA:  Regarding the appointment of a mediator.  We

7    -- we've got agreement from debtor's side.  I have not gotten a

8    committed response from Mr. Papadopoulos' side, but we're --

9    we're continuing to talk.  And I am, again, cautiously

10   optimistic.  I remain cautiously optimistic that we can wrap

11   all of these issues up with a -- with a global settlement.  I -

12   - I do believe that if both sides continue to -- their attempts

13   to be reasonable, that a mediator may -- may have a positive

14   impact on these discussions.

15           THE COURT:  All right.  I certainly hope so, Mr.

16   DiMassa.  That would be terrific.  Let me -- let me share this

17   with you.  I'm not going to ask another Judge to take this case

18   as a mediator, because if someone asked me to do it, I would

19   resent them forever, I'm sure.

20           So my -- my suggestion is that you put your heads

21   together from either the mediator roster or somebody, you know,

22   in a -- in the Bankruptcy Bar with experience in complicated

23   commercial transactions and see if you could work something out

24   with them.  No doubt they would want to be compensated.  I

25   can't see somebody just saying, oh, yeah, sure, I'll take this

The Court                    22

1   on, just like a garden variety preference case, no problem.  I
2   think this will be something they would want to be compensated
3   for their efforts for,

4           So we'll see about that, if we get to that point.  But
5   maybe -- maybe that's the thing for you to do is -- you know,
6   it's a profitable business, and -- and at the risk of repeating
7   myself, as I told you folks, I think --

8           MR. CIARDI:  Twice now, Your Honor.

9           THE COURT:  Right. -- this -- this looks to me like
10  mutually assured destruction.  If you're -- if you lose that --
11  that adversary and are considered a shareholder, you're at the
12  back of the pack with everybody else.  And if you lose it,
13  well, then, they have a $4 million claim and, you know, that's
14  not so good for you.  It's a case that warrants some effort at
15  settlement -- some serious effort, perhaps with the assistance
16  of a mediator.

17          Okay.  All right.  Thank you, all,

18          ALL COUNSEL:  Thank you very much, Your Honor.

19          MR. CIARDI:  Your Honor, do you want an order on the
20  motion to compel?  Or do you want us to just give you dates and
21  then we'll deal with an order at a later point in time?

22          THE COURT:  We'll deal with an order -- the record
23  will speak for itself.  At this point, you can just, either by
24  phone or letter, give me the -- the proposed dates and I'll be
25  back to you.

23

1            MR. CIARDI: So we'll then just carry this then for

2    -- till next week just for calendar purposes?

3            THE COURT: Yes. We'll -- we'll carry this for

4    control purposes.

5            MR. CIARDI: Thank you, Your Honor.

6            THE COURT: All right. Thanks.

7            ALL COUNSEL: Thank you, Judge.

8            THE COURT: Okay.

9            (Proceedings concluded at 11:11 a.m.)

10                C E R T I F I C A T I O N

11            We, Josette Jones and Brenda Boulden, court approved

12    transcribers, certify that the foregoing is a correct

13    transcript from the official electronic sound recording of the

14    proceedings in the above-entitled matter.

15

16

17    *Brenda Boulden*            June 21, 2013

18    BRENDA BOULDEN

19    DIANA DOMAN TRANSCRIBING

20

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PENNSYLVANIA EASTERN

IN RE:                              )   Bankruptcy No. 13-10087-SR
                                    )   Chapter 11
                                    )
                                    )
                                    )
NTP MARBLE, INC.,                   )
                                    )
                                    )   Philadelphia, PA
                                    )   June 26, 2013
              Debtor.               )   1:47 p.m.


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE STEPHEN RASLAVICH
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:            ALBERT A. CIARDI, III, ESQUIRE
                           JENNIFER E. CRANSTON, ESQUIRE
                           CIARDI, CIARDI & ASTIN, PC
                           2005 Market Street
                           Suite 1930
                           Philadelphia, PA 19103

For Committee of
Unsecured Creditors:       RICHARD RILEY, ESQUIRE
                           RUDOLPH J. DIMASSA, JR., ESQUIRE
                           DUANE MORRIS LLP
                           30 South 17th Street
                           Philadelphia, PA 19103

For US Trustee:            GEORGE M. CONWAY, ESQUIRE
                           UNITED STATES TRUSTEE
                           833 Chestnut Street
                           Suite 500
                           Philadelphia, PA 19107

For Tasos Papadopoulos:    EDMOND M. GEORGE, ESQUIRE
                           DAVID ALEXANDER BARNES, ESQUIRE
                           OBERMAYER, REBMANN, MAXWELL &
                           HIPPEL, LLP
                           1617 JFK BLVD.
                           Suite 1900
                           Philadelphia, PA 19103

APPEARANCES (Continued)

For Angelo Bekas:

THOMAS D. BIELLI, ESQUIRE
O'KELLY ERNST & BIELLI, LLC
1600 Market Street
25th Floor
Philadelphia, PA  19103

For Anastasios
Papadopoulos:

FRANCIS MALOFIY, ESQUIRE
FRANCIS ALEXANDER, LLC
280 N. Providence Road
Media, PA  19063


Audio Operator:

LINDA LOBOSCO

Transcribed by:

DIANA DOMAN TRANSCRIBING
P. O. Box 129
Gibbsboro, NJ  08026
Office: (856) 435-7172
Fax:    (856) 435-7124

Email:  dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

3

I N D E X

| COLLOQUY: | PAGE |
|---|---|
| By Mr. Ciardi | 5, 15, 17 |
| By Mr. George | 11, 16 |
| By Mr. Malofiy | 21 |
| By Mr. Di Massa | 24 |

Colloquy                                                              4

1    (The following was heard in open Court at 1:47 p.m.)

2        THE COURT:  I think that just leaves the Marble

3    Company case.  You folks can come up.

4        (Pause)

5        THE COURT:  Okay, so where are we this week?

6        MR. CIARDI:  Albert Ciardi, Jennifer Cranston, counsel

7    for the debtor.

8        MR. DI MASSA:  Rudolph Di Massa and Rich Riley, Duane

9    Morris, counsel for the Creditor's Committee, Your Honor.

10       MR. CONWAY:  George Conway, United States Trustee.

11       MR. GEORGE:  Edmond George and Alex Barnes from

12   Obermayer on behalf of Tasos Papadopoulos.  I also have Mr.

13   Malofiy here with me today, Your Honor.

14       MR. MALOFIY:  Good afternoon, Your Honor, attorney

15   Francis Malofiy representing Anastasios Papadopoulos in this

16   matter.  I apologize for not being here last week.

17       THE COURT:  Okay, well the question stands.

18       MR. CIARDI:  Your Honor, there's several matters on

19   the list and one that's not on the list today I would raise,

20   although I don't think it will result in any issues.  The

21   debtor this morning filed an amended plan and amended

22   disclosure statement.

23       Obviously, we can't proceed with them today.  No one's

24   had any time to look at them.  I do have clean and black line

25   versions that I can hand up to the Court for Your Honor to look

Mr. Ciardi                                5

1    at at some other point time.  If I can approach with them?

2         (Pause)

3         MR. CIARDI:  So, Your Honor, I think we would just

4    need a date for another disclosure statement hearing that would

5    address the amended documents that we filed.  I know that there

6    was an additional objection the previously filed disclosure

7    statement yesterday by Mr. George.  I assume they'll probably

8    need to file another objection to this one so a hearing ten, 14

9    days out -- whatever Your Honor's comfortable with to address

10   that.

11        This disclosure statement and plan though does have

12   the agreement in support of both the Committee and PNC Bank, so

13   we have now reached agreement with those two parties with

14   regard to the terms of a plan and disclosure statement.

15        THE COURT:  Well, one of the things you'll recall that

16   we discussed last week was Mr. George's ongoing desire to take

17   the deposition of Ms. Papadopoulos.

18        MR. CIARDI:  That's scheduled for tomorrow.

19        THE COURT:  Okay.  I didn't know what the upshot of

20   that conversation was.  Okay, well, if it's scheduled for

21   tomorrow then I suppose a couple -- maybe a few weeks would be

22   reasonable.  Is two weeks all right with you, Mr. George?

23        MR. GEORGE:  Yes, a few weeks is fine, Judge,

24   whatever's --

25        THE COURT:  Well, a couple is two, versus a few.

Mr. Ciardi                          6

1    MR. GEORGE:  Oh, I thought you said a couple or a few.
2    I mean, ten to 14 days, I have no problem with that.
3              THE COURT:  What do you like, two or three?
4              MR. CIARDI:  Two weeks, Your Honor, would be great.
5              THE COURT:  Nancy?
6              THE CLERK:  July 10th at 1:30.
7              THE COURT:  Okay.
8              MR. CIARDI:  Your Honor, that will segue into the
9    critical vendor motion, which will need an adjustment in that
10   part of the plan is that the two largest unsecured creditors
11   are going to essentially leave their debt in the debtor, but on
12   an administrative basis; go back to terms, but not have the
13   debt paid down, which will allow the debtor to focus on a
14   smaller group of unsecured claims initially, the ones that are
15   really under $500,000.
16             It's laid out in the plan but what it will mean is
17   that the critical vendor motion and the request will need to be
18   modified to address what it is that will now dovetail with the
19   plan and the disclosure statement.  So we would probably ask
20   that that be heard at the same time and we'll file an amendment
21   to reflect that in the next day or so, so that there's plenty
22   of notice of that to creditors and they can be addressed at the
23   same time, if possible.
24             THE COURT:  Any objection to that procedure, Mr.
25   George?

Mr. Ciardi                                7

1    MR. GEORGE: No, Your Honor.

2    THE COURT: Okay. Why don't you have it filed by the

3    end of the week and we'll put it on for the 14th -- no, excuse

4    me, the 10th --

5    MR. CIARDI: The 10th.

6    THE COURT: -- with the other matter.

7    MR. CIARDI: Okay.

8    MR. GEORGE: Your Honor, the only thing is that if

9    that motion is amended, I may want to just take the deposition

10   of MSI because we have some issues about what was owed and what

11   was listed by the debtor initially and so I want to try to

12   really understand the business relationship, which based on

13   what's in the motion and based on what we heard earlier from

14   the debtor, there doesn't seem to be a complete congruence to

15   the two positions.

16   I think initially the debtor didn't indicate that they

17   had the kind of debt due, and I'm trying to understand really

18   how the debtor intends to move obligations to the

19   administrative obligations if they're really pre-petition

20   obligations.

21   And so we've asked I believe in connection with the

22   motion to dismiss for all of the records between the debtor and

23   MSI and I'm not a hundred percent sure, but I don't think we've

24   received them from the debtor yet so we haven't even been able

25   to look at that to see whatever example MSI got a preference

Mr. Ciardi                                      8

1   which would then I believe impact on any request to pay them as

2   critical vendors so --

3           THE COURT: All right, well we'll leave it scheduled

4   as we just discussed, you'll proceed accordingly and if we run

5   into a scheduling dilemma, we'll talk about it.

6           MR. GEORGE: That's fine, Your Honor. Thank you.

7           THE COURT: Okay.

8           MR. CIARDI: Your Honor, I guess the next -- the only

9   other matter I had on the agenda that -- well not agenda but on

10  the list would have been the motion to compel that was filed by

11  Mr. George as to Pamela Papadopoulos. We filed our response,

12  we've attached a letter from her doctor.

13          I have additional medical information which vindicated

14  -- if Your Honor wanted to see it, I would prefer to present it

15  in camera, but her deposition is scheduled for tomorrow. She

16  is in the courtroom today.

17          If Your Honor would have questions with her, the only

18  thing I would ask is if they are of -- if they are directed to

19  what was the ailment or condition which caused her issues, that

20  that be done again either at sidebar or in camera. But other

21  than that, we are appearing for the deposition tomorrow, and I

22  understand Mr. --

23          THE COURT: What time?

24          MR. CIARDI: 10:00. I understand Mr. George is taking

25  it and all the other depositions have gone off without a hitch

Mr. Ciardi                                      9

1    that he's taken so I don't anticipate any issues with that

2    deposition.

3                THE COURT:  Where's Ms. Papadopoulos?

4                MR. CIARDI:  Right there, Your Honor.

5                THE COURT:  Okay.  You're going to be at the appointed

6    place and time tomorrow?

7                MS. PAPADOPOULOS:  Yes.

8                THE COURT:  Okay.  All right, well that's satisfactory

9    for present purposes.

10               Mr. George, what about the dates you folks were going

11   to get me for the continued deposition of Tasos?

12               MR. CIARDI:  We have two dates left, Your Honor, that

13   are the -- we got -- we exchanged dates again this morning.  I

14   think we're down to either Monday in the morning or the 3rd in

15   the afternoon.  They're good for all counsel but I don't know

16   if any of them are good for Your Honor.

17               THE COURT:  I'm sorry, could you give it to me again?

18               MR. GEORGE:  1, 3, or 10, Judge, I think were the

19   three dates.

20               MR. CIARDI:  Mr. Bielli can't do the 10th so we're

21   down to 1 and 3.  I'm not anticipating more than a two or three

22   hour deposition, given Your Honor's guidance, so we could do a

23   morning in on the 1st, or the afternoon on the 3rd.

24               THE COURT:  Okay.

25               MR. CIARDI:  Unless the 10th is better and Mr. Bielli

Mr. Ciardi                                    10

1   can send somebody.  I don't -- I don't know what Your Honor's
2   preference is, if any of those would work.
3            MR. BIELLI:  Whatever works for Your Honor is fine.
4            THE COURT:  Okay.  Well, the afternoon before the
5   holiday might be problematic for folks, so why don't we go with
6   either the 1st or the 10th.  What time do you contemplate?  The
7   morning?
8            MR. CIARDI:  We would prefer the 1st at 10:00 a.m.,
9   Your Honor, and I think we could be done by 1:00 or we could
10  start earlier and be done by noon.  And again, I don't know
11  what Your Honor's calendar is and I know you wanted to be
12  available.
13           THE COURT:  10:00 is probably best.  Is that all right
14  with you, Mr. George?
15           MR. GEORGE:  On the 1st, Judge?
16           THE COURT:  Yes.
17           MR. GEORGE:  Yes, we can -- we can make that date.  I
18  mean, the 10th would ultimately be the best date for me that I
19  wouldn't have to shuffle things around.  We were trying to get
20  three dates that worked --
21           THE COURT:  Right.
22           MR. GEORGE:  -- and so --
23           THE COURT:  Well --
24           MR. GEORGE:  -- the 10th would work better but if the
25  1st is the only time.

Mr. George                                          11

1     MR. CIARDI:  We have our hearings on the 10th that

2     were now, Your Honor.

3           MR. GEORGE:  Oh.

4           THE COURT:  Yes.

5           MR. GEORGE:  Okay.

6           THE COURT:  I'd just as soon get this rolling.  Okay,

7     July 1st, 10:00 a.m.  My office will provide you with -- well,

8     you call the office here.

9           MR. CIARDI:  We'll call chambers if there's an issue,

10    and if you don't hear from us, then it went without --

11          THE COURT:  So much the better.

12          MR. CIARDI:  So much the better.  Okay.

13          THE COURT:  Okay.

14          MR. GEORGE:  And, Your Honor, just two issues.

15    Obviously we're going to reserve -- we're going to make a

16    blanket reservation as to relevance so that we don't have to go

17    through objecting to every question.  Your Honor permitted us

18    to reserve the relevance until the time of trial so that's how

19    we intend to handle that, unless Your Honor feels that we

20    should object to every question on that paper so --

21          THE COURT:  Well, no, I don't.  I mean, I -- you know,

22    we've discussed this before.  I don't know whether it was in

23    this context or another.  Maybe it was with Mr. Bielli and his

24    client, some questions of similar nature but as to relevance, I

25    have to say my preliminary sense here is that because you folks

Mr. George                              12

1   have made credibility so central to the disputed issues that

2   the likelihood is that these things are relevant in that

3   context -- credibility.

4          I mean, you've both branded each other's -- you know,

5   respective sides to be blatant patent liars --

6          MR. GEORGE:  But, Your Honor --

7          THE COURT:   -- frauds -- you know --

8          MR. GEORGE:  Yes, I --

9          THE COURT:   -- it goes on and on and on so it doesn't

10  take much of a leap to get to the point of understanding that

11  while the credibility of the party making the assertions could

12  weigh heavily on the outcome.

13         MR. GEORGE:  And, well, Your Honor, I hope you're

14  holding judgment on it.

15         THE COURT:  As I told you --

16         MR. GEORGE:  I understand your preliminary thoughts.

17         THE COURT:  I tell you, my preliminary sense --

18         MR. GEORGE:  But we --

19         THE COURT:  -- just, you know --

20         MR. GEORGE:  But we've -- yes.

21         THE COURT:  -- taking a broad look at it --

22         MR. GEORGE:  Yes.  But in our view, Judge, the issues

23  that are before Your Honor in the motion to dismiss, really my

24  client isn't providing any of the facts and he has a judgment

25  which, right or wrong or whether they view it as appropriate or

Mr. George                              13

1    not or whether they think that he acted inappropriate, said
2    something or did something in the context of that, that was all
3    dealt with in front of the jury and all of those claims, if
4    there are any, have all been disposed of.

5          And so to the extent that my client's testimony would
6    really bear on the motion to dismiss and I'm having a hard time
7    wrestling through how my client, not having a valid Social
8    Security number, has anything to do with the fact that he holds
9    a judgment and he's a creditor in a case and we don't trust
10   management, I don't -- and I understand what Your Honor is
11   saying, I'm just hopeful that Your Honor will keep an open mind
12   to the positions that we were going to assert.

13         THE COURT:  I wouldn't have used the word
14   preliminary --

15         MR. GEORGE:  I know you did, Judge.

16         THE COURT:  -- if I had made up my mind.  We'll see
17   where it goes.

18         MR. GEORGE:  Judge, and the only other issue is that
19   there was a document request for Ms. Papadopoulos.  In the
20   context of Tom's deposition, there was a lot of testimony about
21   whether he and his wife were really divorced and we've raised
22   to the issue about transactions that happened subsequent to the
23   divorce when properties were still in their joint names.  They
24   live together now.

25         He pays the expenses, they have joint bank accounts

Mr. George                                    14

1    and what we requested -- and I think we put it in an amended

2    notice, but it's been a theme throughout our depositions of the

3    various parties here, is the documents behind that divorce.

4    We've asked for them a number of times. Can't get them in the

5    county. There's a docket for it. There is no property

6    settlement agreement that we could obtain from that.

7            Mr. Post (phonetic) said that he's seen that

8    settlement agreement between Mr. Papadopoulos and his purported

9    ex-wife, but we haven't either been provided the document, a

10   copy of it, and we haven't seen it, and we believe that bears

11   directly to who actually owns these properties that are being

12   transferred and liquidated and the proceeds are being used for

13   certain purposes.

14           THE COURT:  So these were part of your discovery

15   request?

16           MR. GEORGE:  Yes, Judge, it's --

17           THE COURT:  Okay.  And are they overdo then?  Is that

18   what you're telling me?

19           MR. GEORGE:  Well --

20           THE COURT:  (Inaudible) objection but no production?

21           MR. GEORGE:  Your Honor, they were attached to the

22   notice of deposition because she's a third party.  We attached

23   them to a subpoena request initially, we couldn't have her

24   served and then we sent out a notice at that position and we

25   had those documents attached to the notice.

Mr. Ciardi                                   15

1       THE COURT:  Well, who represents her?

2       MR. GEORGE:  I don't know that she has counsel --

3       MR. CIARDI:  I don't know if she has counsel, Your

4   Honor, but if I can respond, at the beginning of the case we

5   filed a motion for protective order to deal with -- and Your

6   Honor heard it on -- and entered an order that limited certain

7   all the non-debtor -- non-debtor transactions to a certain time

8   period or involvements with the debtor.

9       Now, obviously Mr. Tom Papadopoulos is a debtor, and

10  there are -- but his motion to dismiss is not on.  I'm not

11  standing on that issue, but some of the things that are

12  requested, Your Honor, are 15 years old, 16 years old.

13      Some of the things they're requesting involve Pam's

14  transactions solely among non-debtors and don't involve either

15  Tom or the debtor.

16      The debtor provided a whole host of the information

17  relating to the debtor and Pam (sic) transactions.  All of them

18  were -- all of those documents were provided.  Tom Papadopoulos

19  provided all his documents and the course of that production

20  and is part of his deposition.  A lot of the other items on

21  that list were also provided.

22      There was an initial list that came out on June 5th.

23  Yesterday we received another list that had more things on it,

24  some of which would go beyond the scope of Your Honor's

25  original protective order.  Frankly, I did not really look at

Mr. George                                                16

1   that one that came yesterday until this morning so some of it

2   may already have been provided, some of it may not have been

3   provided, some of it may be beyond the scope of what Your Honor

4   has already ruled upon.

5           THE COURT:  Well, doesn't that make this a little

6   clumsy to go forward with this deposition tomorrow morning

7   without having this resolved?

8           MR. CIARDI:  Well, Your Honor, we didn't get this --

9   there was a notice that went in the first deposition --

10          THE COURT:  Well, so I'm clear, Mr. George, are you

11   complaining of not having received material responsive to the

12   June 5th --

13          MR. GEORGE:  Well, there's actually both, Judge.  I

14   mean --

15          THE COURT:  -- subpoena --

16          MR. GEORGE:  Yes, we --

17          THE COURT:  -- or the latter on --

18          MR. GEORGE:  Both -- I think --

19          THE COURT:  -- yesterday or both?

20          MR. GEORGE:  -- the only thing we added yesterday was

21   the divorce records, right?  The only thing we added yesterday,

22   Judge, to the amended notice that we issued yesterday was with

23   respect to the divorce, and that goes directly to the issue in

24   the protective order about whether there are assets that really

25   belong to Tom Papadopoulos that are either in the possession of

Mr. Ciardi                                           17

1    or control or titled in the name of Pam Papadopoulos.

2              And if there's a position being taken by Tom

3    Papadopoulos that assets were transferred pursuant to some

4    agreement that they had subsequent to a divorce, then I think

5    we are entitled to see that, because that is directly on point

6    with the areas where Your Honor said that we do have a right to

7    inquire.

8              MR. CIARDI:  Your Honor, I have five categories in the

9    first one and I have 11 categories in the one that came

10   yesterday.  Now, some of the stuff I believe we've already

11   provided such as payments and employee benefits by NTP to Pam

12   Papadopoulos.  That's been provided.  Loans by and among NTP --

13   it's been provided.

14             The way I'm looking at it, Your Honor, it looks like

15   one through five has been provided.  Number six, that's a new

16   one but we're -- and that's in the old one and we will address

17   that.  Then there's an issue regarding a property sold in 2005.

18   Her tax returns from 2008 to present -- she's a non-debtor.

19   This isn't her asset deposition, Your Honor.

20             This deals with her transactions by and among this

21   debtor and or Mr. Papadopoulos and I don't know how it's

22   appropriate for her 2008 tax returns or any of her tax returns

23   to be there.  If Your Honor rules that they need to be

24   produced, then she will have to produce them.

25             MR. GEORGE:  Your Honor, she's a plan proponent.  She

Mr. Ciardi                                      18

1   purports to have a million dollars or able to get the million

2   dollars with her assets to put up as part of the -- what

3   they're calling the new value contribution, so I think we're

4   entitled to see what her finances are or whether her finances

5   from 2008 through today support her ability to obtain those

6   kind of monies.

7           THE COURT:  Well, I don't know, Mr. George.  You know,

8   I know a lot of people who had 401(k)s that were worth a

9   million dollars in '08 are worth something very different today

10  so --

11          MR. GEORGE:  Well, but that may be true --

12          THE COURT:  -- it seems like a while ago.  The most

13  recent tax returns.

14          MR. CIARDI:  2012, Your Honor?  Or 11 if there's no

15  12?

16          MR. GEORGE:  Your Honor --

17          THE COURT:  Yes.

18          MR. CIARDI:  Okay.

19          MR. GEORGE:  -- the one reason why we went back that

20  far is that in 2007 -- purportedly Tom and Pam were divorced in

21  1998 -- in 2007, they still owned a property that was in their

22  joint names.  That property was liquidated and a million

23  dollars was generated.  That is the money that Tom purports

24  that Pam put up in order to help start NTP.

25          In reality, we believe that was Tom's money as well,

Mr. Ciardi                                    19

1    and so we're trying to understand who claimed that money on

2    their income tax return --

3              THE COURT:    (Inaudible) the questions at the

4    deposition --

5              MR. GEORGE:    Yes, Judge.

6              THE COURT:    -- and if you need to verify ambiguous or

7    unclear answers, we'll either have a followup deposition or a

8    conference call.

9              MR. GEORGE:    That's fine, Judge.    Thank you.

10             THE COURT:    Okay.    Anything further?

11             MR. GEORGE:    Your Honor, there were -- oh, I'm sorry,

12   did I interrupt?

13             MR. CIARDI:    No, nothing further, Your Honor.

14             MR. GEORGE:    There are two matters I believe that --

15             MR. CIARDI:    Your Honor, the cash collateral order

16   expires June 30th.    We have an agreement with the bank to just

17   continue the same terms for another three months.    I need to

18   give that to Mr. George.    It's literally one line that attaches

19   a budget and says continued for another three months, and we

20   will just submit that to Your Honor that it does that.    And I

21   don't think that's a big problem for anybody, but I forgot to

22   mention it.

23             MR. GEORGE:    That's fine.

24             Your Honor, all the other matters are in the two

25   individual cases that come forward or that are in the next

Mr. Ciardi                                      20

1    matters on Your Honor's list --

2                THE COURT:  Right.

3                MR. GEORGE:  -- and we're basically going -- we're

4    willing to adjourn those matters until the 10th, although I

5    see --

6                MR. BIELLI:  I've already --

7                MR. GEORGE:  -- there's an application --

8                MR. BIELLI:  I've already withdrawn the applications,

9    Your Honor, and the other two -- the other -- there's only one

10   motion to dismiss in Niko's case and then there's Mr. George's

11   clients two objections that there's exemption in Tom and Niko's

12   cases and we've agreed that they would track the motion to

13   dismiss in the corporate case, Your Honor.  Well, we talked

14   about that at prior hearings.

15               MR. GEORGE:  So if we put everything in for a control

16   purpose on for the 10th, Your Honor, at the same time, and I

17   think that addresses it.

18               THE COURT:  Okay.  Nancy will take care of that.

19               MR. CIARDI:  Your Honor, I guess the only other open

20   matter was you had adjourned the motion to compel deposition

21   until today I guess to get the dates.  Will that then be

22   adjourned to the 10th to see how that deposition proceeds?

23               THE COURT:  Let's do that, all right, the motion to

24   compel in the -- from last week's matter carried to the 10th as

25   well.  Okay, I have one or two things.

Mr. Malofiy                                    21

1       First of all, harkening back to last week, Mr.
2   Malofiy, have you had a chance to read the transcript of last
3   week's court proceeding?

4       MR. MALOFIY:  Yes, I did.  I want to apologize to the
5   Court.  I also want to apologize to my co-counsel, and I don't
6   mean to explain my conduct because I can't explain it, but what
7   I want to do is lay some groundwork as to my state of mind
8   going into the deposition.

9       And I did have the chance to review at length Judge
10  Pollak's opinion, and also Gothrup's (phonetic) opinion, and I
11  do want to share with you my understanding -- and maybe it was
12  a misunderstanding going into the deposition, so you understand
13  my state of mind which is relevant to a motion for sanctions.

14      Initially, Tasos's or Anastasios Papadopoulos's
15  deposition, we objected to it being taken, and then it was
16  agreed to and I think there was a conference call with Your
17  Honor with my co-counsel that his deposition would go on, but
18  it would be limited in scope, and not was an instruction that,
19  from my understanding, came from Your Honor.

20      Part of 30 -- Rule 30 of the Federal Rules of Civil
21  Procedure, it says, and quote 30, "Motion to terminate or
22  limit, 30(a)" -- excuse me 33(a), 33(b), it says, "The Court
23  may order the deposition to be terminated or it may limit its
24  scope and manner."

25      With that being said, the notice of deposition of my

Mr. Malofiy                          22

1    client was very specific, and it was very specific in that it

2    outlined the specific areas and topics that he would be asked

3    questions on and the specific areas and topics that testimony

4    was supposed to be elicited.  I have copies for Your Honor, I

5    have copies for opposing counsel.

6           If you look at them, it's very clear that the topics

7    that were supposed to be discussed and were supposed to be

8    inquired upon at this deposition were solely issues related to

9    the motion to dismiss and not the extraneous issues linked to

10   his immigration status, relating to the Social Security number.

11          If I may, may I approach the bench and show this to

12   Your Honor?

13                THE COURT:  No.

14                MR. MALOFIY:  Okay.  And --

15                THE COURT:  Mr. Malofiy, as carefully as you may have

16   read other things, I'm not sure you read the transcript of last

17   week's Court proceeding quite closely enough because I took

18   pains -- not great pains but I reviewed it myself just to make

19   sure that I did mention that I understood that there was a

20   difference of opinion as to the substance of legal questions

21   such as the ones you're describing.

22          I understood that.  If memory serves me, and it's in

23   Judge Pollak's opinion but it might have been in another case

24   that I reviewed, there is a description of the options which

25   counsel has when they believe that irrelevant material is being

Mr. Malofiy                                    23

1    inquired after, and it's to place the objection on the record,
2    let the deposition go forward.

3            Or, if counsel reasonably believes that the disclosure
4    of the information will be so prejudicial that -- and it is so
5    completely irrelevant that the prejudice outweighs going
6    forward, then counsel has the option of adjourning the
7    deposition and appearing before the Court to get a ruling on
8    the matter.

9            Now, or as in this case what you folks identified as a
10   third option, which was calling the Judge, you see, that's the
11   rule of law.

12           That's how we proceed when we have differences of
13   opinion -- strong differences of opinion as to the substance of
14   legal questions, just the sort you're describing, that but the
15   subpoena said this and it was narrow and it was the result of a
16   Court ruling, et cetera, et cetera, et cetera.  There are
17   procedures which professionals follow when they view the
18   process as being inappropriate.

19           One of the options, I'm certain you know, is not to
20   explode and go into a rant and a tirade and hurl abusive
21   comments at your adversaries.  That's what I was talking about,
22   not whether you were right or whether you were wrong.  There's
23   a time and a place to talk about whether you were right or they
24   were right as to what the scope was or whether this stuff is
25   irrelevant.

Mr. Di Massa                                    24

1       And Mr. George just made -- took great pains to place

2   on the record that they're going to make a blanket objection

3   and reserve until the time of trial. Let's not confuse what we

4   are talking about. We're not talking about the substance of

5   whether you're right that it's irrelevant or they're right that

6   it's irrelevant.

7       We're talking about the things you said. That's what

8   we're talking about, and that's what distressed me the most.

9   And that's what I want you to understand that you did wrong.

10      MR. MALOFIY: I understand that, Judge, and I take

11  full responsibility. It's no one on my team. I take full

12  responsibility in all the blame. I've even spoken to Mr. Sam

13  Stretton (phonetic) about it and he's counseled me on it and I

14  apologize to the Court. Like I said, I apologize to counsel.

15      THE COURT: Okay. All right. Enough said for now

16  then.

17      The second point I wanted to make -- anything on the

18  mediation?

19      MR. DI MASSA: Your Honor, unfortunately I'm -- I had

20  not gotten a great reception to the proposal that we appoint an

21  independent mediator. I'm going to make some additional effort

22  on behalf of the Committee and as the broker between the two

23  sides, but at this point, I'm a little bit fearful that Your

24  Honor's words about mutually assured destruction are becoming a

25  little bit more real. I will continue to push and I'm still

25

1  remaining hopeful that we can get some -- make some progress in

2  that regard.

3          THE COURT:  Okay.  All right.  Anything further from

4  you folks?

5          ALL COUNSEL:  Nothing further, Your Honor.

6          THE COURT:  Okay, we're adjourned.

7          (Proceedings concluded, 2:16 p.m.)

8                          *  *  *

9

10

11

12

13

14

15                  C E R T I F I C A T I O N

16          I, Diane Gallagher, Court approved transcriber,

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21  **Diane**        Digitally signed by Diane Gallagher
                     DN: cn=Diane Gallagher, o, ou,
                     email=dgallr8484@comcast.net,
22  **Gallagher**    c=US
                     Date: 2013.07.01 09:59:58 -04'00'          June 29, 2013

23  DIANE GALLAGHER

24  DIANA DOMAN TRANSCRIBING

25

25

1    remaining hopeful that we can get some -- make some progress in

2    that regard.

3                    THE COURT:   Okay.   All right.   Anything further from

4    you folks?

5                    ALL COUNSEL:   Nothing further, Your Honor.

6                    THE COURT:   Okay, we're adjourned.

7                    (Proceedings concluded, 2:16 p.m.)

8                                * * *

9

10

11

12

13

14

15                    C E R T I F I C A T I O N

16                    I, Diane Gallagher, Court approved transcriber,

17    certify that the foregoing is a correct transcript from the

18    official electronic sound recording of the proceedings in the

19    above-entitled matter.

20

21

22    _____ June 29, 2013

23    DIANE GALLAGHER

24    DIANA DOMAN TRANSCRIBING

25