IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL MARINO,                     :     CIV. NO. 11-6811
                    PLAINTIFF     :
                                   :
          V.                       :
                                   :
USHER, ET AL.,                     :
                    DEFENDANTS     :

**FINDINGS OF FACT AND INITIAL BRIEF ON BEHALF OF FRANCIS MALOFIY,
ESQUIRE IN REFERENCE TO THE SANCTIONS HEARING**

I. BRIEF PROCEDURAL HISTORY

The present matter involves a request for sanctions against Attorney Francis Malofiy for alleged communications with William Guice, a defendant in the captioned case. Mr. Malofiy retained present counsel, Samuel C. Stretton, Esquire, to represent him in the hearing involving the defense sanctions motion held before the Honorable Paul Diamond of the United States District Court for the Eastern District of Pennsylvania.

A hearing was held on January 6, 2014. The original hearing was scheduled for January 3, 2014 but due to a snowstorm, the federal court was closed.

At the January 6, 2014 hearing, Samuel C. Stretton, Esquire represented Attorney Francis Malofiy. Attorney Jonathan Davis and Attorney Bruce Castor, Jr. prosecuted the sanction motion on behalf of the Defendants.

At the conclusion of the hearing, a tentative second hearing date of January 24, 2014 was given, although Mr.

1

Stretton indicated he might be on trial. Mr. Stretton has subsequently asked to continue that date because he believes he is going to be on trial.

Judge Diamond then issued an order requesting Findings of Fact and a Brief be filed by January 21, 2014. This Brief is being submitted in compliance with the aforementioned order.

An additional hearing is necessary for the testimony of Attorney Francis Malofiy. Mr. Malofiy has decided to testify.

## II. PROPOSED FINDINGS OF FACT

1. Attorney Francis Malofiy filed a Complaint against the Defendants on October 28, 2011 (see docket entries).

2. Attorney Francis Malofiy then filed an Amended Complaint on November 17, 2011 against the Defendants in the captioned case.

3. William Guice is a named Defendant in the Amended Complaint filed by Attorney Francis Malofiy on behalf on behalf of the Plaintiff, Mr. Marino (see docket entries).

4. William Guice, the Defendant, was personally served with the Amended Complaint with a Proof of Service and the summons on or about February 14, 2011 (see docket entries and Proof of Service).

5. The Proof of Service and summons, which was introduced during the hearing, specifically set forth that Mr. Guice has

twenty one (21) days to file an Answer to the Complaint or there would be a default (see summons).

6. On February 23, 2012, William Guice telephoned Attorney Francis Malofiy (1/6 N.T. 57, 58). The call was initiated by Mr. Guice and not solicited by Mr. Malofiy.

7. Mr. Guice indicated he had read the complaint and did not understand why Mr. Marino had not been paid for writing the song (1/6 N.T. 57, 58).

8. Mr. Guice's telephone call, which was unsolicited by Mr. Malofiy, indicated he thought it was unfair that Mr. Marino did not receive any payment for his work in writing the song at issue (1/6 N.T. 58).

9. Mr. Guice testified he knew he was named as a Defendant and so testified (1/6 N.T. 58, 59).

10. Mr. Guice surprisingly stated he had not seen the summons or Proof of Service, although both were served on him with the complaint, which he agreed he received (1/6 N.T. 60, 61).

11. Mr. Guice admitted both on direct and cross-examination, he had a memory problem (1/6 N.T. 41, 61).

12. Mr. Guice had a high school education, having graduated from high school in Ohio (1/6 N.T. 14, 64).

13. Mr. Guice had been involved in the music business for a number of years (1/6 N.T. 64, 65).

3

14. Mr. Guice agreed he had dealt with other artists over the years (1/6 N.T. 65).

15. Mr. Guice agreed he made his living out of working as an artist in the music business (1/6 N.T. 65).

16. Mr. Guice had two telephone conversations with Mr. Malofiy on February 23, 2012, the first when he called Mr. Malofiy directly, and the second when Mr. Malofiy telephoned him about the language in a statement Mr. Guice agreed to give (5/2 N.T. 8, 9, 10).

17. Mr. Guice, in his deposition on May 2, 2013, clearly indicated he understood he was a Defendant in the case when he telephoned Mr. Malofiy.

> "Question: Alright, so a couple things, you understand that I'm the attorney for Daniel Marino, correct?
>
> Answer: Yes.
>
> Question: Alright, you understand you are a Defendant in this matter?
>
> Answer: Yes." (5/2 N.T. 9).

18. In the second conversation of February 23, 2012, which was recorded and transcribed and marked as Exhibit "R-1", an affidavit was prepared that clearly indicated Francis Malofiy represented the Plaintiff, Daniel Marino (see Exhibit "R-1").

19. During the second telephone conversation on February 23, 2012, Mr. Guice indicated that he called Mr. Marino to set

4

the record straight (see Exhibit "R-2"). Mr. Guice clearly indicated he was a named Defendant (see Exhibit "R-2"). He asked Mr. Malofiy to change the affidavit to remove any language that contained curse words (see Exhibit "R-2").

20. Mr. Guice signed the affidavit that was sent to him and ultimately returned the affidavit four days later (5/2 N.T. 27, 28).

21. Mr. Guice confirmed that the affidavit he signed was true and correct (5/2 N.T. 34, 35).

22. Mr. Guice indicated he had the chance to review the affidavit and made corrections (5/2 N.T. 39). Mr. Guice confirmed that he knew what a defendant is:

> "Question: Did you understand that you were named as a defendant in the case?
>
> Answer: Yeah.
>
> Question: Did you...
>
> Answer: I got that part, yeah, I understand.
>
> Question: You know what a defendant is?
>
> Answer: Yes. defendant against, well defending yourself against anything really, I mean if you're a defendant you are defending yourself against blame of wrongdoing or, or, I don't know the wordage so...
>
> Question: Well I actually asked you, do you know what a defendant is?
>
> Answer: Yes, yes.
>
> Question: So you recognize you have been sued in

this case?

> Answer: Yeah, well, yeah. I was getting that. Yeah, I was. I got that.

> Question: And do you understand...

> Answer: I got that part of it, yeah.

> Question: Do you understand that Mr. Malofiy, who is sitting across the table from you is seeking money from you?

> Answer: Well, well that part I didn't know he was seeking it from me personally." (5/2 N.T. 171, 172).

23. During the second deposition of Mr. Guice on June 4, 2013, Mr. Guice changed his testimony and said he was never told he was the defendant, contradicting both his affidavit, the recorded statement and his prior testimony (6/4 N.T. 143).

24. During the June 4th deposition, Mr. Guice again indicated he was aware that Mr. Malofiy represented Mr. Marino (6/4 N.T. 148).

25. Mr. Guice finally agreed, when shown the affidavit he signed that it, and the affidavit did say he was a defendant. Mr. Guice continued to say he was told verbally he was a witness (6/4 N.T. 49).

26. Mr. Guice indicated he was told he had the right to counsel by Mr. Malofiy.

> "Question: You said I never told you to speak to counsel or that you had an opportunity to speak to counsel before you signed that, correct?

6

Answer:  I never said you didn't tell me that.

Question:  Okay, I did tell you to speak to counsel,
did I not before you signed it?

Answer:  Yeah.

Question:  That's a yes, correct?

Answer:  Yes."  (6/4 N.T. 149, 150).

27.  Mr. Guice again confirmed that he had been told by Mr.
Malofiy during the conversation to seek the advice of counsel
(6/4 N.T. 153, 154).

28.  Mr. Guice agreed he signed the affidavit and sent it
back (6/4 N.T. 153-155).

29.  No default judgment was taken against Mr. Guice until
June 14, 2012, approximately 3.5 months after the service of the
amended complaint on Mr. Guice and the February 23, 2012
conversations.  Mr. Guice never sought counsel (see docket
entries).

30.  During the hearing on January 6, 2014, Mr. Guice
confirmed he had received the complaint and saw he was listed as
the defendant (1/6 N.T. 58).

31.  At the hearing on January 6, 2014, Mr. Guice still
confirmed he did not have an attorney (1/6 N.T. 63).

32.  Mr. Guice testified he was aware he had the right to
an attorney and chose not to hire one, saying he could not
afford an attorney (1/6 N.T. 63, 64).

33. Mr. Guice agreed that he is now represented himself in the underlying litigation (1/6 N.T. 64).

34. Mr. Guice confirmed that after the February 23, 2012 telephone conversations with Mr. Malofiy, he received the affidavit and had the affidavit for four days until he returned the affidavit on February 28, 2012 (1/6 N.T. 74, 75).

35. Mr. Guice agreed that the affidavit was true; he knew he was a defendant and had the right to seek counsel. He confirmed what was contained in the affidavit, which he read (1/6 N.T. 75).

36. Mr. Guice, during the January 6th hearing, continued to state he was told something different verbally by Mr. Malofiy. But, he was then contradicted by the taped telephone conversation (1/6 N.T. 75, Exhibit "R-2").

37. Mr. Guice was again confronted during the January 6, 2014 hearing with his testimony previously where he agreed he knew what a defendant was (1/6 N.T. 77, 78).

38. Mr. Guice was confronted with his earlier testimony at a deposition where he said he was advised of his right to counsel and during his January 6th hearing, he again contradicted that testimony (1/6 N.T. 80).

39. Mr. Guice agreed that the tape, which was marked "R-2" accurately set forth what was said (1/6 N.T. 81).

40.   Mr. Guice indicated he was aware a default had been entered against him, but chose to ignore it.  He said he could not find a pro bono attorney (1/6 N.T. 87).

41.   Mr. Guice agreed that the substance of what Mr. Malofiy and he talked about on February 23rd was contained in the affidavit marked "R-2" and the affidavit was correct (1/6 N.T. 88).

42.   Mr. Guice agreed that he had no other conversations with Mr. Malofiy until Mr. Malofiy made arrangements for him to be deposed in Philadelphia in May of 2013 (1/6 N.T. 88).

43.   Mr. Guice indicated he had a brief conversation in May of 2013 with Mr. Malofiy about the deposition and essentially reviewed the affidavit with Mr. Malofiy before the first deposition (1/6 N.T. 88, 89).

44.   Mr. Guice did confirm several juvenile hearings where he was a defendant and a domestic dispute with his wife where he was the defendant (1/6 N.T. 94, 95).

45.   Mr. Malofiy did not violate Rule of Professional Conduct 4.3.

### III.   ARGUMENT

#### A.) There is no basis to sanction Mr. Malofiy.

The current case involves sanctions being sought by the defendants against Mr. Malofiy for violating 28 U.S.C.A. 1927.

The underlying basis is the alleged violation of Rule of Professional Conduct 4.3.

The sanctions arose out of the supposed contact that Mr. Malofiy had with Mr. Guice on February 23, 2012. The record is fairly clear, as set forth in the proposed Findings of Fact and Conclusions of Law that Mr. Malofiy received an unsolicited telephone call from Mr. Geist on February 23, 2012. Mr. Guice was aware he was a defendant in the lawsuit, which he had been served with several days before. Mr. Guice called Mr. Malofiy because he was upset that Mr. Marino had not been paid by the defendants for his efforts in writing the song at issue.

It was unrefuted there were two telephone conversations on February 23rd. The second conversation was recorded and marked "R-2". The recorded conversation clearly indicated Mr. Guice knew he was a defendant and was told that by Mr. Malofiy and also told that Mr. Malofiy represented Mr. Marino. The conversation reflected Mr. Guice had the opportunity to review and make corrections to the affidavit. That document was then sent to him on February 24th and not returned until four or five days later on February 28, 2012.

Although contradicting himself periodically, Mr. Guice did say that he was advised by Mr. Malofiy to consult with an attorney and review the complaint with an attorney. Mr. Guice

was also aware that he was sued and so testified as noted in the proposed findings of fact.

Mr. Guice, despite being advised, chose never to get an attorney and even did not have an attorney as of the time of the January 6, 2014 hearing. Mr. Guice agreed he was representing himself. His excuse was he could not afford counsel. But, he at all pertinent times clearly understood he had and should seek to retain counsel.

A default judgment was not taken against Mr. Guice until 3.5 months after he was served with the amended complaint. Mr. Guice had ample time to get an attorney or file a response. The summons that were served on him, which were marked as an exhibit and are reflected in the docket entries, clearly indicated Mr. Guice was served on February 14, 2012 and the summons clearly stated that he had to respond within twenty one days. Further, everything in the affidavit that was told Mr. Malofiy, Mr. Guice agreed was true.

A review of the record and testimony clearly indicated that Mr. Guice was advised appropriately by Mr. Malofiy. Further, there was no indication from the record that Mr. Malofiy would have been aware that Mr. Guice was confused or did not understand that he was a defendant and that Mr. Malofiy represented the other side and Mr. Guice had the right to an attorney. All of the above had been explained to Mr. Guice by

Mr. Malofiy as Mr. Guice's testimony on three different occasions indicated. Also, Mr. Guice was given the opportunity to review and change the affidavit. He was given 3.5 months before a default judgment was taken against him.

There was nothing Mr. Malofiy did wrong in this matter.

Mr. Malofiy did what he was supposed to do. He explained his role, explained that he was adverse and told Mr. Guice to get an attorney. He sent Mr. Guice the affidavit and told him he had the right to seek an attorney. Mr. Guice had several days to review the affidavit and ultimately signed the affidavit and sent it back to Mr. Malofiy. The only other contact with Mr. Guice was in May before the deposition when Mr. Malofiy flew Mr. Guice back to Philadelphia for the deposition. Mr. Malofiy, according to Mr. Guice, met with Mr. Guice briefly and just reviewed the affidavit.

Mr. Guice was formally served with the amended complaint and summons and was provided ample warnings that he had a right to counsel. Mr. Malofiy did not take a snap default. The default was delayed for over 3.5 months allowing Mr. Guice time to get an attorney. Mr. Guice testified he knew he had the right to an attorney but chose not to hire one.

Although Judge Diamond seemed to suggest during comments that Mr. Guice was unsophisticated, the contrary is true. Mr. Guice is 37 years of age. He has a high school education. He

has been a defendant in a juvenile and other minor cases. He correctly explained on the record what a defendant was and the role of a defendant in litigation. Mr. Guice also apparently realized he had a right to counsel and sought counsel but never hired one because he said he could not afford an attorney or was unwilling to pay the fees for counsel. Mr. Guice was involved for many years in the music business, writing and selling songs. Therefore, Mr. Guice is not an unsophisticated individual. He had no intellectual deficits. He made his living in the tough world of the music business.

Rule 4.3 of the Rules of Professional Conduct has not been violated by Mr. Malofiy's conduct. Rule 4.3 reads as follows:

> "(a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested; (b) During the course of a lawyer's representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interest of such client are or have a reasonable possibility of being in conflict with the interest of the lawyer's client; (c) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer should make reasonable efforts to correct the misunderstanding." (Rule 4.3 of Pennsylvania's Rules of Professional Conduct).

Reading the above Rule, Mr. Malofiy's conduct, by Mr. Guice's own testimony, by the recorded telephone conversation, and the affidavit, clearly did not violate the Rule. Mr. Malofiy never implied to Mr. Guice that he was disinterested.

He always made it clear who he represented and Mr. Guice was advised and understood he was a defendant. Also, although Mr. Guice provided conflicting testimony, Mr. Guice did clearly state he was advised of his right to get counsel. The amended complaint, which was served on him also reflected the need to respond.

Further, under subsection (b) of Rule 4.3, Mr. Malofiy did not give advice to Mr. Guice. Mr. Malofiy did tell Mr. Guice to get counsel.

As to subsection (c) of Rule 4.3, there was nothing that would suggest to Mr. Malofiy that Mr. Guice misunderstood the role of Mr. Malofiy. If a sued defendant, who is unrepresented, calls a lawyer, the lawyer does not have to provide a treaties on the civil litigation system. The lawyer has to tell the defendant that he represents the other side, which was obvious and which Mr. Guice was told. The lawyer should advise the defendant to retain a lawyer, and even Mr. Guice testified he was so advised. Mr. Malofiy never suggested he was disinterested to Mr. Guice.

Further, Mr. Malofiy gave Mr. Guice ample time. The affidavit was sent to Mr. Guice and Mr. Guice had it for four days before he sent it back. He had ample time to consult with other people. Mr. Guice had initiated the phone call because he thought Mr. Malofiy's client had been cheated. According to

14

him, he was not aware that Mr. Marino received nothing from the defendants since Mr. Marino wrote the song.

What else is a lawyer to do? Mr. Guice has certainly been aware of the right to a lawyer for a long time and has still chosen not to get a lawyer. The fact that he can't afford counsel is of no concern to this Court. There are Legal Aide Societies and Community Legal services and there are pro bono lawyers who work through court systems. Mr. Guice certainly could take advantage of these programs. But, Mr. Malofiy cannot be penalized since there is no civil Gideon counsel. That is a societal decision and has nothing to do with Mr. Malofiy. If an individual is sued civilly and is too poor to retain a lawyer, then they will have to face the consequences of the litigation if they do not at least respond in some fashion. Mr. Guice chose not to respond through no fault of Mr. Malofiy.

Further, in reading Rule 4.3, one has to distinguish between the initial contact and subsequent contacts. In subsequent contacts, if the client decides to continue to represent themselves pro se, then the lawyer is not quite in the same straight jacket as the lawyer would be when they initially talk to an unrepresented person. The comments to Rule 4.3 recognize the same.

Under Comment 2 to Rule 4.3, it references that lawyers can negotiate transactions or civil disputes with an unrepresented

15

person, so long as the lawyers explain they represent the adverse party. Obviously that has to be the case or else no one could ever deal with an unrepresented person. Cases would be prolonged unseemly because no one could talk to an unrepresented person until the morning of trial, and even then, might not be allowed to. The Rule recognizes that if a person continues to represent themselves, then they can be treated like any other litigant and lawyers can talk to them and try to settle with them, present agreements, etc.

This contact of unrepresented defendants is seen all the time in unrepresented criminal defendants. Assistant District Attorneys at preliminary hearings or at calls of the list or trials will approach unrepresented defendants and make offers and suggest to them they ought to take an offer, etc. There is nothing necessarily wrong with that as long as the unrepresented person recognizes the Assistant District Attorney is on the other side and is seeking criminal charges against them.

To sanction Mr. Malofiy for this kind of conduct would stand Rule 4.3 on its head. The Rule has the purpose of protecting an unrepresented person so they will understand the lawyer opposing has an adverse interest, and so they understand they have a right to get an attorney. Rule 4.3 is not some sort of a blanket protection for persons who do not seek to protect themselves or retain counsel over an extended period of time.

The Rule is not meant to protect foolishness or failure to take reasonable steps. The Rule has the purpose of making sure an individual understands the role of the opposing lawyer and the rights of the individual. That was done here.

Further, as noted above, there is nothing that would suggest to Mr. Malofiy that Mr. Guice in any way misunderstood what was happening. Mr. Malofiy would not have a clue that supposedly Mr. Guice did not understand the roles since Mr. Malofiy explained to Mr. Guice the roles as admitted by Mr. Guice.

Although Mr. Guice, in his testimony, had to admit that he was told of the role of Mr. Malofiy, he then said verbally he was told he would be a witness. Whether that is correct or incorrect, it is very clear that Mr. Malofiy told Mr. Guice in writing, as reflected in the affidavit and the telephone conversation and Mr. Guice's own testimony, what Mr. Malofiy's role is and what Mr. Guice's role is, and that Mr. Guice should get a lawyer. Mr. Malofiy should not be penalized for Mr. Guice's decision not to hire a lawyer. In fact, Mr. Malofiy looked out for Mr. Guice and gave him 3.5 months to get a lawyer before filing for a default. Even then Mr. Guice could have obtained a lawyer and petitioned to open the default. But Mr. Guice chose not to do so and apparently is never going to hire a lawyer, as seen from his testimony in January of 2014, where he

indicated almost a year and ¾ later, he doesn't have a lawyer and is not going to get one.

In fact, if Mr. Malofiy had not taken the default, he would have violated his duty to his own client to act in a competent (Rule of Professional Conduct 1.1) and diligent (Rule of Professional Conduct 1.3) manner. Therefore, based on this record, there is no prejudice to Mr. Guice other than that created by his own failure to take appropriate steps. A doctor can tell a patient to take medicine and do follow up visits, but if they don't do it and then get ill, it is not the doctor's fault. Similarly, a lawyer can tell an unrepresented person that there is a conflict and they should get counsel and give them ample time. But if the person does not do so, then ultimately when the default is taken, the unrepresented person should not be and cannot be in a position to complain.

Of course the context for the sanctions is not Rule 4.3 since that is a regulatory/disciplinary rule. The context for the sanctions is set forth in 28 U.S.C.A. 1927. That Rule reads as follows:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." (28 U.S.C.S.A. 19267).

18

Case law is very clear in the context of seeking sanctions under 28 U.S.C.A. 1927, there has to be bad faith conduct. The United States Court of Appeals for the Third Circuit, in Jones v. Pittsburgh National Corporation, 899 F.2d 1350 (3rd Cir., 1990), clearly set forth a bad faith standard before sanctions could be imposed under 28 U.S.C.A. 1927.

> "As a preliminary matter, we address appellant's contention that the term vexatious in 28 U.S.C.A. 1927 is unconstitutionally vague and therefore, the section violates the due process clause of the Fourteenth Amendment. We have interpreted that section as requiring a showing of bad faith...which has a well understood meaning in the law." Id 1357.

In a more recent case, In re Schaefer Salt Recovery, Inc., 542 F.3d 90 (3rd Cir., 2008), arising out of a bankruptcy matter, 28 U.S.C.A. 1927 sanctions were again discussed. The Third Circuit set forth the elements that had to be met for a finding of a 1927 violation:

> "Section 1927 requires a Court to find an attorney has (1) multiplied proceedings; (2) in an unreasonably and vexatious manner; (3) thereby increasing the cost of the proceeding; and (4) doing so in bad faith or by intentional misconduct." Id 101.

The Third Circuit Court then goes on and notes that the principal purpose of sanctions under 1927 "is the deterrence of intentional and unnecessary delay in the proceedings." Id 101. Clearly there is nothing in this record that suggests Mr. Malofiy is intentionally delaying these proceedings. In fact, he is pushing to have the case go to trial.

Further, there is nothing in this record that suggests that Mr. Malofiy has multiplied proceedings or acted in a bad faith manner. As discussed above, what else was Mr. Malofiy to do?

He explained the role, told the person he was a defendant, had the person served with pleadings that specifically told the person what to so, provided an affidavit, which the person had ample time to review, told the person to get counsel (which is confirmed at one point and then refuted at another point by Mr. Guice), and then waited 3.5 months before taking a default.

Mr. Malofiy did not solicit any call from Mr. Guice. It was Mr. Guice who solicited the call because he felt there was an injustice to Mr. Marino. Mr. Guice clearly knew he had the right to counsel because he said he sought one, but could not afford to get an attorney. But, as noted above, without a civil Gideon requirement, that cannot be blamed on Mr. Malofiy.

There is also an argument that the sanction motions were untimely and delayed. The depositions of Mr. Guice occurred in May and June of 2013. The sanction motions were not filed until October 8, 2013, four months after the second deposition of Mr. Guice.

Although Judge Diamond believed the aforementioned Schaefer case allowed these type of untimely motions, a close reading seems to suggest to the contrary. Schaefer appears to stand for the proposition that some sanction motions may be filed after

the close of litigation. But that is a far different standard than any sanction motion can be filed at any time. Schaefer said there must be a reasonable time. In Schaefer, the motion was filed nine days after the close of litigation. The current motions were filed months later. What would have happened in this case if the sanction motions were not filed until this case was resolved? Would this Court allow sanction motions for the conduct involving Mr. Guice in 2012, two years later when the case is concluded? The defendants, by letter to Judge Diamond on May 28, 2013, raised the issues. There was no reasonable explanation to wait until October of 2013 to file sanctions.

But, going back to the merits as to whether sanctions are warranted, it appears they are not. Conduct this is the result of a misunderstanding, bad judgment or well intentioned zeal does not trigger 1927 sanctions. Grider v. Keystone Health Plan, Inc., 580 F.3d 119, 142 (3rd Cir., 2009). In this case, there was no bad judgment or well intentioned zeal pursuant to Mr. Malofiy's position. But, if this Court disagrees, it is clear that Mr. Malofiy was acting zealously.

Also, in deciding if there is the bad faith necessary for 1927 sanctions, normally such sanctions require a heightened standard of proof of clear and convincing evidence. In Horizon Unlimited, Inc. v. Silva, 1999 U.S. Dist. Lexis 13320, 12-13 (E.D. Pa., 1999), bad faith conduct has to be so clear and

convincing, "so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy of the truth of the precise facts in issue." United States Fire Insurance Company v. Royal Insurance Company, 759 F.2d 306, 309 (3rd Cir., 1985). Further, in evaluating bad faith, the Court has to look at the conduct at the time of the actions and not using a hindsight analysis. Lewis v. Smith, 480 Fed. Appex. 696, 699 (footnote 2) (3rd Cir. Pa., 2012).

Applying the standard of review and looking at the unrefuted testimony of Mr. Guice on many of the major points involving Rule 4.3 of the Rules of Professional Conduct, it is clear there is no bad faith here. Neither Rule 4.3 nor the sanctions statute found at 28 U.S.C.A. 1927 were violated.

In conclusion, the sanctions should be dismissed. Mr. Malofiy will testify and elaborate on the information provided Mr. Guice, but Mr. Guice's own testimony by itself should result in a demurrer being granted and these sanctions being dismissed.

Respectfully submitted,

_s/Samuel C. Stretton_
Samuel C. Stretton, Esquire
Attorney for Francis Malofiy, Esq.
301 S. High Street
P.O. Box 3231
West Chester, PA 19381
(610) 696-4243
Attorney I.D. No. 18491

DANIEL MARINO,                    :      CIV. NO. 11-6811
                 PLAINTIFF     :
                         :
       V.                :
                         :
USHER, ET AL.,                    :
              DEFENDANTS    :

## CERTIFICATE OF SERVICE

I hereby certify I am this date serving a copy of the Findings of Fact and Initial Brief on behalf of Francis Malofiy, Esquire in the captioned matter upon the following persons in the manner indicated below.

Service by First Class Mail addressed as follows:

1. Honorable Paul S. Diamond
   United States District Court for the
     Eastern District of Pennsylvania
   6613 U.S. Courthouse
   601 Market Street
   Philadelphia, PA  19106

2. Jonathan D. Davis, Esquire
   Jonathan D. Davis, P.C.
   99 Park Avenue, Suite 1600
   New York, NY  10016
   (212) 687-5464

3. Michael Eidel, Esquire
   Fox Rothschild, LLP
   2000 Market Street, 20th Floor
   Philadelphia, PA  19103
   (215) 299-2000

Attorneys for Defendants, Usher Raymond, IV a/k/a Usher ("Usher"), Sony Music Entertainment, EMI April Music, Inc., EMI Blackwood Music, Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc., Bystorm Entertainment, Mark Pitts, Issiah Avila, Jr., Bobby Ross Avila, Jr., Sublime Basement Tunez, Defenders of Music, Flyte Tyme Tunes, James Samuel Harris, III, and Terry Steven Lewis.

4. Mark S. Lee, Esquire
   Manatt, Phelps & Phillips, LLP
   11355 W. Olympic Boulevard
   Los Angeles, CA 90064-1614
   (310) 312-2000
   (310) 312-4224 - Fax
   mlee@manatt.com

5. Lance Rogers, Esquire
   Bruce L. Castor, Jr., Esquire
   Rogers & Associates, LLC
   25 Elliot Avenue
   Bryn Mawr, PA 19010
   (610) 649-1880
   (877) 649-1800 - Fax
   lance@rogerscounsel.com
   Attorney for Defendant, IN2N Entertainment Group, LLC ("1N2N")

6. Thomas Van Dell
   10900 Wilshire Blvd., Suite 1400
   Los Angeles, CA 90024
   (310) 443-5332
   vandell@hudcan.com
   Defendant, Pro Se

7. Dante E. Barton
   1111 Bergan Road
   Oreland, PA 19075
   Defendant, Pro Se

8. William C. Guice
   16794 East Tufts Avenue
   Aurora, CO 80015
   Defendant, Pro Se

9. Francis Malofiy, Esquire
   The Beasley Building
   1125 Walnut Street
   Philadelphia, PA 19107
   (215) 500-1000
   (215) 500-1005 – Fax


                          Respectfully Submitted,


_January 21, 2014_            _s/Samuel C. Stretton_
        Date                  Samuel C. Stretton, Esquire
                              Attorney for Francis Malofiy, Esq.
                              301 S. High Street
                              P.O. Box 3231
                              West Chester, PA 19381-3231
                              (610) 696-4243
                              Attorney I.D. No. 18491