**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL MARINO,** | : | |
| **Plaintiff,** | : | |
| v. | : | **Civ. No. 11-6811** |
| | : | |
| **USHER, et al.,** | : | |
| **Defendants.** | : | |

_____

**Diamond, J.**                                                      **May 21, 2014**

**<u>MEMORANDUM</u>**

In 2002, Plaintiff Daniel Marino co-authored the song "Club Girl," later renamed "Bad Girl" and recorded by Defendant "Usher" Raymond IV.  Alleging infringement under the Copyright Act, Plaintiff proceeds against Usher and nineteen other co-Defendants who helped make and distribute that recording.  17 U.S.C. § 411(a); (Doc. No. 2.)  I will grant Defendants' Motion for Summary Judgment as to Plaintiff's claims for direct and vicarious copyright infringement.

### I.       <u>BACKGROUND</u>

I have set out those record facts that are undisputed and construed them in the light most favorable to Plaintiff.  I have disregarded Plaintiff's allegations that are without evidentiary support.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Jones v. UPS</u>, 214 F.3d 402, 407 (3d Cir. 2000) ("unsupported allegations" cannot defeat summary judgment).  I have accepted as true all Plaintiff's other factual allegations and construed them in the light most favorable to him.

   A.  _The Song's Creation_

In  2001,  Plaintiff  and  co-Defendants  William  Guice  and  Dante  Barton  formed  a

songwriting group.  (Marino Dep. at 137-41.)  They anticipated discrete artistic roles for each member, and agreed to share songwriting credit if any of their co-authored songs became successful.  (Guice Dep. June 4, 2013 at 71-74.)  Plaintiff and Barton went into business together under the names Underworld Entertainment and co-Defendant Destro Music.  (Marino Dep. at 52, 57.)  Plaintiff allowed Barton to manage the group's business and financial affairs.  (Id. at 57, 60.)  It appears that Plaintiff's difficulties arose from this decision.

In 2002, Plaintiff, Barton, and Guice collaborated on "Club Girl":  Plaintiff created the basic melody, chord progressions, and tempo; Plaintiff and Barton recorded the song; Barton created the "beat"; and Guice wrote the lyrics and reworked the melody.  (Marino Dep. at 100-107; Guice Dep. June 4, 2013 at 71-74.)  Unknown to Plaintiff, in 2004, Barton copyrighted the musical composition (but not the sound recording) of "Club Girl," listing only himself and Guice as authors.  (Doc. No. 102, at Ex. M.)

  B. *The Group Agrees to Usher's Use of the Song*

With Plaintiff's approval, Barton sought to "shop" "Club Girl" to the music industry.  (Marino Dep. at 331-33.)  Co-Defendant Tommy Van Dell, a publishing agent, brought the song to co-Defendants Usher and Mark Pitts, Usher's "Artist and Repertoire" representative.  (van Dell Dep. at 169-70; Usher Dep. at 16-17.)  Plaintiff testified that after some discussion in 2003, he, Barton, and Guice permitted Usher to use "Club Girl."  (Marino Dep. at 145-46 ("The decision was that we were going to allow Usher to sing the song.").)

Pitts sought to include "Club Girl" in Usher's next album.  (Pitts Dep. at 83-84.)  Plaintiff and Guice authorized Barton to negotiate the trio's writing, production, and royalty credits.  (Marino Dep. at 147, 154, 166-68, 170-72.)  Plaintiff, Barton, and Guice agreed that the three would share songwriting credit equally, and that Plaintiff and Barton would share production and

royalty credits.   (Id. at 140-41.)   Barton contracted with Usher's representatives through

Underworld Entertainment, memorializing the terms in the UW Agreement.  (Doc. No. 102, at

Ex. Q.)  That Agreement provides, *inter alia*, that Usher and his designees:

> [S]hall have the exclusive unrestricted, perpetual right throughout the universe to use, distribute, sell and exploit ["Club Girl/Bad Girl"] in any and all media, by any and all methods and formats.

(Id.)  Plaintiff testified that he was excited when he learned of the contract.  (Marino Dep. at 174-

75.)  He did not ask to see the contract, however, nor did he seek to determine why he was not

asked to sign it.  Had he reviewed the contract, he would have learned that, consistent with the

copyright registration form, only Barton and Guice were credited as the song's writers.  (UW

Agreement at 7.)

At Usher's request, Plaintiff mailed the "Pro Tools" files to "Usher's people" so they

could work on the song.  (Marino Dep. at 251-56.)  Plaintiff testified that he converted the files

to make it easier for Usher to work on them.  (Id. at 253.)  He also acknowledged that, at Usher's

request, he made revisions to "Club Girl," including rewriting and rerecording it, and sending

subsequent versions to Usher's producers.  (Marino Dep. at 182-84, 254, 335, 337-38.)

### C.  *Plaintiff is not Credited as a Songwriter or Producer*

Once the UW Agreement was executed, Barton, Guice, and Plaintiff each received a

lump sum payment.   On March 23, 2004, Usher released his album *Confessions* through

subsidiaries of co-Defendant Sony Music Entertainment.  (Am. Compl. ¶ 319.)  The album

included "Bad Girl," the new name for "Club Girl."  (Marino Dep. at 183-84)  When Plaintiff

purchased a copy of the newly released album, he discovered he was not credited as a writer or

producer of the song, only as an instrumentalist.  (Id. at 220-21.)  Barton and Guice were

credited as writers along with seven others.  ("Bad Girl" Credits, Doc. No. 102, at Ex. V.)

Plaintiff confronted only Barton, however.  (Marino Dep. at 221-22.)  Acknowledging that the credit omission was a "mistake," Barton said that he would fix it.  (Id. at 226-28.)  Plaintiff obtained counsel in October 2004 (to prepare a cease and desist letter that was never sent), and threatened to sue Barton, who said he was correcting the problem.  (Id. 411-18.)  Over the next five years, Plaintiff continued to collaborate with Barton, who "disappeared" in 2009, having taken no corrective action.  (Id. at 237)  Plaintiff thus received royalties only for his work on "Club Girl/Bad Girl" as a musician.  (Id. at 270-72.)  Defendants paid all writing and producing royalties to "Destro Music c/o Dante Barton."  (Doc. No. 102, Ex. T.)

Plaintiff never sought to enjoin the sale of "Bad Girl" or *Confessions*.  (Marino Dep. at 190 ("Why would I tell anyone to stop selling the record of my work that millions of people are going to hear, that I'm proud of . . . . Why on Earth would I tell someone [] don't put it on the record?").)  Rather, Plaintiff celebrated "Bad Girl's" success, attending Usher's Philadelphia tour and the Grammy Awards.  (Marino Dep. at 244-50, 308-12, 439.)  There is no allegation that moving Defendants knew or should have known of Plaintiff's royalty or credit issues.  Once again, "Club Girl's" copyright listed only Barton and Guice as authors.  (Doc. No. 102, at Ex. M.)  Moreover, Plaintiff admits that even though he spoke with Usher at a party soon after the release of *Confessions*, Plaintiff did not mention the issues.  (Marino Dep. at 316-22.)

### D.  *Plaintiff Initiates Litigation*

On October 28, 2011, Plaintiff began the instant action, filing an Amended Complaint on November 17, 2011. (Doc. Nos. 1, 2.)  In addition to the claims Plaintiff brings against Barton, Guice, Usher, van Dell, Pitts, and Destro Music, Plaintiff proceeds against: (1) the other songwriters credited on "Bad Girl"—James Samuel Harris III, Terry Steven Lewis, Bobby Ross Avila, Jr., Issiah Avila, Jr.; (2) the credited publishers of "Bad Girl"—Defenders of Music, EMI

Blackwood Music,  EMI April Music, Flyte Tyme Tunes, IN2N Entertainment Group, Sublime
Basement Tunez, UR-IV Music, Inc., and Warner-Tamerline Publishing Corp.; (3) Sony Music
Entertainment (Usher's record label); and (4) Bystorm Entertainment (Pitts' record label credited
as a producer of "Bad Girl").

   Plaintiff proceeds against Barton and Guice for direct infringement, and against all other
Defendants for both vicarious infringement (based on Barton and Guice's purportedly wrongful
conduct), and direct infringement, alleging that they lacked a valid license to use "Club Girl/Bad
Girl."

### E.  *Previous Orders and Rulings*

   Eight of the Counts in the Amended Complaint are brought against only Barton, Guice,
or Destro Music.  The remaining claims (Counts I, III, IV, and V) are brought against all
Defendants.  On February 2, 2012, the Clerk entered defaults against Barton and Destro Music.
(Doc. No. 3.)  On June 14, 2012, Plaintiff obtained a default against Guice that I have today
vacated in a companion Memorandum granting Defendants' Sanctions Motion against Plaintiff's
Counsel.  (Doc. No. 31.)

   On September 25, 2012, I dismissed Plaintiff's constructive trust and accounting claims
(Counts IV and V) as preempted.  (Doc. Nos. 42, 48.)  On April 24, 2013, I dismissed as time-
barred Plaintiff's claims (in Counts I and II) for infringement damages and profits that accrued
before October 28, 2008, and struck Plaintiff's demand for punitive and exemplary damages.
(Doc. No. 75.)

   Moving Defendants (all Defendants other than Barton, Guice, and Destro) now ask me to
dismiss Plaintiff's remaining claims against them:   Copyright Infringement (Count I) and

Vicarious Infringement (Count III).

## II.     SUMMARY JUDGMENT STANDARDS

Upon motion of any party, summary judgment is warranted "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party must show the absence of any genuine issue of material fact. See Celotex, 477 U.S. at 323.  An issue is material only if it could affect the result of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  I "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If I then determine that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

## III.     DISCUSSION

To make out a claim for infringement, the plaintiff must establish *both* ownership of a valid copyright and unauthorized copying of original elements of the copyrighted work.  Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005).  Under the Copyright Act, a musical composition and the sound recording of that composition are distinct works that must be registered separately to receive the Act's protection. 17 U.S.C. § 102(a)(2), (7).

Defendants argue that Plaintiff cannot sustain any infringement claims: (1) because Barton and Guice are co-authors of "Club Girl/Bad Girl," neither could infringe by copying the song or by authorizing others (including moving Defendants) to do so; (2) moving Defendants had both express and implied licenses to copy the song; and (3) because the song's sound

recording was never registered, Plaintiff cannot maintain an infringement suit for its "unauthorized" copying.

Plaintiff's response is confusing.  He frequently misstates the law and contradicts his own deposition testimony and the allegations in his Amended Complaint.  In any event, the undisputed facts show that moving Defendants are entitled to the relief they seek.

   A.  *Joint Work*

A copyright owner is entitled to copy, distribute, or display his or her work.  MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 778 (3d Cir. 1991) (citing 17 U.S.C. § 106).  When two or more people create a "joint work," they become co-authors and co-owners of the work, each entitled to "undivided ownership."  1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 6.03; see also 17 U.S.C. § 101 (defining a "joint work"); Brownstein v. Lindsay, 742 F.3d 55, 68-69 (3d Cir. 2014).  It is thus axiomatic that the joint owner of a copyright cannot sue his co-owner for infringement.  Cortner v. Israel, 732 F.2d 267, 271 (2d Cir. 1984); Brownstein, 742 F.3d at 68-69.

Not surprisingly, moving Defendants argue that because Barton and Guice are co-owners of "Club Girl's" copyright, they could authorize moving Defendants' use of the song.  Plaintiff's response to this dispositive point is not intelligible:

> It is a fallacious position; one which, mounting a series of misplaced presumptions into a portrait of the issue misframed from the start—and arguing backwards at that—only obscures the fundamental truth that refutes it.

(Pl's Op. to Sum. J. at 4.)    Yet, Plaintiff repeatedly admits the "fundamental truth" that "Club Girl" was jointly created.    (See, e.g., Am. Compl. ¶ 292 ("Marino, Barton, and Guice

collaborated on . . . 'Club Girl.'"); <u>id.</u> ¶ 293 ("The collaboration between Marino, Barton, and Guice [for Club Girl] . . . broke down into their standard creative formula."); Marino Dep. at 100-107 (describing how each of the three made a material contribution to "Club Girl's" creation with the intent to merge them into one work); Pl.'s Op. to Sum. J., at 10 ("the Agreement . . . signed by only two of the co-owners"); <u>see also</u> Guice Dep. June 4, 2013 at 71-74 (describing each of the three's contributions and their plan to work together to create a single song).)  The joint creators—Plaintiff, Barton, and Guice—are thus co-owners of the "Club Girl":

> For two or more people to become co-authors, each author must contribute some non-trivial amount of creative, original, or intellectual expression to the work and both must intend that their contributions be combined. . . . Thus, if Person A writes lyrics to a song and intends for a composer to write the score, Person B who writes the score becomes a co-author in the work.

<u>Brownstein</u>, 742 F.3d at 64-65; <u>Childress v. Taylor</u>, 945 F.2d 500, 504-08 (2d Cir. 1991) (describing requirements for joint authorship).  Plaintiff cannot maintain an infringement action against either Barton or Guice, his admitted co-authors, because "Club Girl/Bad Girl" is a joint work.  <u>E.g.</u>, <u>Weissman v. Friedman</u>, 868 F.2d 1313, 1318 (2d Cir. 1989); <u>Brownstein</u>, 742 F.3d at 64-65.

Moreover, insofar as Plaintiff seeks to hold moving Defendants vicariously or contributorily liable for Barton or Guice's purported infringement, his claims necessarily fail. <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement . . . , and infringes vicariously by profiting from direct infringement. . . ."); <u>see also, e.g.</u>, <u>Pavlica v. Behr</u>, 397 F. Supp. 2d 519, 528 (S.D.N.Y. 2005) ("To be found liable for contributory infringement, there must be a primary infringer." (citing <u>Matthew Bender & Co. v. West Publ'g Co.</u>, 158 F.3d 693, 706 (2d Cir. 1998)); 2 Paul Goldstein, <u>Copyright</u> § 6.0 (1996) ("For a defendant to be held

8

contributorily or vicariously liable, a direct infringement must have occurred.").

Finally, because, as I discuss below, there has been no direct infringement by any Defendant, none of the moving Defendants is vicariously or contributorily liable for each other's conduct.

## B. *Express License*

The UW Agreement is an express license for moving Defendants to use and exploit "Club Girl/Bad Girl." (Pl.'s Op. Sum. J. at 13-20; Doc. No. 102, at Ex. Q.) Plaintiff's response to this second dispositive point is no more effective than his response to the first. Plaintiff admits that Barton and Guice granted moving Defendants a license. (Pl.'s Op. Sum. J. at 11; id. at 18; Pl's Sur Reply at 3-7.) He notes that by its terms, the license purports to be "exclusive." (UW Agreement, Doc. No. 102, at Ex. Q ("[Moving Defendants] shall have the exclusive unrestricted . . . right . . . to use, distribute, sell and exploit ["Club Girl/Bad Girl"]).) Plaintiff contends that because Barton and Guice could not grant exclusivity without his consent, the license is wholly invalid. (Pl.'s Opp. to Sum. J. at 15 ("[T]he license was, and is, invalid . . . .").) This is simply incorrect.

Because "Club Girl" is a joint work, Barton and Guice each had the authority to grant a non-exclusive license to a third party without Plaintiff's consent. See, e.g., Brownstein, 742 F.3d at 68 ("[E]ach co-author is entitled to convey non-exclusive rights to the joint work without the consent of his co-author."); Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 346 (S.D.N.Y. 2005) ("[I]t is basic copyright law that joint authors may legally grant a license to a third party to exploit the work without co-author consent."); 1 Nimmer on Copyright § 6.10 (2003) (same); Cmty. for Creative Non-Violence v. Reid, 846 F.2d 1485, 1498 (D.C. Cir. 1988) aff'd, 490 U.S. 730 (1989) (same).

The Third Circuit has foreclosed Plaintiff's contention that because Barton and Guice could not, without Plaintiff's approval, convey an "exclusive" license to moving Defendants, the license they actually conveyed was a nullity:

> If a co-author attempts to convey exclusive rights, his co-author can convey the same exclusive rights—in effect, such an exclusive license becomes a non-exclusive license.

Brownstein, 742 F.3d at 68; see also Davis v. Blige, 505 F.3d 90, 99 (2d Cir. 2007).

The license Barton and Guice conveyed to moving Defendants was thus a valid, non-exclusive license. See id. at 100; 1 Nimmer on Copyright § 6.12[C] at 6-39 ("A grant [to the work as a whole] executed by less than all of the joint owners of a copyright is necessarily non-exclusive, it follows that any such grant constitutes a non-exclusive license."); id. at § 6.10[A][2] (distinguishing exclusive license in entire work and exclusive license in grantor's interest); Brownstein, 742 F.3d at 68  ("[E]ach co-author is entitled to convey non-exclusive rights to the joint work without the consent of his co-author."); Sybersound Records, Inc., v. UAV Corp., 517 F.3d 1137, 1146 (9th Cir. 2008) (criticized on other grounds) (joint author can grant only non-exclusive license without co-authors' consent); 1 Nimmer on Copyright § 6.10 (1999) ("[A]n authorization to the defendant from one joint owner will be an effective defense to an infringement action brought by another joint owner."); Corbello v. DeVito, 832 F. Supp. 2d 1231, 1245 (D. Nev. 2011) (purported exclusive license to entire work signed by less than all joint authors is necessarily a non-exclusive license); Batiste v. Island Records Inc., 179 F.3d 217, 223-4 (5th Cir. 1999) (same).  Plaintiff's heated protestations to the contrary are, again, incorrect.

C. *Implied License*

In the alternative, I conclude that Plaintiff himself granted moving Defendants an implied, non-exclusive license to exploit "Club Girl/Bad Girl."  Non-exclusive licenses may be granted orally, in writing, or impliedly through conduct.  MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 778-79 (3d Cir. 1991).  Although the Third Circuit has not set out a conclusive test for finding an "implied license," the licensor conveying a copyrighted work for further distribution "is one factor that may be relied upon in determining that an implied license has been granted."  Id. at 779 (internal citations omitted); I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996) (an implied license is created when: (1) the licensee requests the creation of a work; (2) the licensor delivers the work to the licensee; and (3) the licensor intends that the licensee copy and distribute the work); Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle, 184 F. App'x 270, 275 (3d Cir. 2006) (citing the Shaver test); Atkins v. Fischer, 331 F.3d 988, 991-92 (D.C. Cir. 2003) (same); Herbert v. United States, 36 Fed. Cl. 299, 310 (Fed. Cl. 1996) (such a license exists when a person voluntarily submits a work for publication).

Plaintiff's words and conduct confirm that he granted an implied license to moving Defendants.  Plaintiff testified that he not only agreed to, but very much wanted, Usher to include "Club Girl/Bad Girl" in his album—indeed, he was "excited" by it.  (Marino Dep. at 145-46 ("The decision was that we were going to allow Usher to sing the song."); id. at 174-75.) Plaintiff sent Pro Tools files for "Club Girl" to Usher's producers, converting the files to expedite the process.  (Id. at 252-53.)  Marino made numerous revisions to "Club Girl" at Defendants' request to facilitate Usher's use of the song.  (Id. at 338-350) (describing the revision process that included seven phone calls.)  Plaintiff celebrated the release of *Confessions*.

(Marino Dep. at 186, 271-72, 481.)  Plaintiff never sought to enjoin distribution of the album, even after learning that he was not properly credited.  (Marino Dep. at 190.)

In these circumstances, Plaintiff granted an implied license to moving Defendants to use and exploit "Club Girl/Bad Girl."   See   Lowe v. Loud Records, No. 01-1797, 2003 WL 22799698 (E.D. Pa. Nov. 20, 2003) (finding an implied license and granting summary judgment against the plaintiff, who gave the recording to the defendant with the understanding that plaintiff would receive credit if the song were used), aff'd 126 F. App'x 545, 547 (3d Cir. 2005) ("Lowe fails to realize that his own testimony is evidence that establishes the license necessary" to defeat infringement claim); Shaver, 74 F.3d at 776.

Finally, I conclude in the further alternative that Barton and Guice impliedly licensed the song to moving Defendants.  Barton and Guice: sought to convince Usher to include "Club Girl" in his album; provided moving Defendants with the song's digital file; attempted to convey an express license; orally granted permission for Defendants to use the song; collaborated on changes to "Club Girl"; and mixed the final track of "Bad Girl."  (See, e.g., Guice Dep. June 4, 2013 at 80, 113-14; van Dell Dep. at 272-73; Lewis Dep. at 55-132.)  This also constituted an implied license for moving Defendants to use "Club Girl/Bad Girl."  MacLean, 952 F.2d at 779; Scharle, 184 F. App'x at 275; see also Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F. Supp. 2d 332, 344 (S.D.N.Y. 2009) ("[A]n implied non-exclusive license will only be found when a copyright owner creates a work at the request of the licensee and with the intention that the licensee exploit it.").

### D.  *Sound Recording*

Insofar as Plaintiff alleges Defendants' infringement of the sound recording of "Club Girl/Bad Girl," this claim also fails.  Under the Copyright Act, an infringement suit does not lie

unless the plaintiff (or his co-author) has first registered the subject work with the Copyright Office.  Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157-58 (2010) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made. . . ." (quoting 17 U.S.C. § 411(a))).  As I have explained, sound recordings and musical compositions are separate works with distinct copyrights, requiring two separate registrations.  17 U.S.C. § 102(a)(2), (7); Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1026 (3d Cir. 2008) ("[C]opyrights in sound recordings, . . . are separate and distinct from the copyrights in musical compositions. . . . "); Johnson v. Gordon, 409 F.3d 12, 26 n.8 (1st Cir. 2005) (same); 6 Nimmer on Copyright § 30.03 (same).

Here, the only registrations for "Club Girl" or "Bad Girl" are on Forms PA, which are used to register musical compositions alone, not sound recordings.  (See Doc. No. 102, at Exs. M, N, O, P) (various Forms PA registering "words and music" for "Club Girl" and "Bad Girl"); see Vargas v. Pfizer, Inc., 418 F. Supp. 2d 369, 373 (S.D.N.Y 2005) (sound recording infringement claims were deficient where no registration for the sound recording was attached to complaint and only registration was for the underlying musical work.); Cause of Action for Infringement of Copyrights in Sound Recordings Under Federal Copyright Act of 1976, 58 Causes of Action 2d 663 (2013) ("For registering a sound recording, the appropriate form to use is the Form SR § 46. A party may also register the underlying composition, as well as the sound recording using this form.  To register only the underlying composition, Form PA must be used."); Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc., 75 F. Supp. 2d 242, 247 (S.D.N.Y. 1999) (to register sound recording and musical composition together, a Form SR must be used); 37 C.F.R. § 202.3 (explaining Form PA and Form SR).

As there is no evidence even suggesting that the sound recording of "Club Girl" or "Bad

Girl" was registered, Plaintiff may not bring a claim for infringement of that registration.

       E. *Damages*

I have determined that summary judgment in Defendants' favor is appropriate. Accordingly, I need not address whether Plaintiff is entitled to damages based on Usher's foreign touring revenues.

## IV.    **CONCLUSION**

Plaintiff first learned in March 2004 that he had received no songwriting or producing credit for "Club Girl/Bad Girl." Plaintiff did not, however, proceed immediately against Barton or moving Defendants. Indeed, by his own admission, Plaintiff continued to collaborate with Barton for five years and did not file the instant suit until 2011.

Although Barton appears to have wrongfully failed to afford Plaintiff credit as a co-author of "Club Girl/Bad Girl," Barton or Guice certainly could and did convey to moving Defendants a valid license—written, oral, and implied—to copy the song. Moving Defendants acted properly in obtaining authorization to copy the song from Barton and Guice—the only individuals listed on the copyright as authors—and in acting within the scope of that license.

Because the undisputed facts show that moving Defendants did nothing wrong, Plaintiff's infringement claims against them cannot survive summary judgment.

An appropriate Order follows.

                        */s/ Paul S. Diamond*

                        _____

May 21, 2014                           Paul S. Diamond, J.