UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DANIEL V. MARINO,<br><br>                Plaintiff,<br><br>      v.<br><br>USHER (a/k/a Usher Terry Raymond IV);<br>SONY MUSIC ENTERTAINMENT; EMI<br>APRIL MUSIC, INC.; EMI BLACKWOOD<br>MUSIC, INC.; JAMES SAMUEL HARRIS III;<br>TERRY STEVEN LEWIS; BOBBY ROSS<br>AVILA, JR.; ISSIAH AVILA, JR.; WILLIAM<br>C. GUICE; DANTE E. BARTON; DESTRO<br>MUSIC PRODUCTIONS, INC.; DEFENDERS<br>OF MUSIC; FLYTE TYME TUNES;<br>SUBLIME BASEMENT TUNEZ; UR-IV<br>MUSIC, INC.; WARNER-TAMERLANE<br>PUBLISHING CORP.; MARK PITTS;<br>BYSTORM ENTERTAINMENT; TOMMY<br>VAN DELL; and IN2N ENTERTAINMENT<br>GROUP, LLC,<br><br>                Defendants. | 11 Civ. 6811 (PSD)<br><br><br><br><br>BEFORE THE HONORABLE<br>PAUL S. DIAMOND |

**DEFENDANT IN2N ENTERTAINMENT GROUP, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES**

Defendant IN2N Entertainment Group, LLC ("IN2N"), by the undersigned, respectfully submits this Memorandum of Law in Support of its Motion for Attorneys' Fees as a prevailing defendant on the copyright infringement and other claims brought by Plaintiff Daniel V. Marino ("Marino").

## I.    INTRODUCTION

Marino filed copyright infringement claims that should never have been filed, to seek $150 million to which he was never entitled, from 18 of the 20 defendants in this action. Marino

then pursued those unmeritorious claims in a manner that this Court previously ruled demonstrates bad faith.  IN2N respectfully asks the Court to award its reasonable attorneys' fees and costs of $381,675 as a prevailing defendant in this action for the following reasons:

      A.      This Court can award fees to a prevailing defendant under the Copyright Act;

      B.      Fees should be awarded to prevailing defendant IN2N because:

          (1)    Plaintiff's copyright-related claims were objectively unreasonable, if not frivolous;

          (2)    Plaintiff pursued his copyright claims in bad faith;

          (3)    Considerations of compensation and deterrence support an award of fees and costs in such circumstances; and

          (4)    The fees and costs IN2N requests are reasonable.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

###     A.    "Club Girl" And This Action

Defendants Dante Barton ("Barton") and William C. Guice ("Guice") co-authored the musical composition "Club Girl."  Marino claims that he co-authored "Club Girl" with Barton and Guice, and alleged copyright infringement against Barton, Guice, and 18 other defendants because he claims Barton and Guice exploited "Club Girl" without Marino's permission, or compensation to him.[1]  (*See* Marino Amended Complaint, Dkt. No. 2 ["Am. Compl."] ¶¶ 5, 290-292.)  However, "[t]here is no allegation that [IN2N or the other] moving defendants knew or should have known of Plaintiff's royalty or credit issues" with Barton and Guice.  Dkt. No. 154, p. 4; *Marino v. Usher, et al.*, __ F.Supp.2d __, 2014 WL 2142118, *2 (E.D. Pa. May 21, 2014).

---

[1] IN2N does not dispute Marino's co-ownership claim for purposes of this motion only.

B.      **The Release Of "Bad Girl"**

IN2N is named in this action because in 2002 it entered into co-publishing agreements with Barton and Guice which, *inter alia*, governed the musical composition "Club Girl." (Am. Compl. ¶¶ 76, 98; Dkt. No. 2.)[2]  As Barton and Guice's music publisher, IN2N in 2004 authorized the creation and use of a derivative of "Club Girl" called "Bad Girl" that was used on Usher's "Confessions" album.[3]  IN2N did nothing else to affirmatively exploit "Club Girl" or "Bad Girl."  (Van Dell Depo. 84:9-85:6; 161:10-22; 163:5-14; 175:10-13; Exh. C; Dkt. No. 103.)  Thereafter, IN2N only collected publishing revenue from record sales during the time it acted as publisher for the song, and it stopped doing that in about 2005, six years before Marino filed his complaint.  (*Id.*; Van Dell Depo. 175:14-176:1; Exh. C; Dkt. No. 103.)

Barton and Guice also independently authorized and actively participated in the creation, recording and distribution of "Bad Girl" on the "Confessions" album in what has been called the "UW" Agreement.[4]  (Van Dell Depo. 272:19-273:1; Exh. C; Exh. F; Dkt. No. 103.)

C.      **Marino Claims Copyright Infringement Against 19 Defendants**

Marino claims Barton and Guice never paid him for their licensing of "Club Girl."  In 2011 he filed original and amended complaints against not only Barton and Guice, but also against IN2N and 17 other defendants who exploited "Club Girl" to create "Bad Girl" with the

---

[2] *See also*, Van Dell Depo. 49:3-14; 94:20-21; 221:9-222:5; 223:1-13; 225:9-18; 227:18; 228:21; Exh. C; October 29, 2002 Co-Publishing Agreement between Barton and IN2N, attached as Exh. D; October 29, 2002 Co-Publishing Agreement between Guice and IN2N attached as Exh. E; Guice Depo. 19:3-6; 95:5-16; 97:9-22; 102:6-103:8; Exh. B.  All deposition and exhibit references herein describe documents attached to Dkt. No. 103.

[3] (Van Dell Depo. 272:5-10; Exh. C, Dkt. No. 103; Am. Compl. ¶¶ 305, 318-19, 435, Dkt. No. 2.)

[4] Barton and Guice, through Barton's company, Underworld Entertainment, entered into a separate agreement with co-defendant Usher's company, Fast Pace, Inc., in 2004 in which they licensed their copyright interests in "Club Girl" to Usher's production company and record label. (*See* Guice Depo. 113:20; Exh. C to Declaration of Jonathan Davis; Dkt. Nos. 23-6; February 1, 2004 letter agreement between Fast Pace, Inc., and Underworld Entertainment, attached as Exh. F to Dkt. No. 102.)

permission of Barton and Guice.  (Dkt. Nos. 1, 2.)  Four counts in the Amended Complaint are alleged against those 18 defendants.[5]  Counts I and III alleged direct and vicarious copyright infringement.  Counts IV and V sought a constructive trust and accounting based on the alleged copyright infringement.  (Am. Compl., ¶¶ 414-428, 434-440, and 441-449; Dkt. No. 2.)  Marino sought to recover over $150 million in revenues attributable to those defendants' "infringement." (*See* Dkt. No. 90-3, p. 16.)

### D.     Marino's Pursuit Of His Claims

Following commencement of this action, the parties conducted about 23 depositions of the parties or their experts in Pennsylvania, New York, Colorado, and California.  (*See* Dkt. Nos. 152 and 154.)  Marino's counsel unnecessarily extended the length of those depositions, and attempted to influence the testimony elicited in them, by repeated and lengthy speaking objections. (Dkt. No. 152.)  This Court criticized Marino's counsel for such misconduct.  (*Id*.)

Marino's counsel also misled named defendant Guice as to Guice's status in the case, thereby enabling Marino to elicit favorable testimony from Guice while obtaining a default against him.  (Dkt. No. 152.)  This Court has sanctioned Marino's counsel for that misconduct. (*Id*.)

Marino also repeatedly submitted lengthy briefs that argued unmeritorious positions.  For example, after most defendants moved to dismiss Marino's Amended Complaint on the grounds that their actions were authorized by Burton and Guice, he filed a 43-page opposition brief which obfuscated the nature of the agreements by which Barton and Guice granted rights in "Club Girl" to the other defendants herein.  He then filed a 15-page surreply that reiterated the same arguments.  (Dkt. Nos. 30, 34.).  On January 24, 2013, Marino filed a 22-page brief opposing application of the Copyright Act's three-year statute of limitations to his copyright claims, as well as dismissal of his request for punitive damages on his copyright infringement claims.  (Dkt.

---

[5] Eight other counts in Marino's Amended Complaint are asserted against Barton and Guice only.  (Dkt. No. 2.)

No. 65.)  On July 26, 2013, Marino opposed Defendants' request to strike portions of his damage expert's report that sought revenue and damages for "infringement" that occurred more than three years before he filed suit, even though the Court had previously limited Plaintiff's damages to that three year period.  (Dkt. No. 94.)  Finally, Marino submitted over a hundred pages of briefing to oppose Defendants' motions for summary judgment.  (Dkt. Nos. 109, 120.)

E.      **This Court's Rulings**

On September 25, 2012, this Court, despite Marino's opposition, dismissed Marino's constructive trust and accounting claims on the grounds that those claims were preempted by copyright law.  (*See* Dkt Nos. 42, 48.)  On April 8, 2013, this Court, despite Marino's opposition, limited Marino's copyright infringement claims to infringements that occurred on or after October 28, 2008, that is, within three years of Marino's suit, and also dismissed his claims for punitive damages.  (Dkt No. 75, p. 6.)  On July 31, 2013, this Court, despite Marino's opposition, granted defendants' motion to strike those portions of Marino's damages expert's report that sought damages accruing more than three years before Marino filed suit.  (Dkt. No. 97.)

On May 21, 2014, this Court, despite Marino's opposition, entered summary judgment and dismissed Marino's remaining direct and vicarious copyright infringement claims against IN2N and 17 other moving defendants.  (Dkt No. 154); *Marino v. Usher*, *supra*, 2014 WL 2142118.  On the same day, this Court entered a separate order sanctioning Marino's counsel for misconduct in pursuing the action.  (Dkt. No. 152); *Marino v. Usher et al.*, 2014 WL 2116114 (E.D. Pa. May 21, 2014).

F.      **IN2N's Fees And Costs Incurred In Defending This Action**

IN2N has been forced to incur significant legal fees and costs to defend itself in this action.  IN2N is represented by two firms, Manatt, Phelps & Phillips, LLP ("Manatt"), and Rogers & Associates, LLC ("Rogers").  By this motion it requests fees and costs incurred by

those firms in this action as follows:[6]

|  | **Fees** | **Costs** | |
| --- | --- | --- | --- |
| **Manatt** | $304,489.60 | $10,522.80 | |
| **Rogers** | 62,310.50 | 4,352.80 | **Grand Total** |
| **Totals** | $366,800.10 | + 14,875.61 | = $381,675.71 |

(Lee Decl. ¶¶ 10-12; Rogers Decl. ¶ 10; Exhs. A and B.)

This Court granted prevailing defendants up to July 11, 2014, to move for attorneys' fees and costs as the prevailing parties on Marino's copyright infringement and other claims. (Dkt. Nos. 158, 160.)  IN2N now moves to recover its reasonable fees and costs totaling $381,675 as permitted by that order.

## III.  ARGUMENT

### A.  IN2N Should Be Awarded Its Reasonable Attorneys' Fees And Costs

#### 1.  The Copyright Act Authorizes This Court To Award Attorneys' Fees And Costs To Prevailing Defendants

This Court may "award a reasonable attorneys' fee to the prevailing parties as part of the costs" of a copyright infringement action.  17 U.S.C. § 505.  Bad faith need not be shown to award such attorneys' fees, though it supports a fee award.  *Fogerty v. Fantasy Inc.*, 510 U.S. 517 (1994).  Instead, the Supreme Court has articulated non-exclusive factors this Court should consider in deciding whether to award fees to further the purposes of the Copyright Act, citing with approval certain factors previously adopted by the Third Circuit in *Lieb v. Topstone Indus. Inc.*, 788 F.2d 151, 156 (3d Cir. 1986).  Factors favoring an award of fees and costs include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of

---

[6] To avoid any risk of a double recovery, IN2N by this motion does not seek to recover the fees and costs it is requesting in the pending petition for fees filed in connection with this Court's sanctions order.  (*See* Dkt. No. 152.)  The fees and costs requested in this motion exclude those fees and costs.  (Lee Decl. ¶ 13; *see* Dkt. No. 161.)

compensation and deterrence." *Fogerty v. Fantasy, Inc., supra,* 510 U.S. at 535 n.19, quoting with approval *Lieb, supra,* 788 F.2d at 156. "[P]ost-*Fogerty*, courts have increasingly awarded attorneys' fees to prevailing defendants." *Warren Publishing Co. v. Spurlock*, 2010 WL 760311, *3 (E.D. Pa. 2010). "An award of reasonable attorneys' fees and costs tends to be the rule rather than the exception in actions for copyright infringement." *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 443 (D. Del. 2005).

> **2.   This Court Should Award IN2N Its Attorneys' Fees And Costs As A Prevailing Defendant On Plaintiff's Copyright Infringement Claims**

Prevailing defendant IN2N should be awarded its attorneys' fees and costs pursuant to the factors described above for the following reasons.

> **a.   Marino's Objectively Unreasonable Copyright Infringement Claims Support A Fee Award**

Pursuing objectively unreasonable or frivolous claims supports a fee award under the Copyright Act, as copyright law does not favor pursuit of such claims. *Fogerty, supra*; *Lieb, supra*. Marino's copyright infringement claims are at least objectively unreasonable for a number of reasons.

**First**, Marino's infringement claims were impossible under basic principles of copyright law. One cannot be liable for copyright infringement if one uses a work with the permission of a copyright owner. "[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute . . . is not an infringer of the copyright with respect to such use." *Sony Corp. of America v. Universal Studios*, 464 U.S. 417, 433 (1984), cited by this Court in Dkt No. 42, pp. 6-7; *Thompson v. Larson*, 547 F.3d 195, 199 (2d Cir. 1998). Thus, any grantee of a co-author is immune from copyright infringement liability when the grantee uses the copyrighted work in accordance with the rights granted to it by that co-author. *Brownstein v. Lindsay*, 742 F.3d 55, 68 (3d Cir. 2014); *Davis v. Blige*, 505 F.3d 90, 99-100 (2d Cir. 2007).

Here, IN2N and the other defendants were all authorized by co-authors Barton and Guice to exploit "Club Girl" in the manner they exploited it, as Marino himself repeatedly acknowledged in his pleadings and discovery. It therefore was legally impossible for Marino to

succeed on his copyright infringement and related claims, and it was objectively unreasonable of Marino to pursue such impossible claims against any defendant.[7]

**Second**, Marino admitted in deposition that he verbally authorized defendants' use of "Club Girl," thereby creating a nonexclusive implied license that immunizes IN2N and other moving defendants from copyright infringement liability.  (Dkt. No. 154 p. 4); *Marino v. Usher*, *supra*, 2014 WL 2142118 at *2.  Among other fatal admissions, Marino testified that he, Barton and Guice permitted Usher to use the song at issue, and that he was excited when he learned about the contract for Usher to use "Club Girl," celebrating the success of the song after Usher released it.  (*Id.*; Marino Dep. at 145-46, 244-50, 308-12, 439.)  Plaintiff's own admissions thus establish that Marino himself at least impliedly licensed defendants' use of the song that his complaint alleges moving defendants "infringed."  (*Id.*)  Marino's copyright infringement claims are objectively unreasonable, if not frivolous, in these circumstances.  *Lowe v. Loud Records*, 2004 WL 527831 (E.D. Pa. 2004), *aff'd*, 126 Fed. Appx. 545 (3d Cir. 2005) (copyright infringement claim objectively unreasonable because plaintiff's own admissions established that he granted an implied nonexclusive license to defendant, making copyright infringement impossible and justifying an award of fees to defendant); *Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 2005 WL 1244923, *4 (E.D. Pa. 2005) ("A frivolous claim is one like that advanced in *Lowe v. Loud Records*, where the plaintiff alleged that the defendants infringed his music copyrights by using the song, but later admitted that he granted defendants a nonexclusive license").

---

[7] Of course, Marino could pursue state law claims against Barton and Guice if either one wrongfully denied him his share of the proceeds from their exploitation of "Club Girl."  His Amended Complaint alleges just such claims against them.  However, Marino has no *copyright infringement* claims against any defendant, and he never should have filed them.  Marino's overpleading of unmeritorious claims against 18 improper defendants literally "made a federal case" out of what should have been a straightforward accounting dispute between co-authors, thereby wrongfully multiplying these proceedings and needlessly consuming federal judicial and party resources of the Court, IN2N, and 17 other defendants.

**Third**, Marino's arguments to oppose defendants' motion for summary judgment demonstrate the objective unreasonableness of his claims.  Faced with clear case law establishing the legal impossibility of his copyright infringement claims as described above, Marino spent 110 pages of briefing to argue a position that no reported decision has ever accepted, namely that Barton and Guice could not grant or license their own copyright interests to IN2N or the other defendants unless Marino also signed those transfer documents.  (Dkt. Nos. 109, 120.)  Literally every court to address the issue, including every decision that Marino cited in his opposition to motion for summary judgment, recognized that joint owners can grant their individual copyright interests by a simple written instrument, regardless of the actions or inactions of other joint owners such as Marino.  (*See* Dkt. Nos. 103 pp. 5-8; 114 pp. 2-5; and 128 pp. 2-4.)

**Fourth**, other aspects of Marino's briefs opposing summary judgment further demonstrate the objective unreasonableness of his position.[8]  As this Court previously noted, Plaintiff's summary judgment response "frequently misstates the law and contradicts his own deposition testimony and the allegations of his Amended Complaint[,]" actions which demonstrate that Marino's positions could not be supported on the merits.  (*See* Dkt. No. 154 p. 8); *Marino v. Usher, supra*, 2014 WL 2142118 at *4.  The frivolous nature of Marino's opposition is exemplified by his unintelligible characterization of defendants' position:

> "It is a fallacious position; one which, mounting a series of misplaced presumptions into a portrait of the issue misframed from the start – and arguing backwards at that – only obscures the

---

[8] Marino's opposition also ignored evidence IN2N cited in its motion for summary judgment which established that IN2N could not be liable for copyright infringement on other grounds. Fundamentally, IN2N could not be liable for copyright infringement because it engaged in no allegedly infringing activity during the three-year statute of limitations period.  (*See* Dkt No. 114, pp. 8-9 and cases cited therein; Dkt. No. 128 p. 4).  Marino's failure to address that evidence and argument effectively abandoned the issue, and implicitly acknowledged that his claims against IN2N were frivolous.  *See In re Hoti Enterprises, L.P.*, 2014 WL 1244779, *4 (S.D.N.Y. 2014) (failure to address an argument abandoned it); *Jain v. McGraw-Hill Companies, Inc.*, 827 F.Supp.2d 272, 280 (S.D.N.Y. 2011) (failure to respond to arguments in motion abandoned the six claims to which those arguments related); *Anti-monopoly, Inc. v. Hasbro, Inc.*, 958 F.Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("The failure to provide argument on the point at issue constitutes abandonment of the issue"), aff'd, 130 F.3d 1101 (2d Cir. 1997).

fundamental truth that refutes it."  (Dkt. No. 109 at 8; *Marino v. Usher*, *supra*, 2014 WL 2142118 at *4.)

Marino's copyright infringement claims are at least objectively unreasonable in these circumstances, and support an attorney's fee award in favor of IN2N and the other defendants.

### b.  Plaintiff's Bad Faith Actions Support A Fee Award

Bad faith is not needed to award attorneys' fees under the Copyright Act as described above, but evidence of a bad faith motive further supports an award of fees against the party who acted in bad faith.  *Lieb*, *supra*, 788 F.2d at 156.  Marino here acted in bad faith during the course of this action, in several ways.

**First**, "[t]he Parties were unable to schedule depositions because of Malofiy's refusal to consent to mutually agreeable dates and locations.  When depositions finally took place, Malofiy did what he could to disrupt or obstruct them."  (Dkt. No. 152 p. 2); *Marino v. Usher*, *supra*, 2014 WL 2116114, *1 (E.D. Pa. May 21, 2014.)

**Second**, during the course of those depositions, "Malofiy himself continually made lengthy speaking objections.  In a single deposition, he made sixty-five speaking objections <u>after</u> I directed the parties to refrain from the practice."  (*Id.*; emphasis in original.)

**Third**, Plaintiff's counsel repeatedly made "sexist, abusive remarks" during the course of depositions in an apparent effort to distract and intimidate defense counsel.  This Court previously noted that "the record teams with" such comments.  (Dkt. No. 152 p. 4); *Marino v. Usher*, *supra*, 2014 WL 2116114 at *2.

**Fourth**, Marino submitted written submissions that were similarly abusive, filing documents that characterized opposing parties or their counsel as "cry babies," "professional complainers," "juvenile," and "petty," while characterizing defendants' briefs as "fake work," "hogwash and claptrap," "bizarre," "off kilter," and "absurd."  (Dkt. No. 152, pp. 5-6); *Marino v. Usher*, *supra*, 2014 WL 2116114 at *4.

**Fifth,** Marino's counsel's actions to mislead co-defendant Guice so counsel could elicit favorable testimony from Guice that Marino could use against other Defendants, while at the

same time obtaining a default against Guice, obviously was improper.  "Malofiy's discussions with Guice were the paradigm of bad faith and intentional misconduct."  (Dkt. No. 152 p. 14); *Marino v. Usher*, *supra*, 2014 WL 2116114 at *8-9.

These actions evidence a plaintiff who has abused the legal process to try to extract a settlement or recovery from defendants unrelated to the merits of the dispute.  A plaintiff who pursues such a course of action, rather than defendants who are forced to defend against it, should bear the expense his actions cause.  Plaintiffs' bad faith actions further support an award of fees and costs in favor of IN2N and the other moving defendants.

> **c.**     **Considerations Of Compensation And Deterrence Support A Fee Award**

IN2N and the other defendants herein have incurred legal fees and costs they never should have had to incur to defend copyright infringement claims they never should have had to defend.  An award of fees and costs advances the purposes of the Copyright Act in these circumstances, as it "may deter the filing of future frivolous copyright infringement claims which, although unreasonable, cost money and time to successfully defend."  *Lowe v. Loud Records, supra*, 2004 WL 527831 at *3.  "Consistent with furthering the purposes of the Copyright Act, . . . a party that presents only objectively unreasonable claims . . . should not be encouraged in such conduct and, in fact, should pay the attorneys' fees associated with the prevailing party's resulting necessary . . . defense."  *Lucan v. Int'l Yacht Council, Ltd.*, 2008 WL 4555124, *16 (S.D. Fla. 2008).

In contrast, "defendants who seek to advance . . . meritorious defenses should be encouraged to litigate them . . . ."  *Warren Publishing Co. v. Spurlock*, *supra*, 2010 WL 760311 at *3.  "Defendants' effort should be rewarded under the Copyright Act as they have aided in clearly demarcating the boundaries of the copyright laws."  *Sun Media Systems, Inc. v. KDSM, LLC*, 587 F.Supp.2d 1059, 1072 (S.D. Iowa 2008).

Like the defendants in *Lowe*, *Lucan*, *Warren* and *Sun Media*, IN2N and the moving defendants' efforts to resist Marino's objectively unreasonable claims should be encouraged.

They should be rewarded for advancing meritorious defenses and helping to clearly demarcate the boundaries of copyright law.  They should be awarded their reasonable attorneys' fees and costs associated with their defense of this action.

**B.     IN2N's Fee Request Is Reasonable Under The Facts Of This Case And Applicable Legal Principles**

This Court should award "reasonable" attorneys' fees and costs under the copyright statute.  17 U.S.C. § 505; *Lieb, supra*, 788 F.2d at 156.  "Reasonable" attorneys' fees are determined by the "lodestar" method, pursuant to which this Court first determines a reasonable number of hours for the work expended, then multiplies those hours by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).  This Court then can increase or decrease the award based on certain other factors, such as the complexity of the action, the nature of the claims raised, the amount of the recovery sought, the litigation tactics used, the qualifications of counsel, and the results achieved.  *See Lieb v. Topstone, supra; Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).  The fees IN2N requests are reasonable under these factors.

**1.     The Hours Spent Are Reasonable**

Determining a "reasonable number of hours" involves the Court's independent evaluation of the time expended, the nature and need for the services performed, and relevant fee records. *Hensley, supra*, 461 U.S. at 441.  The hours spent in defending this action are reasonable for several reasons.

**First**, the hours requested are adequately documented.  They are supported by Manatt's and Rogers' invoices and contemporaneously created time records, which were used to generate Manatt's and Rogers' invoices to IN2N.  (Lee Decl. ¶ 9, Exh. A; Rogers Decl. ¶ 10, Exh. B.) Those records reflect in detail the "date, the hours expended, and the nature of the work done" by each timekeeper.  *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009); *see* Exhs. A and B.  They are in proper form, as they "describe generally the tasks performed each day and the number of hours expended in tenth-of-an-hour increments," along with the dollar value of each

timekeeper's time.  (*Id.*); *Barclays Capital Inc., v. Theflyonthewall.com*, 2010 WL 2640095, *2 (S.D.N.Y. 2010).

**Second**, the hours spent as reflected in those contemporaneous records are reasonable for the tasks performed.  The hours Manatt and Rogers spent defending IN2N in this action (including time spent in connection with the sanctions motion, which is not being duplicatively sought here as described above) are summarized below:

| Manatt Hours | 2012 | 2013 | 2014 | |
|---|---|---|---|---|
| Mark S. Lee (P)[9] | 54.1 | 293.9 | 44.8[10] | |
| L. Lee Phillips (P) | 8.2 | 6.5 | 1.1 | |
| Barry E. Mallen (P) | 53 | -- | -- | |
| Jordan Bromley (P) | 11.5 | 2.7 | -- | |
| Seth Reagan (A) | | 14.2 | -- | |
| Lindy Willingham (PA) | 3.2 | -- | -- | |
| Ieshia Black (PA) | -- | 2.7 | | **Grand Total** |
| Totals | 130 | 320 | 45.90 | 495.90 |

| Rogers Hours | 2012 | 2013 | 2014 | |
|---|---|---|---|---|
| Lance Rogers (P) | 33.5 | 186.8 | 40.5 | |
| Kent Conway (P) | 22.4 | 16.9 | | |
| Bruce Castor (P) | -- | 1 | 42.7 | |
| Melissa Prorock (PA) | .5 | 9.9 | .7 | **Grand Total** |
| Totals | 56.40 | 214.60 | 83.90 | 354.90 |

(*See* Lee Decl. ¶ 14, Exhs. A and B; Rogers Decl. ¶ 10.)

The above described hours are reasonable for the tasks IN2N counsel had to perform in those years.  The Court will recall that in 2012, IN2N was served with summons and complaint,

---

[9] As used in these charts, "P" means "partner," "A" means "associate," and "PA" means paralegal.  (Lee Decl. ¶ 14.)

[10] That number reflects 24.8 hours actually incurred as reflected in Manatt's invoices through May 31, 2014, and an estimated 20 hours that will be incurred briefing this motion.  (Lee Decl. ¶ 14.)

and had to gather relevant documents and evaluate the claims made in Marino's original and amended complaints; appear in the action; participate in motions to dismiss many of plaintiff's claims, which resulted in the dismissal of Counts IV and V of Marino's amended complaint; and prepare for a scheduling and settlement conference in this action.  (Lee Decl. ¶ 18; *see* Dkt. Nos. 1-58 and Exhs. A and B.)  One hundred thirty (130) hours of attorney and paralegal time for Manatt and 56.4 hours for Rogers is reasonable to undertake those efforts.  (*See* Exhs. A and B.)

In 2013, IN2N appeared at the scheduling and settlement conference ordered by this Court; participated in a motion for judgment on the pleadings that reduced and limited Marino's claims; responded to written discovery; compiled and reviewed thousands of documents to produce in response to discovery; participated in some of and reviewed transcripts of the many depositions conducted in this action; negotiated and addressed disputes concerning the course and scope of discovery; participated in expert witness discovery and motions to strike portions of certain of plaintiff's expert reports; participated in and prepared briefing in connection with defendants' motion for summary judgment and the joint motion for sanctions against plaintiff's counsel; participated in a settlement conference before the Magistrate Judge supervising this action, and prepared for hearings in connection with the sanctions motion hearing that was set for January of 2014.  (Lee Decl. ¶ 19; *see* Dkt. Nos. 59-135 and Exhs. A and B.)  Three hundred twenty (320) hours for Manatt and 214.6 hours for Rogers is a reasonable amount of time to incur in those efforts.  (*See* Exhs. A and B.)

In 2014, IN2N counsel participated in the sanctions hearings pursuant to this Court's order; submitted additional briefing related to that order, dealt with a variety of motions plaintiff's counsel filed following entry of this Court's May 21, 2014 orders, and prepared this motion for fees and costs.  (Lee Decl. ¶ 20; *see* Dkt. Nos. 136-175 and Exhs. A and B.)  Forty-

five and four-tenths (45.4) hours for Manatt and 83.9 hours for Rogers[11] is a reasonable amount of time to spend in such efforts.  (*See* Exhs. A and B.)

### 2.  The Rates Charged Are Reasonable

A "reasonable hourly rate" is determined by an evaluation of the status, reputation and experience of the attorneys who perform the service, the quality of counsel services on behalf of the client, the complexity of the work performed, the results achieved, and the rates customarily charged for work of the type performed in the relevant legal community.  *Pennsylvania v. Delaware Valley Citizens Counsel*, 478 U.S. 546, 556-57 (1987).  Approved attorney rates in intellectual property litigation tend to be higher than in other areas of law because of the special expertise required.  *Hilton v. Hugh Kay Fragrances, Inc.*, 2014 WL 794304, at *11 (E.D.N.Y. Feb. 25, 2014) ("[i]ntellectual property expertise does merit special consideration when determining attorneys' fees"); *A Rates Tech., Inc. v. MediaTrix Telecom, Inc.*, 2011 WL 1322520, at *10 (E.D.N.Y. Mar. 31, 2011) ("The court thus evaluates the reasonableness of counsel's rates using . . . prevailing rates as a basis of comparison, remaining mindful that intellectual property cases generally justify higher-than-average hourly rates").

The rates charged by Manatt and Rogers to IN2N during the relevant time period are set forth below:

| Manatt's Hourly Rates | 2012 | 2013 | 2014 |
|---|---|---|---|
| Mark S. Lee (P) | $695 | $695/625.50[12] | $670.50 |
| L. Lee Phillips (P) | $780 | $780/702 | $711 |
| Barry E. Mallen (P) | $675 | – | – |
| Jordan Bromley (P) | $560 | $560 | – |

---

[11] The bulk of Rogers' time in 2014 was incurred in connection with the two sanctions hearings, which IN2N is not duplicatively requesting here as described above.  *See* Lee Decl. ¶ 13; footnote 6, *supra*.

[12] Two different hourly rates are shown for Manatt in 2013 because, as reflected in its invoices, Manatt began providing a 10% discount in hourly rates during 2013.  (*See* Lee Decl. ¶ 15; Exh. A.)

| Seth Reagan (A) | – | $360 | – |
| Lindy Willingham (PA) | $300 | – | – |
| Ieshia Black (PA) | – | $260 | – |

| Rogers Hours | 2012 | 2013 | 2014 |
|---|---|---|---|
| Lance Rogers (P) | $295 | $295 | $295 |
| Bruce Caster (P) | $295 | $295 | $295 |
| Kent Conway (A) | $295 | $295 | $295 |
| Melissa Prorock (PA) | $90 | $90 | $90 |

(Lee Decl. ¶¶ 11, 15; Rogers Decl. ¶¶ 8-10; Exhs. A and B.)

Those rates are reasonable for several reasons.

**First**, they are the rates IN2N actually was charged and paid in this action.  (Lee Decl. ¶ 15; Rogers Decl. ¶¶ 8-10; Exhs. A and B.)  Rates are presumptively reasonable when they are paid by regular, paying clients in forum proceedings.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008).  Such actual rates "provide a strong indication of what private parties believe is the 'reasonable' fee to be awarded."  *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001).

**Second**, the rates are reasonable when compared to the rates charged by comparable Philadelphia firms.  (Lee Decl. ¶ 17; Rogers Decl. ¶¶ 8-10.)  The 2013 National Law Journal Billing Survey describes the following range of rates charged by partners and associates at major Philadelphia firms:

| Firm | Partner Rates | Associate Rates |
|---|---|---|
| Blank Rome | $940-445 | $565-175 |
| Cozen O'Conner | $1050-300 | $590-235 |
| Dwayne Morris | $710-430 | $490-295 |
| Fox Rothschild | $750-335 | $500-245 |
| Morgan Lewis & Bockius | $765-430 | $585-270 |
| Pepper Hamilton | $850-475 | $460-245 |

| Reed Smith | $945-545 | $530-295 |
| Saul Ewing | $850-365 | $575-225 |

(Lee Decl. ¶ 17; Rogers Decl. ¶ 8; Exh. C.)

The hourly rates charged by Manatt and Rogers for partners and associates in this action are well within these ranges, and thus are "reasonable" in the Philadelphia market.

**Third**, the rates charged are reasonable based on the professional background, experience, and reputation of the attorneys who performed the work.  For example, on behalf of Manatt, Mark S. Lee was the lead counsel in the case and the attorney in charge of the litigation for IN2N.  A partner at Manatt since 1994, he is a graduate of the University of Illinois College of Law who has 30 years of experience handling dozens of intellectual property cases, including dozens of copyright infringement actions and disputes involving well-known music, literary works, fictional characters, photographs, and computer software.  He is admitted to practice, and has appeared and argued, in a number of federal district and appellate courts, and is admitted to practice in the U.S. Supreme Court.  Author of *Entertainment and Intellectual Property Law* (Thompson/Reuters Westlaw 2006-2014), co-author of *Expert Witnesses:  Intellectual Property Cases* (West 2012), and author or co-author of numerous other articles on intellectual property law, he has taught copyright law at McGeorge School of Law and Loyola Law School of Los Angeles and is a frequent speaker on intellectual property issues.  A profile that summarizes his professional background and experience in more detail is concurrently filed as Exhibit D.  (Lee Decl. ¶ 3.)

Providing assistance to Mr. Lee was L. Lee Phillips.  A graduate of Cornell School of Law, Mr. Phillips is one of the name partners of Manatt, Phelps & Phillips, and is well-known as one of the most prominent music transactional attorneys in the United States.  He has 35 years of experience representing many of the best known musical artists in the country.  He is the billing attorney in this matter, and is also involved strategy and client communication.  A profile that summarizes his professional background is concurrently filed as Exhibit E.  (Lee Decl. ¶ 4.)

Early in the case, Manatt also received assistance from Barry Mallen, an experienced intellectual property and entertainment litigator who was a partner at Manatt from 1993 until his departure for another firm in 2012.  Attached as Exhibit F is a profile that summarizes Mr. Mallen's background.  (Lee Decl. ¶ 5.)

Manatt also received limited assistance from Jordan Bromley, a 2005 graduate of Brooklyn Law School and a music transactional partner with significant knowledge about IN2N and its business dealings.  (Lee Decl. ¶ 6; Exh. G.)  Manatt also was assisted by associate Seth Reagan, a graduate of Boalt Hall School of Law.  Mr. Reagan provided limited assistance in connection with discovery in this action.  (Lee Decl. ¶ 7; Exh. H.)

Finally, Manatt was assisted by two paralegals, Lindy Willingham and Ieshia Black, in gathering documents for the initial case evaluation and in preparing responses to discovery.  (Lee Decl. ¶ 8.)  Ms. Willingham has a Master's Degree in Psychology from the University of Houston, a Paralegal certificate from the Texas Paralegal School, and 30 years of experience as a paralegal.  Ms. Black has a BA in Motion Pictures/Television/Film from the University of Oklahoma, a Juris Doctorate from the University of Oklahoma College of Law, and 20 years of experience as a paralegal.  (*Id*.)

For Rogers, IN2N was principally assisted by name partner Lance Rogers.  Mr. Rogers is a graduate of the University of Pennsylvania and Northwestern University School of Law.  He clerked for two years with the Honorable Clarence C. Newcomer in the Eastern District of Pennsylvania (2001-2003), and he is admitted to practice law in Pennsylvania, New Jersey and Arizona.  Prior to founding Rogers & Associates in 2009, Mr. Rogers was an attorney at Dechert, LLP, and Pepper Hamilton, LP.  (Rogers Decl. ¶¶ 2-4.)

Rogers was assisted by Bruce Castor, a graduate of Washington and Lee University School of Law who is admitted to practice in Pennsylvania, the District of Columbia, this Court, and the U.S. Supreme Court.  Mr. Castor also is a former District Attorney of Montgomery County, Pennsylvania.  (Rogers Decl. ¶ 5.)

Rogers also was assisted by associated counsel Kent Conway, a 2001 magna cum laude graduate of Temple University School of Law (J.D. 2001), where he served on Law Review, and a magna cum laude graduate of York College (B.A. 1998).  Prior to joining Rogers in January 2010, Mr. Conway was an attorney at Dechert, LLP, and Buschman & Johnson.  (Rogers Decl. ¶ 6.)

Finally, Rogers was assisted by Melissa Prorock, a graduate of Widener University and ABA Certified Paralegal with nearly a decade of experience in legal matters.  (Rogers Decl. ¶ 7.)

Given the education, background and experience of these attorneys and paralegals, the rates charged are reasonable.

### 3.     Other Factors Favor The Requested Award Of IN2N's Fees And Costs

This Court can, in its discretion, consider certain other factors to increase a "lodestar" award.  *See, e.g.*, *Lieb v. Topstone*, *supra*; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).  IN2N believes that many of those factors, including the nature of the intellectual property claims asserted by Marino, the $150 million Marino sought to recover, the litigation tactics used by Marino's counsel in multiplying and lengthening the work performed by defendants and the Court, and the results achieved, support at least the fees and costs incurred, if not an upward adjustment of their actual fees here.[13]  The attorneys' fees and costs sought by IN2N herein, while certainly significant, are a tiny fraction of the $150 million Plaintiff sought to recover from it, and are less than amounts other courts have found "reasonable" in defending copyright infringement actions.  *See, e.g., ABC, Inc. v. Primetime 24*, 67 F.Supp.2d, 558 (N.D.N.C. 1999), aff'd on other grounds, 232 F.3d 886 (4th Cir. 2000) (awarding attorneys' fees of over $605,000 for defense of a copyright infringement action); *Fantasy, Inc. v. Fogerty*, 1995 WL 261504 (N.D. Cal. 1995), aff'd and remanded on

---

[13] IN2N does not request an upward adjustment of fees here, but instead requests compensation for the fees and costs it actually has had to pay to defend this action.

other grounds, 94 F.3d 553 (9th Cir. 1996) (awarding $1.35 million in attorneys' fees and costs incurred in defending copyright infringement action).

### 4.    The Requested Costs Are Reasonable

In addition to attorneys' fees, the court in a copyright infringement action "may allow the recovery of full costs by or against any party" pursuant to 17 U.S.C. § 505.  *Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 2005 WL 1244923, *15 (E.D. Pa. 2005).  As reflected in Exhibits A and B, IN2N should be awarded its "full costs" in the sum of $14,875.

## IV.    CONCLUSION

IN2N should be awarded reasonable attorneys' fees and costs in the sum of $381,675 for all of the reasons described above.

Dated:  July 11, 2014                              Respectfully submitted,


                                                   s/ Mark S. Lee
                                                   Mark S. Lee
                                                   admitted *pro hac vice*
                                                   Manatt, Phelps & Phillips, LLP
                                                   11355 West Olympic Boulevard
                                                   Los Angeles, CA  90064-1614
                                                   phone:  (310) 312-4000
                                                   fax:  (310) 312-4224
                                                   email:  mlee@manatt.com


                                                   /s/ Lance Rogers
                                                   Lance Rogers
                                                   Rogers & Associates, LLC
                                                   25 Elliott Avenue
                                                   Bryn Mawr, PA  19010
                                                   Telephone:  (610) 649-1880
                                                   Fax:  (877) 649-1800
                                                   email:  lance@rogerscounsel.com

                                                   *Attorneys for Defendant IN2N*
                                                   *Entertainment Group, LLC*