# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| DANIEL V. MARINO, | : | |
| | : | |
| Plaintiff, | : | 11 Civ. 6811 (PSD) |
| | : | |
| v. | : | |
| | : | |
| USHER (a/k/a Usher Terry Raymond IV); SONY | : | |
| MUSIC ENTERTAINMENT; EMI APRIL MUSIC, | : | |
| INC.; EMI BLACKWOOD MUSIC, INC.; JAMES | : | |
| SAMUEL HARRIS III; TERRY STEVEN LEWIS; | : | |
| BOBBY ROSS AVILA, JR.; ISSIAH AVILA, JR.; | : | |
| WILLIAM C. GUICE; DANTE E. BARTON; | : | |
| DESTRO MUSIC PRODUCTIONS, INC.; | : | |
| DEFENDERS OF MUSIC; FLYTE TYME | : | |
| TUNES; SUBLIME BASEMENT TUNEZ; UR-IV | : | |
| MUSIC, INC.; WARNER-TAMERLANE | : | |
| PUBLISHING CORP.; MARK PITTS; BYSTORM | : | |
| ENTERTAINMENT; TOMMY VAN DELL; and | : | |
| IN2N ENTERTAINMENT GROUP, LLC, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW
## IN SUPPORT OF MOVING DEFENDANTS' MOTION
## FOR COSTS UNDER FED. RULE CIV. P. 54 AND 17 U.S.C. § 505

JONATHAN D. DAVIS, P.C.
10 Rockefeller Plaza, Suite 1015
New York, New York 10020
(212) 687-5464

-and-

FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
(215) 299-2000

*Attorneys for the Moving Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 4

ARGUMENT .......................................................................................................................... 5

POINT I .................................................................................................................................. 5

THE COPYRIGHT ACT PERMITS AN AWARD OF FULL
COSTS AND ATTORNEYS' FEES TO THE MOVING DEFENDANTS .................................. 5

POINT II ............................................................................................................................... 10

THE AMOUNT OF ATTORNEYS' FEES AND
COSTS SOUGHT ARE REASONABLE AND APPROPRIATE ............................................. 10

POINT III .............................................................................................................................. 14

BECAUSE THE MOVING DEFENDANTS OBTAINED
A COMPLETE VICTORY OVER THE PLAINTIFF'S CLAIMS,
THIS COURT SHOULD AWARD THE FULL LODESTAR AMOUNT ................................. 14

POINT IV .............................................................................................................................. 16

THIS COURT SHOULD ALSO AWARD THE MOVING
DEFENDANTS THE REASONABLE ATTORNEYS' FEES
THEY INCURRED SEEKING FEES AS PREVAILING PARTIES ........................................ 16

CONCLUSION ...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................................................................. 10

*Barclays Capital Inc. v. Theflyonthewall.com*,
   No. 06 Civ. 4908 (DLC), 2010 WL 2640095 (S.D.N.Y. June 30, 2010) ................................ 14

*Bell v. United Princeton Props., Inc.*,
   884 F.2d 713 (3d Cir. 1989) ............................................................................. 13

*Bliven v. Hunt*,
   579 F.3d 204 (2d Cir. 2009) ............................................................................. 14

*Blum v. Stenson*,
   465 U.S. 886 (1984) ....................................................................................... 11

*Broadcast Music, Inc. v. It's Amore Corp.*,
   No. 3:08cv570, 2009 WL 1886038 (M.D. Pa. June 30, 2009) .................................. 13

*Earth Flag Ltd. v. Alamo Flag Co.*,
   154 F. Supp. 2d 663 (S.D.N.Y. 2001) ................................................................. 10

*Evans v. Port Auth. of N.Y. & N.J.*,
   273 F.3d 346 (3d Cir. 2001) ....................................................................... 11, 12, 13

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ................................................................................ 5, 6, 10, 15

*Frank Music Corp. v. Emerson's Pub, Inc.*,
   No. 4:08-CV-0532, 2009 WL 744964 (M.D. Pa. Mar. 18, 2009) ................................. 6

*Gen'l Universal Sys., Inc. v. Lee*,
   379 F.3d 131 (5th Cir. 2004) ............................................................................. 5

*Hensely v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................... 12, 15

*Hilton v. UK Fragrances, Inc.*,
   No. 12-CV-6346 (JFB) (AKT), 2014 WL 794304 (E.D.N.Y. Feb. 25, 2014) .................... 11

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
   426 F.3d 694 (3d Cir. 2005) ....................................................................... 11, 12, 13

*Lanni v. New Jersey*,
   259 F.3d 146 (3d Cir. 2001) ............................................................................. 12

*Lieb v. Topstone Indus., Inc.*,
  788 F.2d 151 (3d Cir. 1986) ...................................................................... 6, 15

*Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanatory Corp.*,
  487 F.2d 161 (3d Cir. 1973) ........................................................................... 11

*Lowe v. Loud Records*,
  126 F. App'x 545 (3d Cir. 2005) ........................................................... 5, 7, 8, 9

*Lowe v. Loud Records*,
  No. 10-1797, 2003 WL 22799698 (E.D. Pa. Nov. 20, 2003) ...................................... 8

*Luken v. Int'l Yacht Council, Ltd.*,
  581 F. Supp. 2d 1226 (S.D. Fl. 2008) ................................................................ 6

*Maldonado v. Houstoun*,
  256 F.3d 181 (3d Cir. 2001) ..................................................................... 11, 12

*Pawlak v. Greenawalt*,
  713 F.2d 972 (3d Cir. 1983) ......................................................................... 11

*Penn. Envtl. Defense Found. v. Canon-McMillan Sch. Dist.*,
  152 F.3d 228 (3d Cir. 1998) ..................................................................... 12, 14

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) .................................................................................. 12

*Planned Parenthood of Cent. N.J. v. Attorney General of the State of N.J.*,
  297 F.3d 253 (3d Cir. 2002) .......................................................................... 16

*Pub. Interest Research Group of N.J., Inc. v. Windall*,
  51 F.3d 1179 (3d Cir. 1995) ..................................................................... 14, 16

*Rates Tech., Inc. v. MediaTrix Telecom, Inc.*,
  No. 05-CV-2755 (JS) (AKT), 2011 WL 1322520 (E.D.N.Y. Mar. 31, 2011) ...................... 12

*Rode v. Dellarciprete*,
  892 F.2d 1177 (3d Cir. 1990) .................................................................... 11, 12

*Schiffer Books Publ'g, Ltd. v. Chronicle Books, LLC*,
  76 U.S.P.Q.2d 1493 (E.D. Pa. 2005) ................................................................. 7

*Smith v. Philadelphia Hous. Auth.*,
  107 F.3d 223 (3d Cir. 1997) .......................................................................... 11

*Student Pub. Interest Research Group v. AT&T Bell Labs.*,
  842 F.2d 1436 (3d Cir. 1988) ........................................................................ 12

*Warren Publ'g Co. v. Spurlock*,
　Civil Action No. 08-3399, 2010 WL 760311 (E.D. Pa. Mar. 3, 2010) ............................. 6, 7, 8

*Washington v. Philadelphia Cty. Ct. of Common Pleas*,
　89 F.3d 1031 (3d Cir. 1996) ........................................................................................... 12, 13

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*,
　388 F. Supp. 2d 435 (D. Del. 2005) ...................................................................................... 6

**Statutes**

15 U.S.C. § 1117 .......................................................................................................................... 6

17 U.S.C. § 301 ............................................................................................................................ 3

17 U.S.C. § 505 ................................................................................................................... passim

17 U.S.C. § 507(b) ....................................................................................................................... 3

35 U.S.C. § 285 ............................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 3

Fed. R. Civ. P. 12(c) .................................................................................................................... 3

Fed. R. Civ. P. 54 ........................................................................................................................ 1

The Moving Defendants are "prevailing parties" in Plaintiff Daniel V. Marino's copyright action against them concerning the songs *Club Girl* and *Bad Girl*.[1]  Because they successfully defeated each claim alleged against them in the Amended Complaint, the Moving Defendants respectfully submit this memorandum of law in support of their motion under Fed. R. Civ. P. 54 and 17 U.S.C. § 505 for an order granting them the costs of their defense, including reasonable attorney's fees (the "Motion for Costs and Fees").  Excluding the costs of this motion, the Moving Defendants, who comprise fifteen individuals and companies, seek costs, including reasonable attorney's fees, totaling $1,525,301.85.

## PRELIMINARY STATEMENT

Years ago, Plaintiff Daniel V. Marino filed a meritless copyright infringement action against the Moving Defendants over the song *Bad Girl*.

From the start, Marino's lawsuit had no chance of success.  He readily admitted in his *Amended Complaint* – and again nearly *18 months later* at his deposition – that the allegedly infringed work, *Club Girl*, was a joint work that he and his co-authors, Dante Barton and William Guice, permitted the Moving Defendants to use and exploit as *Bad Girl*.

Plaintiff had ample time to understand that permission and license are defenses to copyright infringement claims, that his allegations and testimony established those defenses, and that those defenses made his claims against the Moving Defendants frivolous and objectively unreasonable.  A cursory investigation into the law should have convinced Plaintiff to drop his claims against the Moving Defendants and to pursue his *Club Girl* co-authors, Barton and Guice.

---

[1] "Moving Defendants" refers to Defendants Usher Raymond IV, Sony Music Entertainment, EMI April Music Inc., EMI Blackwood Music Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc., Bystorm Entertainment, Mark Pitts, Issiah Avila, Bobby Ross Avila, Sublime Basement Tunez, Defenders of Music, Flyte Tyme Tunes, James Samuel Harris, and Terry Steven Lewis.  "Davis Declaration" or "Davis Decl." refers to the Declaration of Jonathan D. Davis, dated July 11, 2014.  "Eidel Decl." refers to the Declaration of Michael Eidel, dated July 11, 2014.

Yet, despite Plaintiff's case-ending admissions, he pressed on with his lawsuit, often misstating the law and filing lengthy, incomprehensible legal memoranda that only served to confuse and complicate the controlling legal issues rather than elucidate them.  He ignored the real costs his claims imposed on the innocent and blameless parties he indiscriminately chose to sue.  The defense costs he imposed, and the disruption he created for the Moving Defendants, meant little to him because he was transfixed by the stubborn belief – unsupported by any reasonable legal theory – that his claims had merit.

At every turn, Plaintiff proceeded to multiply costs and expenses.  Even the simplest task of negotiating a stipulation to extend the Moving Defendants' time to respond to the Amended Complaint became a battle royal.  The needless conflicts continued in discovery.  The difficulty the Moving Defendants had scheduling the depositions was a prelude to the days and days spent in fact and expert depositions that had no impact on Plaintiff's alleged copyright claims.  All told, there were 23 depositions in four cities.  Plaintiff's counsel caused those depositions to run well beyond the time they should have, flooding the record with irrelevant questioning and colloquy, and subjecting the witnesses, defense counsel, court reporters, and supporting staff to abusive conduct.

In hindsight, Plaintiff was not interested in litigating any colorable copyright claim against the Moving Defendants.  He wanted leverage.  By making the litigation process as confrontational and unpleasant as possible through "abusive," "disruptive," and "outrageous" conduct (Doc. No. 152 at 1-2), he thought he could obtain such leverage to improperly extract a hefty settlement payment.  Plaintiff knew he had no claim against the Moving Defendants.  And none of the *thousands of hours* spent litigating this case changed anything that Plaintiff didn't already know when he filed his first complaint.  As the Court recognized:  the Moving

2

Defendants "did nothing wrong."  (Doc. No. 154 at 14.)  Ironically, the proof elicited through discovery mirrored the allegations in the titanic Amended Complaint Plaintiff filed in 2011:  the use of *Club Girl* to create *Bad Girl* was permitted by its co-writers, Barton, Guice, and Plaintiff.

Because the undisputed facts could not support any claim against the Moving Defendants, Plaintiff's desperation forced him to respond to the Moving Defendants' summary judgment motion with arguments that were "confusing" and "not intelligible."  (*Id.* at 7.)  To gain an upper hand, Plaintiff even "misstate[d] the law and contradicte[d] his own deposition testimony and the allegations in his Amended Complaint."  (*Id.* at 7.)  Unfortunately, Plaintiff routinely relied on these tactics to manufacture complexity.  The needless complexity Plaintiff often interjected into this case was a cost borne by the Moving Defendants, who had to invest the time necessary to ensure that each misstatement or mischaracterization, whether of law or fact, was rebutted.

An award of attorney's fees and costs under the Copyright Act is warranted here because the Court disposed of every claim asserted against the Moving Defendants in the Amended Complaint using defenses under the Copyright Act.  The Copyright Act's preemption provision, 17 U.S.C. § 301, required the Court to dismiss Plaintiff's constructive trust and accounting claims under Fed. R. Civ. P. 12(b)(6).  (Doc. Nos. 42 and 48.)  The Copyright Act's statute of limitations provision, 17 U.S.C. § 507(b),  coupled with the Plaintiff's own allegations, required the Court to limit Plaintiff's potentially recoverable damages and to strike his demand for punitive and exemplary damages in response to the Moving Defendants' Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).  (Doc. No. 75.)

The Copyright Act also provided the basis to grant the Moving Defendants' motion to strike portions of an expert report Plaintiff wrongly submitted in support of his copyright claims

because Plaintiff's expert failed to adhere to the limitation the Court had already imposed on Plaintiff's damages.  (Doc. No. 97.)  The Copyright Act and the substantial case law construing it required the Court to grant summary judgment dismissing the remainder of Plaintiff's doomed copyright claims against the Moving Defendants.   (Doc. Nos. 154 and 155.)

Plaintiff's lawsuit against the Moving Defendants was "clearly without merit" and was "objectively unreasonable."  It should be no surprise to Plaintiff that the Moving Defendants may recover from him their full costs, including reasonable attorneys' fees.  He was represented by counsel at every step of this lawsuit.

* * *

This Court's May 21, 2014 Order contains the judgment that entitles the Moving Defendants to request their full costs, including reasonable attorneys' fees, as prevailing parties under the Copyright Act, 17 U.S.C. § 505.  That Order states in pertinent part that:  "Judgment is entered in favor of [the Moving Defendants] and IN2N Entertainment Group, Inc. and against Plaintiff as to all Plaintiff's claims against them."  (Doc. No. 155 at 1-2.)  The Court set July 11, 2014 as the deadline for the prevailing defendants to file their motions for costs and fees under the Copyright Act.  (Doc. No. 158.)

## BACKGROUND

The background facts concerning the meritless claims Plaintiff pursued *for years* against the Moving Defendants are addressed in detail in the following:  this Court's May 21, 2014 Memorandum (Doc. No. 154), granting the Moving Defendants summary judgment with respect to Plaintiff's copyright infringement claims (Counts I and III of the Amended Complaint); this Court's September 25, 2012 and October 10, 2012 Orders (Doc Nos. 42 and 48), dismissing Plaintiff's constructive trust and accounting claims against the Moving Defendants (Counts IV and V) that were preempted under the Copyright Act; this Court's April

4

24, 2013 Order (Doc. No. 75), granting the Moving Defendants' Motion for Judgment on the Pleadings, limiting Plaintiff's potentially recoverable damages and striking his demand for punitive and exemplary damages; and the accompanying Davis Declaration.

## ARGUMENT

### POINT I

### THE COPYRIGHT ACT PERMITS AN AWARD OF FULL COSTS AND ATTORNEYS' FEES TO THE MOVING DEFENDANTS

The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  Under § 505, "[p]revailing plaintiffs and prevailing defendants are to be treated alike[.]"  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (holding court erroneously applied "more stringent standard" to prevailing defendant under § 505).

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible.  To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.  In the case before us, the successful defense of 'The Old Man Down the Road' increased public exposure to a musical work that could, as a result, lead to further creative pieces.  Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

*Id.* at 527.

Attorney's fees under § 505, while discretionary, are routinely awarded.  *Lowe v. Loud Records*, 126 F. App'x 545, 547 (3d Cir. 2005) (citing *Gen'l Universal Sys., Inc. v. Lee*, 379 F.3d 131, 148 (5th Cir. 2004)).  Unlike the federal fee shifting provisions in the patent and

trademark areas, the Copyright Act does not require a finding of "exceptional" circumstances before a court may award fees to a "prevailing party."  *Compare* 35 U.S.C. § 285 and 15 U.S.C. § 1117 *with* 17 U.S.C. § 505.  "An award of reasonable fees and costs tends to be the rule rather than the exception in actions for copyright infringement."  *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 443 (D. Del. 2005) (internal alterations omitted).

When deciding how to exercise its discretion, and whether to allow fees, the court may consider "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Fogerty*, 510 U.S. at 534-35, n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)); *Frank Music Corp. v. Emerson's Pub, Inc.*, No. 4:08-CV-0532, 2009 WL 744964, at *3 (M.D. Pa. Mar. 18, 2009) (awarding copyright fees because "defendants' actions were objectively unreasonable, motivated by a complete disregard for copyright law, and present[ed] a significant deterrence consideration"); *Warren Publ'g Co. v. Spurlock*, Civil Action No. 08-3399, 2010 WL 760311, at *4-5 (E.D. Pa. Mar. 3, 2010) (applying *Lieb* factors) (awarding defendant fees under § 505 and characterizing punitive damages claim under Copyright Act as "objectively unreasonable"); *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1246 (S.D. Fl. 2008) (recognizing that a party who pursues "objectively unreasonable claims … should not be encouraged in such conduct and, in fact, should pay the attorney's fees associated with the prevailing party's resulting necessary ... defense.").

Frivolousness is defined as lacking any plausible merit either in law or in fact. *Warren Publ'g Co.*, 2010 WL 760311, at *4.  A frivolous copyright claim exists, for example, when a plaintiff asserts an infringement claim against parties who received plaintiff's permission

to use the allegedly infringed song.  *Lowe*, 126 F. App'x at 547 (affirming award of attorney's fees and costs and calling plaintiff's claim "frivolous").  Improper motivation exists when a party does not "'have a good faith intent to protect a valid interest, but rather a desire to discourage and financially damage a competitor by forcing it into costly litigation.'"  *See Warren Publ'g Co.*, 2010 WL 760311, at *12 (quoting *Schiffer Books Publ'g, Ltd. v. Chronicle Books, LLC*, 76 U.S.P.Q.2d 1493, 1496 (E.D. Pa. 2005)).

In addition, "[b]ad faith litigation tactics, such as us[ing] the Copyright Act to secure payment [for] fair use of plaintiff's products, and knowingly gambl[ing] on an unreasonable legal theory in order to achieve a secondary gain [such as] the leveraging of a settlement, are objectively unreasonable and weigh in favor of an attorney's fee award."  *Warren Publ'g Co.*, 2010 WL 760311, at *11 (internal citations and quotations omitted).

An award of attorney's fees and costs is particularly appropriate here.  The Copyright Act permits the Court to award fees and costs, and the Moving Defendants are unquestionably "prevailing parties" in the Plaintiff's ill-conceived copyright action concerning the songs *Club Girl* and *Bad Girl*.

Plaintiff chose to pursue frivolous and objectively unreasonable claims that lacked any basis in law or in fact.  The Court immediately dismissed Plaintiff's accounting and constructive trust claims as a matter of law because it recognized that the Copyright Act preempted each of them.  (Doc. Nos. 42 and 48.)  Plaintiff should have reached the same conclusion.  The Court then granted the Moving Defendants' Motion for Judgment on the Pleadings in its entirety.  It applied the Copyright Act's statute of limitations to dismiss Plaintiff's claims for "copyright infringement damages and profits … that accrued before October 28, 2008" and it struck "Plaintiff's demands for punitive and exemplary damages under

Counts I and III[.]"   (Doc. No. 75 at 6.)[2]   Seeking punitive and exemplary damages was objectively unreasonable under Third Circuit case law.   *See Warren Publ'g Co.*, 2010 WL 760311, at *4-5.

The Moving Defendants targeted the last remnants of Plaintiff's copyright claims in their Motion for Summary Judgment.   Despite having no legal or factual basis to oppose the motion, Plaintiff submitted two briefs running over 100 pages in length arguing positions that have never been adopted in any jurisdiction.   The Court granted that motion and found that the Moving Defendants did "nothing wrong."  (Doc. No. 154 at 14.)

The Court cited multiple grounds supporting dismissal.   It found the Moving Defendants received both express and implied licenses to use the *Club Girl/Bad Girl* work.  (*Id.* at 9-12.)   The Amended Complaint and the facts uncovered in discovery were steeped in permission from every author of *Club Girl*, including, of course, Plaintiff himself.   Not only did Plaintiff admit that the Moving Defendants received permission to use *Club Girl/Bad Girl*, he vociferously argued that fact as if somehow it helped his cause.

In holding that the Moving Defendants received an implied license, the Court relied on several cases, including *Lowe v. Loud Records*, No. 10-1797, 2003 WL 22799698 (E.D. Pa. Nov. 20, 2003), *aff'd* 126 F. App'x 545 (3d Cir. 2005).  (Doc. No. 154 at 12.)  *Lowe* concerned a purported copyright infringement claim similar to Plaintiff's claims against the Moving Defendants.   In affirming the district court's award of costs and attorneys' fees under § 505, the Third Circuit in *Lowe* described the plaintiff's copyright claim as "frivolous," while recognizing

---

[2] When Plaintiff disregarded the Court's Order granting the Moving Defendants' Motion for Judgment on the Pleadings and served a report by a damages expert that sought to reinsert issues relating to the period already dismissed from the case, the Moving Defendants were forced to file a motion to strike just to obtain the benefit of the Court's order limiting Plaintiff's potential damages.   The Court granted the Moving Defendants' motion.  (Doc. No. 97.)

the "complexity of the issues" it presented.   The reviewing court observed that "[Plaintiff] fail[ed] to realize that his own testimony is evidence that establishes the license necessary to defeat his [infringement] claim."   *Lowe*, 126 F. App'x at 547.   That same observation applies here.

Moreover, Plaintiff's conduct during his deposition, and the conduct of Plaintiff's counsel throughout this litigation reveals an improper motivation that was never concerned with vindicating rights, but only with obtaining a large, undeserved payday from the Moving Defendants.   The action was pursued in bad faith.   At one deposition, Plaintiff's counsel proclaimed his thirst for money, stating he would take "every penny" of Usher's purported "$130 million" and the purported "$30 million [he makes] a year."   (Doc. No. 102-7 (Guice Dep. Day 2) at 14.)

Plaintiff's improper motivation is further demonstrated by his preposterous and unreasonable settlement demands.   After fact discovery ended, Magistrate Judge Timothy Rice held a settlement conference on August 29, 2013.   By then Plaintiff knew or should have known that his copyright claims were meritless, and at the very best, his damages were limited to the three years prior to the filing of the action.   Yet, rather than lower the outlandish $2.5 million settlement demand Plaintiff made during the initial Case Management Conference – and despite this Court's subsequent decision severely limiting Plaintiff's potentially recoverable damages (Doc. No. 75) – Plaintiff increased his demand four-fold from $2.5 million to $10 million. (Davis Decl., ¶ 12 at n.1.)

A failure to impose a penalty on Plaintiff for proceeding with such a meritless lawsuit, all the while knowing it could not succeed, would "'invite others to bring similarly unreasonable actions without fear of any consequences.'"   *Baker v. Urban Outfitters, Inc.*, 431 F.

Supp. 2d 351, 359-60 (S.D.N.Y. 2006) (quoting *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001)).  Plaintiff's pursuit of baseless copyright claims threatened the primary objective of the Copyright Act "to encourage the production of original literary, artistic, and musical expression for the good of the public."  *Fogerty*, 510 U.S. at 524.

Importantly, asserting bogus copyright infringement claims is conduct that hinders, rather than encourages, the creation of copyrightable works for the public good.  Had the Moving Defendants lacked the patience and resolve necessary to march forward with their defense, the Copyright Act would not have provided the protections Congress intended it to provide.  But by successfully defending against the claims, the Moving Defendants not only vindicated their right to use, create, and exploit derivative works created from an underlying joint work, they have provided reassurance to other authors creating similar works that the permission of one joint author of the underlying work is all that is needed to provide a defense to an infringement lawsuit brought by another joint author.  In this case, however, the Court found that Barton, Guice, and Plaintiff himself had consented to the creation of the derivative work, *Bad Girl*.

The decisive victory the Moving Defendants obtained over the Plaintiff shows that his claims were frivolous, objectively unreasonable, and warrant an award of costs and reasonable attorney's fees to the Moving Defendants as "prevailing parties."

## POINT II

### THE AMOUNT OF ATTORNEYS' FEES AND COSTS SOUGHT ARE REASONABLE AND APPROPRIATE

Because the Moving Defendants are "prevailing parties," this Court may allow them to recover from Plaintiff their "full costs" and a reasonable attorney's fee.  17 U.S.C. § 505. Determining what is a reasonable attorney's fee rests within the sound discretion of the district court.  But when exercising that discretion, "[a] District Court may not set attorney's fees based

on a generalized sense of what is usual and proper but 'must rely upon the record.'" *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001) (quoting *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997)).

A fee petition must be "specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)). "[A] fee petition should include 'some fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates.'" *Id.* (quoting *Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).

"To fix the size of a prevailing party's fee award, a court must determine the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). "The product of an attorney's hourly rate and the number of hours spent is referred to as the 'lodestar.'" *Id.*

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The district court should assess counsel's "experience and skill" and "compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[3] *Id.*

---

[3] The attorney fee rates approved for intellectual property cases are often higher than in other practice areas because of the special expertise required. *Hilton v. UK Fragrances, Inc.*, No. 12-CV-6346 (JFB) (AKT), 2014 WL 794304, at *11 (E.D.N.Y. Feb. 25, 2014) ("[i]ntellectual

(quoting *Dellarciprete*, 892 F.2d at 1183 (internal quotations omitted)); *see also Student Pub. Interest Research Group v. AT&T Bell Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988).  The "starting point," however, is the attorney's usual billing rate.  *Penn. Envtl. Defense Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998).  The Third Circuit has directed courts to calculate hourly rates according to market rates *at the time the fee petition was filed*, not when the work was actually performed.  *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001).

A party seeking attorney's fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable.  *Interfaith Cmty Org.*, 426 F.3d at 703 n.5; *see also Maldonado*, 256 F.3d at 184 (quoting *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)) (stating that the prevailing party has the "burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits, … that the requested hourly rates meet this standard") (internal quotations omitted); *Evans*, 273 F.3d at 361.  "'When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled.'"  *Maldonado*, 256 F.3d at 184 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)).

A fee petitioner need only submit evidence supporting the hours worked and the rates claimed.  *See Interfaith Cmty Org.*, 426 F.3d at 703 n.5; *see generally Hensely v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.")  After a prevailing party has made the *prima facie*

---

property expertise does merit special consideration when determining attorney's fees.") (internal quotations omitted); *Rates Tech., Inc. v. MediaTrix Telecom, Inc.*, No. 05-CV-2755 (JS) (AKT), 2011 WL 1322520, at *10 (E.D.N.Y. Mar. 31, 2011) (observing, "intellectual property cases generally justify higher-than-average hourly rates.")

showing with respect to the appropriate hourly rate, that rate may be contested but only with appropriate record evidence.  In the absence of such evidence, the prevailing party must be awarded fees at the requested rate.  *Evans*, 273 F.3d at 361 (internal citations and quotations omitted); *Washington*, 89 F.3d at 1036 (explaining that when the prevailing party has satisfied its burden regarding the community market rate and the opposing party has not produced contradictory evidence, "the district court may not exercise its discretion to adjust the requested rate downward") (internal citations and quotations omitted); *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) (explaining that a court may not decrease a fee award based on factors the losing party did not argue); *see also Interfaith Cmty Org.*, 426 F.3d at 711 (stating that court "may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party").

The hourly rates reflected in the accompanying Davis Declaration are reasonable and consistent with (if not lower than) the prevailing market rates charged in this district by legal professions of equal experience and competence.  Davis Decl. ¶¶ 23-34 and Exs. B and C thereto; *see also Broadcast Music, Inc. v. It's Amore Corp.*, No. 3:08cv570, 2009 WL 1886038, at *9 (M.D. Pa. June 30, 2009) (granting an experienced copyright attorney who filed and defended over 175 civil actions involving copyright infringement over 40 year career his "hourly rate of $575.00" that he described as a customary one for attorneys of his experience and expertise in Philadelphia and finding that time spent on the various tasks described in counsel's billing was reasonable given the length and complexity of the litigation, as well as defendants' unwillingness to take the need for a license seriously).

Similarly, given the breadth and scope of work required to obtain the dismissal of the Amended Complaint, and each and every claim Plaintiff alleged against the Moving Defendants,

the hours expended by their counsel in achieving that result were well within the bounds of reasonableness.  Davis Decl. ¶¶ 35-55 and Ex. A thereto.  The Davis Firm's representation of each Moving Defendant required individual consideration, and the breadth of the work it performed for each defendant varied based on whether they were an entity or person and the nature of their alleged role in the claimed infringement.  The Moving Defendants seek the legal fees they incurred in defending this action from its inception through the Motion for Costs and Fees.  The hours expended in the defense of this action are well documented.  They are supported by each invoice and contemporaneously created time records.

The Davis Firm invoices detail the time-keeper, a description of the services, and the amount of time expended in tenth of an hour increments, together with the dollar value of each timeslip.  *See Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009); *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908 (DLC), 2010 WL 2640095, *2 (S.D.N.Y. June 30, 2010). Similarly, the costs sought by the Moving Defendants are identified by description and amount. All costs sought are permitted under § 505 of the Copyright Act, including, among other things, deposition transcripts, copying costs, and expert fees.

Based upon the documentation and information in the Davis Declaration, this Court should award the Moving Defendants their costs, including reasonable attorneys' fees, in the amount of $1,525,301.85, which excludes the costs of this motion.

## POINT III

### BECAUSE THE MOVING DEFENDANTS OBTAINED A COMPLETE VICTORY OVER THE PLAINTIFF'S CLAIMS, THIS COURT SHOULD AWARD THE FULL LODESTAR AMOUNT

Once the Court calculates a lodestar, it may adjust the amount based on various factors.  *Penn. Envtl. Defense Found.*, 152 F.3d at 232; *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995) (noting that it is "essential to calculate the

14

lodestar before considering adjustments"). While there is "no precise rule or formula" to determine what fees to award, the most critical factor a court should consider is the degree of success obtained by the prevailing party. *Fogerty*, 510 U.S. at 534 (quoting *Hensley*, 461 U.S. at 436-37).

When a prevailing party "obtain[s] excellent results, his attorney should recover a fully compensatory fee" that will "[n]ormally [] encompass *all hours reasonably expended on the litigation*, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435 (emphasis added). Although bad faith is not required for an award of fees, its presence may be considered when determining the size of the award. *Lieb*, 877 F.2d at 156.

Here, the conservative lodestar amount reflected in the Davis Declaration should be awarded in its entirety. The Moving Defendants achieved complete success in this action, not only for themselves, but in furtherance of the objectives of the Copyright Act. This Court dismissed the two state law claims alleged against the Moving Defendants because the Copyright Act required their dismissal on preemption grounds. (Doc. Nos. 42 and 48.) The Court's decision addressing the scope of the Copyright Act's preemption provision provides helpful guidance to other parties litigating similar issues. The Court then limited Plaintiff's potentially recoverable damages and struck his demand for punitive and exemplary damages relying on the Copyright Act and controlling case law. (Doc. No 75.) Finally, the Court dismissed Plaintiff's copyright claims, declaring at the end of its decision that the "undisputed facts show that moving Defendants did nothing wrong." (Doc No. 154 at 14.)

The Court's summary judgment decision provided the Moving Defendants the complete judicial vindication they sought to obtain. And the legal fees and costs incurred in the

course of their defense were reasonable and appropriate to the needs and circumstances of the case.  Because the Moving Defendants obtained an "excellent result," this Court should award the Moving Defendants all of the reasonable attorney's fees incurred to obtain that result.  An award of the full lodestar amount is also warranted given the bad faith litigation tactics Plaintiff forced the Moving Defendants to endure for years, which made what should have been a straightforward litigation needlessly complicated and nightmarish for the parties.  The record is replete with examples of the Plaintiff's bad faith and improper motivation.  (Doc. No. 152.)

The Moving Defendants respectfully submit they should be awarded $1,525,301.85 exclusive of the costs of this motion  (Davis Decl. at ¶¶ 56-58.)  In calculating this amount, the Moving Defendants eliminated any attorney time-charges for travel between New York and Philadelphia, together with the related travel costs, including transportation, hotels, and meals, as well as the permitted legal fees or costs sought against Mr. Malofiy in connection with the successful sanctions motion against him.  The Moving Defendants have reserved their right to supplement that submission to recover their substantial fees and costs incurred for the sanctions motion and the hearings held by the Court.  In addition, the Moving Defendants do not seek recovery of the attorney's fees charged by local counsel, Fox Rothschild.

<u>POINT IV</u>

### THIS COURT SHOULD ALSO AWARD THE MOVING DEFENDANTS THE REASONABLE ATTORNEYS' FEES THEY INCURRED SEEKING FEES AS PREVAILING PARTIES

The time spent drafting and litigating a fee petition is compensable.  *Planned Parenthood of Cent. N.J. v. Attorney General of the State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002); *see also Windall*, 51 F.3d at 1190.

The Moving Defendants seek to recover the attorney's fees and costs incurred in preparing the Motion for Costs and Fees.  Their costs, including reasonable attorney's fees, for

preparing the Motion for Costs and Fees and any further papers they submit will be presented with their response to Plaintiff's anticipated opposition to the motion.  The Moving Defendants thought it more efficient to present their attorney's fees and costs for this motion at one time rather than piecemeal.  The Moving Defendants recognize that Plaintiff should be afforded the opportunity to respond to their request for such legal fees and costs once they make their full submission.

The Moving Defendants should receive a monetary award on their Motion for Costs and Fees given the scope of the fee request, the length of the litigation, the number of invoices and time-entries at issue, and the legal issues attendant to fee requests in the Third Circuit and under the Copyright Act.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the Moving Defendants, as "prevailing parties" under § 505 of the Copyright Act, respectfully request this Court to order Plaintiff to pay their costs, including a reasonable attorney's fee, totaling $1,525,301.85, exclusive of the costs of the Motion for Fees and Costs, together such other and further relief as the Court deems just and proper.

Dated:  July 11, 2014

> Respectfully submitted,
>
> JONATHAN D. DAVIS, P.C.
>
> By:    <u>s/ Jonathan D. Davis</u>
>         Jonathan D. Davis
>         Derek A. Williams
>         10 Rockefeller Plaza
>         Suite 1015
>         New York, New York 10020
>         (212) 687-5464

FOX ROTHSCHILD LLP

By:   s/ Michael Eidel
       Michael Eidel
       Matthew Olesh
       2000 Market Street, 20th Floor
       Philadelphia, PA 19103
       (215) 299-2000

*Attorneys for Defendants*
*Usher Raymond IV, Sony Music*
*Entertainment, EMI April Music Inc., EMI*
*Blackwood Music Inc., UR-IV Music, Inc.,*
*Warner-Tamerlane Publishing Corp., Mark*
*Pitts, Bystorm Entertainment, Issiah Avila,*
*Bobby Ross Avila, Defenders of Music, Flyte*
*Tyme Tunes, Sublime Basement Tunez,*
*James Samuel Harris III, and Terry Steven*
*Lewis*

18