UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

DANIEL V. MARINO,
*Plaintiff*

v.

USHER, *et al.,*
*Defendants*

No.: 11-cv-06811

BEFORE THE HONORABLE
PAUL S. DIAMOND

---

# ORDER

AND NOW, on this _____ day of _____, 2014, Moving Defendants' Motions for Costs and Fees are DENIED.

_____

THE HONORABLE PAUL S. DIAMOND

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL V. MARINO,<br>*Plaintiff*<br><br>v.<br>USHER, *et al.,*<br>*Defendants* | NO.: 11-cv-06811<br><br>BEFORE THE HONORABLE<br>PAUL S. DIAMOND |

# OMNIBUS RESPONSE IN OPPOSITION TO MOVING DEFENDANTS' MOTIONS FOR COSTS AND FEES

Plaintiff objects to the costs and fees submitted and incorporate by reference the attached memorandum of law.

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Rd. | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

*/d/ August 1, 2014*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL V. MARINO, *Plaintiff* | No.: 11-CV-06811 |
| v. | BEFORE THE HONORABLE PAUL S. DIAMOND |
| USHER, *et al.,* *Defendants* | |

# MEMORANDUM OF LAW IN OPPOSITION TO MOVING DEFENDANTS'[1] MOTIONS FOR COSTS AND FEES

Plaintiff Dan Marino filed this suit because he was deceived by his two closest friends (Barton and Guice), and misled by some of the most sophisticated players in the music industry. Plaintiff wrote, recorded, engineered, and produced the songs Club Girl/Bad Girl, but has never received any credit or compensation for the use of his work from the Defendants who exploited it. His lawsuit from the beginning was a "Daniel vs. Goliath" endeavor, filed largely out of a sense of righteousness that a man who spent many years of his life creating music should at the very least be recognized and enjoy the fruits of his labor. The Court has decided—wrongly—that Plaintiff is not entitled to any relief whatsoever despite his clear authorship. It would be the height of injustice if the Court then subjected a man to millions of dollars in costs and fees because he sought to assert his valid rights.

All Moving Defendants knew that Daniel Marino wrote, engineered, recorded, and produced Club Girl/Bad Girl as they were directly involved in this process with him. They purposefully claim authorship of his efforts, attempting to extinguish his rights, while filing fraudulent copyright registrations. Not one of the Moving Defendants disputes that Marino wrote, recorded, engineered, and produced Club Girl/Bad Girl, however, they claim his work as their

---

[1]  Bobby Ross Avila, Jr., Issiah Avila, Jr., Bystorm Entertainment, Defenders of Music, EMI April Music, Inc., EMI Blackwood Music, Inc., Flyte Tyme Tunes, James Samuel Harris, III, Terry Steven Lewis, Mark Pitts, Sony Music Entertainment, Sublime Basement Tunez, UR-IV Music, INC., Usher Terry Raymond IV, Warner Tamerlane Corp., and IN2N Entertainment Group, Inc.

own. In the real world this is called plagiarism. When they took the fruits of his labor without consent this is called theft. When they misregistered the copyrights this is called fraud. This Court should not further sanction Defendants' misconduct by awarding them millions in fees and costs when they still retain the fruits of Plaintiff's labors, his songwriting credit, and the right of attribution of his authorship as their own.

Plaintiff is opposing these motions for costs and fees on several grounds:

- This motion is premature and untimely
- Guice and Barton should pay the costs and fees incurred
- Defendants are not the prevailing parties at this juncture
- Defendants are not entitled to costs and fees as this lawsuit was clearly not frivolous and Plaintiff copyright claims had solid grounds in both fact and law
- Defendants costs are highly unreasonable
- Even if costs and fees are to be paid, Plaintiff has no way to pay for them
- Any assessment of costs and fees should be delayed until after the case is decided on appeal

## I.   Matter Before the Court

Before the Court is Plaintiff's Response in Opposition to Moving Defendants' Motions for Costs and Fees (*Doc. Nos. 176–79*).

## II.   Brief Factual and Procedural Summary of these Motions

On May 21, 2014, this Court granted summary judgment for Moving Defendants on all claims (*Doc. No. 155*). Following that ruling, Moving Defendants contacted Plaintiff stating that they wanted a stipulation for an extension to file for costs and fees as the prevailing party under 17 U.S.C. § 505. See Email Chain Between Counsel on May 23, 2014 (*Doc. No. 180*, at p.10) . Plaintiff stated that he believed that any petition or motion for those costs and fees was premature, because the order was not final, and could not agree to an extension on that basis. Id. Plaintiff then filed a Motion for Clarification (*Doc. No. 156*) with the Court asking whether the Court had intended its decision to be final, and also whether it was appropriate for Defendants to seek costs before the entry of a final order. The Court denied this motion on the grounds that it was asking for an advisory opinion (*Doc. No. 157*). Moving Defendants then asked the Court for an extension of time

to file for costs (*Doc. No. 158*), which was granted (*Doc. No. 158*) in the face of opposition from Plaintiff (*Doc. No. 159*). Moving Defendants then submitted motions for costs and fees on July 11, 2014 (*Doc. Nos. 176, 177*).

Plaintiff moved to strike the motion for costs and fees (*Doc. No. 180*) as premature due to the lack of a final judgment. The Court denied this motion without explanation. (*Doc. No. 181*). Plaintiff also asked for an extension of time of over an additional month to respond to Defendants' voluminous motions for costs and fees. The Court gave Plaintiff only an additional seven days, which is an inadequate amount of time to do a thorough analysis.

## III.   DEFENDANTS' MOTIONS FOR COSTS AND FEES ARE PREMATURE AS THERE IS NO FINAL ORDER OR JUDGMENT THAT IS APPEALABLE AND THERE IS NO PREVAILING PARTY[2]

Plaintiff objects to these motions as premature. A party may not collect costs and fees until a final judgment has been entered as to that party. Federal Rule of Civil Procedure 54(b) governs when an order dismissing less than all parties from a case is considered a final decision:

> JUDGMENT ON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties **does not end the action as to any of the claims or parties** and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The rule is explicit that an action against a party does not end *until* there is a 54(b) certification or all parties are dismissed from the case. As such, **filing a motion or petition for costs and fees cannot be done until *after* a final judgment** as it is logically discordant that a party could collect litigation costs and fees before the litigation against that party has actually ended. Cf. FRCP 54(b) (stating that a case does not end against a party until all parties are dismissed from the case). Such

---

[2] Judge Diamond admits that there is no final order in this case. (*Doc. No. 181*). Given that Plaintiff, Defendants, and the Court agree there is no final order, Plaintiff is baffled why a motion for costs and fees is even being considered at this point.

a conclusion finds further support from case law in the Third Circuit. <u>See</u> <u>Goldstein v. GNOC,</u> <u>Corp.</u>, 1994 U.S. Dist. LEXIS 11731, *3 (E.D. Pa. 1994) (stating "a party may not file a bill of costs until after the entry of final judgment"). In addition, many other district courts explicitly provide that costs may not be collected until a final judgment has been entered. <u>See, e.g.</u>, Local Rules of Western District of Pennsylvania 54(b); Local Rules of Southern District of Ohio 54.1(a); District of Massachusetts Procedures for Filing the Bill of Costs (*Doc. No. 180*, at p.15).

Moving Defendants have **admitted** that without a Rule 54(b) certification the grant of summary judgment in their favor is not a final judgment. <u>See</u> Defendants' Joint Letter Brief to Third Circuit on Rule 54(b) (*Doc. No. 180*, at p.26). **Because there is no final judgment in this case—and per Rule 54(b) the case has not ended against Moving Defendants—they cannot yet recover costs and fees for the litigation under 17 U.S.C. § 505 as the prevailing parties.**

It is therefore manifestly inappropriate for Moving Defendants, at this time, to file for costs and attorney's fees. The Court nevertheless has decided to improperly consider Defendants' Motions, something that Plaintiff objects to.

## IV.   GUICE AND BARTON SHOULD PAY THE COSTS AND FEES OF THIS LAWSUIT—THEY RECEIVED THE BENEFIT, SO TOO SHOULD THEY BEAR THE BURDEN

As a matter of equity and fairness Guice and Barton should be paying the costs and fees; furthermore defendants Guice and Barton entered into contracts with the Moving Defendants behind Plaintiff's back. In those contracts, Guice and Barton agree that there are no other claimants to the copyrights at issue and promise to indemnify Moving Defendants for the costs of related litigation. (*Doc. No. 103-6*, at p.6).  Given that it was Guice and Barton's duplicitous actions which are the genesis of this lawsuit, per the contract with Defendants, Guice and Barton are the individuals who should have to pay these costs.

It also must be noted that Barton took it upon himself to handle the business affairs of Marino, including negotiating all relevant contracts to this dispute. His failure to do this in good faith—which in part caused Marino to file this litigation—should in no way be taxed to Barton and Guice, who benefited from these secret contracts, as well as IN2N and Tommy van Dell who misregistered the Club Girl and Bad Girl copyrights without Marino's name.

The fact that all Moving Defendants were aware of Marino's songwriting and production of Club Girl/Bad Girl

## V.   Legal Standard

Costs and fees under 17 U.S.C. § 505 can only be awarded to prevailing parties. See Am. Bd. of Internal Med. v. Von Muller, 540 Fed. Appx. 103, 106 (3d Cir. 2013) (stating that parties can only recover under 17 U.S.C. § 505 if they are the prevailing party). The Supreme Court of the United States notes that when a district court is considering awarding costs and fees under 17 U.S.C. § 505, "[t]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (U.S. 1994) (quotation mark omitted). "[T]he Third Circuit has listed several nonexclusive factors that courts should consider in making awards of attorney's fees to any prevailing party. These factors include 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Id. at n.19 (quoting Lieb v. Topstone Industries, Inc., 788 F.2d 151, 156 (3d Cir. 1986)).

If the court *first* decides a fee award is warranted, *only then* must it decide what award is reasonable. Am. Von Muller, 540 Fed. Appx. at 107. The Court is required to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary." Id. (quotation marks omitted). A "District Court should lay out a quantitative basis as to the time it finds was inadequately documented, excessive, or redundant. In doing so, either it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Id. (quotation marks omitted). After the Court has decided the reasonable hours expended on the matter, the Court must multiply those hours by a reasonable hourly fee. Id. at 105. "The party seeking attorneys' fees has the burden of producing sufficient evidence of what constitutes a reasonable market rate for the character and complexity of the legal services rendered" in a particular legal community. Lewis v. Smith, 2010 U.S. App. LEXIS 27606 (3d Cir. 2010).

## VI.    Defendants are Not The Prevailing Party and Cannot Collect Costs and Fees at this Juncture

Plaintiff notes above that there is no final judgment in this case, that litigation has not ended against the Moving Defendants, and that it is wholly inappropriate to make a costs and fees determination at this time.

In addition, Plaintiff also disputes whether Moving Defendants can be considered the prevailing parties at this time. To recover costs under section 505, the moving parties must be the prevailing parties. Von Muller, 540 Fed. Appx. at 106. When Plaintiff filed this suit, he included legal causes of action in the complaint along with multiple requests for equitable relief including ownership, accounting, and constructive trust. Moving Defendants filed for summary judgment solely on Plaintiff's infringement claims. The Court's Order (*Doc. No. 155*) grants summary judgment for Defendants on the infringement claims, but inexplicably also states that all claims against Moving Defendants are also dismissed.

Plaintiff filed a Motion to Amend/Clerical Error (*Doc. No. 167*), noting that the equitable claims Plaintiff allege remained in the case and had not been addressed in anyway by the Court as Moving Defendants had failed to file for summary judgment as to the equitable relief. Judge Diamond denied the Motion to Amend/Clerical Error (Doc. No. 172), ruling that Plaintiff's equitable claims were not properly pled because they were included in the "Relief Requested" clause. However, case law establishes **that the proper place to request equitable relief is *precisely* in the "Relief Requested" section, just as Plaintiff did**. Pace v. Schwartz, 680 F.Supp.2d 591, 594 (S.D.N.Y.2010) (stating that equitable relief cannot be pled as a cause of action and should be requested in the "prayer of relief"); see also Benefit Control Methods v. Health Care Servs., 1998 U.S. Dist. LEXIS 376, 5–6 (E.D. Pa. Jan. 16, 1998) (stating that "[i]t is well-settled that an accounting is an equitable remedy which is available only when there is no adequate remedy at law").

Given that Plaintiff's equitable claims have not yet been fairly heard, it is impossible for this court to declare Defendants are the prevailing party when all claims against them have not been adjudicated.

## VII.   Moving Defendants Motions for Costs and Fees Should Be Denied as Plaintiff's Suit Legally and Factually Meritorious

Moving Defendants' characterization of Plaintiff's lawsuit as frivolous defies both fact and law. Plaintiff is unquestionably the original author of Club Girl/Bad Girl and not only wrote the song, but recorded, engineered, and produced it. Despite this, he has never been properly credited as the song's writer by Moving Defendants, who criminally misregistered the relevant copyrights without his name. Furthermore, despite the Court's plainly false findings in its Opinion (*Doc. No. 154*), ***Plaintiff has never been compensated in any way*** for the use of his work by Moving Defendants who have incurred enormous benefit from the use of Plaintiff's protected expression.

The Court's dismissal of the infringement claims had two primary bases: (1) it held that Plaintiff granted an implied license for the use of his work, and (2) it held that a nonexclusive license had been granted to Moving Defendants by defendants Guice and Barton to use the work.

**There was no implied license.** Moving Defendants, and the Court, claim that Moving Defendants were granted an implied license to use Club Girl/Bad Girl by Plaintiff himself. Such an argument and finding is disingenuous in the extreme. Plaintiff only cooperated with and agreed to let Defendants use his work, Club Girl/Bad Girl, ***on the condition that he was properly credited and compensated by Defendants***. Plaintiff stated multiple times in his deposition that the use of his artistic expression was conditioned on proper credit and compensation: "I never gave anyone permission without me being properly credited." See, e.g., Deposition of Daniel Marino at pp.97, 98, 147, 149, 153, 155, 156, 158, 168, 170, 172, 190, 221, 254, 256, 260–61, 298, 301, 302, 310, 312, 314, 333, 559 (see attached). Defendants obviously knew that Plaintiff expected such credit and compensation ***given that they provided it to defendants Guice and Barton***. Plaintiff, of course, never received any credit or compensation from the Moving Defendants for their use of his artistic expression.

Despite these uncontroverted facts, the Court decided, without any support in the record, that Plaintiff received a lump sum payment and royalties for his work and found that he gave implied consent for his work to be used. (*Doc. No. 154*, at p.3). To be clear, the idea that Plaintiff received a lump sum payment is fabricated. The idea that Plaintiff received royalties from Moving

Defendants, when he is not even on the credit splits, is just as fanciful.[3] It is truly stunning that the Court could have bungled such basic facts, especially when it had a duty to construe all disputes of fact in Plaintiff's favor.

The Court and Defendants cite many cases where a plaintiff was found to have given implied consent for a defendant to use his creative work; however, in *every single one of those cases* the plaintiff was either: (1) appropriately compensated for his work, or (2) explicitly stated that he expected nothing in return for its use.[4] Here, in contrast to those cases, Plaintiff's work was used by Defendants without credit or compensation even though they knew he was the author of the song. In the real world this is called **theft**; in the Eastern District it is apparently called "implied consent." It is beyond comprehension that the Court could cite these cases to find that Plaintiff gave implied consent when ***nothing*** in the record supports such a finding.

Because Plaintiff received none of the expected credit or compensation for the use of his song, Plaintiff in no way gave permission for his songs to be used and implied consent does not exist.

**THERE IS NO NONEXCLUSIVE LICENSE.** The Court also found that Moving Defendants were granted a nonexclusive license to use Club Girl/Bad Girl by defendants William

---

[3] Plaintiff was given a small amount of money by Dante Barton and was told they were royalties. However, Plaintiff in no way ever received any type of royalties, payment, compensation, or consideration from Moving Defendants.

[4] In almost every single case the Court cites for the proposition that Plaintiff granted an implied license to defendants, the person who granted an implied license was actually **paid for his work**. MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 778-79 (3d Cir. 1991) (plaintiff gave implied license because he distributed his work to the defendants in return for **payment**); Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle, 184 F. App'x 270, 275 (3d Cir. 2006) (plaintiff gave implied license to his work because he was **paid** for his work and continued to create the work after being told he would not be credited); I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996) (plaintiff gave implied license because he **received compensation** for his architectural drawings); see also Effects Associates, Inc. v. Cohen, 908 F.2d 555 (9th Cir. 1990) (widely cited case—plaintiff gave an implied license because **he received over $50,000** for the work he gave defendants). The **one exception** is Lowe v. Loud Records, No. 01-1797, 2003 WL 22799698 (E.D. Pa. Nov. 20, 2003), where the plaintiff was not paid but only because the Plaintiff in that action stated explicitly that he had created the work voluntarily ***and that he expected nothing in return his work***. Id. In this case, there is copious evidence that Daniel Marino expected payment and credit from the very beginning, that it was the understanding of all parties that each individual was to be paid and credited, and furthermore that all writers and producers were actually credited and paid for their work except Marino.

Guice and Dante Barton, two people who contributed to Club Girl/Bad Girl after Plaintiff originally created it.[5]

In fact, the facts clearly show that both IN2N/Tommy van Dell, and Usher contracted with Guice and Barton to improperly and illegally obtain *exclusive* rights in Club Girl/Bad Girl, attempting to extinguish Plaintiff's copyrights by way of secret contracts and fraudulent and criminal copyright misregistrations. This Court nevertheless held that these thoroughly dishonest contracts designed to convey an exclusive license should be automatically converted into a nonexclusive license, citing to the recently decided <u>Brownstein v. Lindsay</u>, 742 F.3d 55, 68 (3d Cir. 2014) opinion from the Third Circuit.[6] (*Doc. No. 154*, at p.9)

Even if <u>Brownstein</u>'s exclusivity rule controls this case—although Plaintiff vigorously disputes that it does[7]—**this rule did not exist in the Third Circuit until after briefing on summary judgment was completed**. To declare that Plaintiff's copyright infringement claims are frivolous and filed in bad faith, when the allegedly controlling precedent Defendants rely on to support their bad faith argument simply did not exist until 2014, is an insincere and unbecoming type of argumentation. In fact, contrary to Defendants' bluster, courts have recognized that it is illogical and counterproductive to automatically convert a failed attempt to convey an exclusive license into a nonexclusive license. <u>See, e.g.</u>, <u>Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F. Supp. 2d 332, 345 n.9 (S.D.N.Y. 2009)</u>. The legal rule advanced by Defendants, and adopted by this Court, is not only unreasoned but encourages dishonest behavior—especially evident in a case such as this where the grantors of the purported license (Guice and Barton) conspired with the grantees (Usher and IN2N) to illegally divest an author of all of the copyrights, credit, or compensation he is legally entitled to.

---

[5] Plaintiff in no way waives his arguments concerning whether Guice and Barton were actually his coauthors in light of their dishonest acts.

[6] Plaintiff believes that Brownstein is distinguishable from the instant case.

[7] Plaintiff asserts that in cases involving astounding levels of conspiracy and deceit, such as when *both the licensor and licensee defendants* engage in a deliberate conspiracy to take credit for Plaintiff's work and attempt to transfer his exclusive copyrights, all contracts and joint authorship agreements should be invalidated and the plaintiff should be held to hold an undivided interest in his portion of the underlying work, and he should be allowed to sue all defendants for infringement. This is that case.

As the Court properly found, and as Plaintiff must stress, **all** Defendants were aware Plaintiff wrote, recorded, engineered, and produced Club Girl/Bad Girl, but still deliberately and secretly contracted away his rights. Usher and co. even gave Plaintiff's production credits to William Guice who has never produced a song in his life. To this day, Plaintiff has not received a single dime from Moving Defendants for the use of his work even though his ownership rights cannot be reasonably contested. It is the antithesis of justice that bad actors who profited off of bad acts be further rewarded by the judicial system for those bad acts.

Given that Brownstein had not yet been decided until after the case was filed and summary judgment briefed, Plaintiff had solid legal ground on which to contest that the licenses Guice and Barton attempted to transfer to Moving Defendants were invalid. Plaintiff's claims were not frivolous, not pursued in bad faith, and do not support the Court awarding costs and fees to Defendants.

**PLAINTIFF'S EQUITABLE CLAIMS HAVE NOT YET BEEN DECIDED**. Plaintiff's equitable claims—ownership, accounting, and constructive trust—which were *sua sponte* dismissed by the Court. The Court, as noted above, cited to Brownstein regarding the exclusive license rule**, *but apparently failed to read the rest of case***. In Brownstein, the Third Circuit explicitly stated that when a plaintiff is the owner of a copyright—the Court concedes that Dan Marino is a valid owner of Club Girl—he must be given a jury trial to determine not only how much he is owed from any co-authors he might have, ***but also a jury trial to determine his ownership stakes in any derivative work produced from his original artistic expression***. Brownstein, 742 F.3d at 68. Despite this new case law which clearly establishes that Plaintiff **is entitled to a jury trial on his equitable claims irrespective of his infringement claims**, Judge Diamond incorrectly *sua sponte* dismissed all equitable claims. Plaintiff's valid equitable claims to ownership in Club Girl and Bad Girl establish conclusively that his pursuit of this lawsuit against Moving Defendants is not frivolous, has been always been pursued in good faith, and that he continues to be denied any recovery for his undisputed legitimate rights.

Plaintiff is therefore entitled to a jury trial against Moving Defendants on his equitable claims, his infringement claims were not frivolous, and cost and fees should not be imposed upon him. At the very least a significant reduction of the requested fees, at the Court's discretion, is

needed in the name of equity. If the Court was to impose a huge sum upon Plaintiff it would discourage future valid copyright claims. When future copyright claimants examine this case they will see that a man wrote a song, that it got used without any credit or compensation to himself, that he filed a lawsuit, that he got the Court to agree he authored the song, but that he was nonetheless ordered to pay nearly $2 million in fees. This is the exact wrong message to send.

## VIII. Defendants' Costs and Fees are Excessive, Poorly Documented, and Unjustified

### a.   IN2N's Motion for Costs and Fees

#### (1)   IN2N Illegally Misregistered Copyrights Without Plaintiff's Name; Equity Demands that No Costs be Assessed.

Defendant IN2N should not be entitled to any costs or fees due to its highly unethical and illegal conduct concerning the subject matter of this case. Namely, defendant IN2N registered several copyrights—Club Girl and Bad Girl—with the copyright office, deliberately excluding Plaintiff's name from the registration even though it knew that Plaintiff was the creator of Club Girl/Bad Girl. The Court appears to be under the misapprehension that this misregistration was done by Dante Barton—but IN2N, his publisher by and through defendant Tommy van Dell, is clearly listed as the copyright claimant. See Copyright Registrations of Club Girl/Bad Girl (*Doc. No. 163-8*).

Moreover, the Court admits that Plaintiff is at least a one-third owner of Club Girl/Bad Girl. Defendant IN2N by and through Tommy van Dell, as publisher of Club Girl, had defendants Dante Barton and William Guice sign publishing contracts that transferred and assigned a collective fifty percent interest in Club Girl and Bad Girl to IN2N.[8] It is thus indisputable given the Court's position that Plaintiff is an owner of Club Girl that, even if IN2N is not liable for infringement, that IN2N has retained royalties that rightly belong to Plaintiff.

Basic principles of fairness and equity demand that if IN2N is going to retain funds that rightfully belong to Plaintiff that Plaintiff not be ordered to pay approximately $380,000 to IN2N.

---

[8] The Court nonetheless inexplicably dismissed Plaintiff's equitable claims for an accounting, ownership, and constructive trust

Plaintiff again reiterates his extreme disappointment with Judge Diamond's rulings that have barred Plaintiff from asserting his legitimate rights.

### (2)   IN2N DOES NOT ESTABLISH THEIR HOURLY FEES ARE ACCEPTABLE

The party seeking attorneys′ fees has the burden of producing sufficient evidence of what constitutes a reasonable market rate for the character and complexity of the legal services rendered" in a particular legal community. <u>Lewis v. Smith</u>, 2010 U.S. App. LEXIS 27606 (3d Cir. 2010). Defendant IN2N's attorneys, Manatt and Rogers & Associates, claims their fee rates, which approach $800 an hour, are reasonable. Plaintiff disputes this and points out that counsel for the Usher defendants, Jonathan Davis, charged an hourly rate of $500 that, while still high, is far more reasonable. In any case, the rates charged are subject to adjustment per the Court's equitable discretion and should reduced for the reasons described immediately *infra*.

### (3)   PLAINTIFF CONTESTS THE AMOUNT OF HOURS BILLED AND THE HOURLY RATES

Examining the voluminous records submitted by IN2N, Plaintiff does not believe the records justify the hours recorded, the hourly rates charged, or the total dollar amount requested. For instance, examining the billing statement for 1/31/12 (Doc. No. 176-4, at p.2–7), Manatt charged its client $37,708.70 for 58.60 hours worth of work. However, examining what Manatt did during those hours reveals almost nothing of substance. Almost every entry is "review" of correspondence or documents, drafting emails, or participating in phone calls. Plaintiff does not dispute that these things are necessary in the course of a lawsuit, but to charge nearly sixty hours for such activity at a full hourly rates, for a total of $37,708.70, is unreasonable.

In fact, a review of all of Manatt's billing by and large reveals that many of its charges to its client are merely for "review" of documents and participation in phone calls, thereby inflating the number of billable hours spent on the matter. Plaintiff objects in the strongest possible terms to the reasonableness of these submissions and maintains that using a nearly $800 hourly fee for every activity—much of it ministerial—spent on this case is improper and should be reduced at the Court's discretion.

### b.   Usher Defendants

#### (1)   Usher Illegally Misregistered Copyrights Without Plaintiff's Name; Equity Demands that No Costs be Assessed

The Usher defendants should not be entitled to any costs or fees due to their highly unethical and illegal conduct concerning the subject matter of this case. The Usher defendants worked extensively with Plaintiff Daniel Marino to produce Bad Girl for the Confessions album and knew that he was a songwriter and producer of Club Girl/Bad Girl—this is not in dispute. Yet, despite this fact, the Usher defendants entered into a secret contract with Dante Barton and William Guice to the exclusion of Mr. Marino. This contract not only cut Dan Marino out of receiving any credit or compensation for Defendants use of Bad Girl, but it laughably gave Marino's producing credit to Wil Guice. Subsequent to this, the Usher Defendants then fraudulently and criminally misregistered Bad Girl at the copyright office to exclude any mention of Daniel Marino.[9] Far from doing nothing wrong, the evidentiary record shows that the Usher defendants engaged in extremely dishonest and underhanded behavior to the detriment of Plaintiff. The Usher defendants have been greatly enriched by their use and exploitation of Plaintiff's intellectual property but they have yet to compensate or acknowledge that Plaintiff is, in fact, the songwriter of Bad Girl. Awarding Defendants any money in costs and fees, when they still take credit that is not theirs and refuse to provide compensation that belongs to Daniel Marino, would be highly inequitable.

#### (2)   The Billing Records are Improperly Redacted

The Usher defendants have submitted billing records replete with heavy redaction. Plaintiff objects to the use of such redaction. The Usher defendants claim that such redaction is necessary per attorney-client privilege and the work-product doctrine. (*Doc. No. 178*, at p.6). Plaintiff does not believe that either attorney-client privilege (communications with a client) or work-product doctrine (protecting material prepared for litigation from discovery) applies to these records and demands that unredacted records be submitted immediately. Plaintiff notes that counsel for

---

[9] Note that the copyrights for Club Girl and Bad Girl were registered after the songs were commercially released by Usher. The songwriting credits were not determined for over a year after the songs were released.

defendant IN2N, Manatt, saw no need to redact their records. The Usher defendants' submission of redacted billing records requires that their request for costs and fees should be considered unsubstantiated and rejected.[10]

### (3) Plaintiff Contests the Amount of Hours Billed and the Hourly Rates

Examining the voluminous records submitted by the Usher defendants, Plaintiff does not believe the records justify the hours recorded, the hourly rates charged, or the huge total dollar amount requested. Just as with IN2N's submitted fees, many of the entries concern "review" of correspondence or documents, drafting emails, or participating in phone calls. Much of these tasks are ministerial and should not be charged at normal rates. Plaintiff does not believe it reasonable to rack up a huge number of billable hours at the attorney's regular rate for such activities. Plaintiff objects in the strongest possible terms to the reasonableness of these submissions and maintains the hours and rates should be reduced at the Court's discretion.

Rather than pointing out every single unreasonable entry, many of which are redacted, Plaintiff will address the outrageous fees the Usher defendants have submitted on a macro level. The Usher defendants maintain that they are owed $1,387,990.85 in legal fees. (Doc. No. 178, at p.19). This case was litigated from Jan. 2012 to Dec. 2013, approximately two years.[11] Assuming that their attorneys work fifty weeks a year, five days a week, that is approximately 500 days. This means that on average defense counsel was charging their clients $2,775.98 ***every day for the last two years***. In reality, there were also significant gaps of time where no work was done on the case, which means the fees defense counsel obtained from their clients were even more exorbitant. This is mind boggling and illustrates just how excessive the fees being asked for by Defendants are. If the Court is to impose fees on Plaintiff, he asks that the Court use its equitable discretion to reduce the total.

Further, Defendants have improperly included fees regarding Plaintiff's appeal and they should be struck. Id. at p.50. Plaintiff also objects to the costs Defendants included for Paul Geluso in the amount of $3,000, who was precluded from testifying. Id. at 43. This cost should be struck.

---

[10] Rogers & Associates, counsel for IN2N also submitted redacted billing records, something that Plaintiff objects to on the same grounds as the Usher defendants.

[11] From Dec. 2013 to present most of the case activity has concerned Moving Defendants' sanction motions.

IX.   **Plaintiff Has No Money to Pay These fees and Requests that the Assessment of any Costs and Fees Be Delayed**

a.   **Plaintiff Cannot Pay Any Amount of Costs and Fees Levied Against Him**

Plaintiff Dan Marino is not a wealthy man. He is a first generation America; both his parents are immigrants. He has a high school education and up until a few years ago was a food services worker, largely flipping burgers to make the ends meet. For most of his life he worked as a busboy, waiter, and much later a manager of a hamburger joint. He was making minimum wage or less than minimum wage for most of the last decade. Any disposable income he did have went toward his music career. He currently has no assets to speak of. His discovery in 2009 that he had been betrayed by his best friends, and sophisticated music industry professionals, wrought emotional and financial havoc on his life. He is newly married and he is flat on the mortgage for his house, if that could be characterized as an "asset." He owes roughly $175,000, and is trying to sell it for $199,000. He owes $10,000 for his wife's Honda Civic. He drives a 1999 Ford Ranger worth roughly $4,000. He also has a salvaged title motorcycle worth maybe $5,000.

b.   **Any Assessment of Fees and Costs Should Be Delayed Until All Appeal Remedies Have Been Exhausted**

Plaintiff requests that payment of any fees and costs assessed against Plaintiff not be ordered until after Plaintiff exhausts all remedies on appeal. There are complicated issues of law and equity at play and it would be an injustice to force Plaintiff to pay these costs now before the ultimate outcome of the case is definite.

*****

*Respectfully submitted,*
**Francis Alexander, LLC**

*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Rd. | Suite 105

Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiffs*

*/d/ August 1, 2014*

# Certificate of Service

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion to Strike and Stay Defendants' Motions for Costs and Fees has been electronically filed with the Court via the ECF Filing System, served upon all counsel of record via electronic mail, and e-mailed to William Guice and Thomas van Dell.

Jonathan D. Davis, P.C.
Jonathan D. Davis, Esquire
Derek A. Williams
99 Park Avenue | Suite 1600
New York, NY 10016
T:  (212) 687-5464
E: jdd@jddavispc.com
E: DAW@jddavispc.com

Fox Rothschild, LLP
Michael Eidel, Esquire
Matthew Olesh, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103
T:  (215) 299-2000
E: MEidel@foxrothschild.com

*Attorneys for Defendants*
*Usher Raymond IV a/k/a Usher ("Usher"), Sony Music Entertainment, EMI April Music, Inc.,*
*EMI Blackwood Music, Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc., Bystorm*
*Entertainment, Mark Pitts, Issiah Avila, Jr., Bobby Ross Avila, Jr., Sublime Basement Tunez,*
*Defenders of Music, Flyte Tyme Tunes, James Samuel Harris III, and Terry Steven Lewis*

Manatt, Phelps & Phillips, LLP
Mark S. Lee, Esquire
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
T:  (310) 312-4000
F:  (310) 312-4224
E:  mlee@manatt.com

ROGERS & ASSOCIATES, LLC
Lance Rogers, Esquire
25 Elliot Avenue
Bryn Mawr, PA 19010
T:  (610) 649-1880
F:  (877) 649-1800
E:  lance@rogerscounsel.com
*Attorney for Defendant*
*IN2N Entertainment Group, LLC ("IN2N")*

THOMAS VAN DELL
10900 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
T:  (310) 443-5332
E:  vandell@hudcan.com
*Defendant, Pro Se*

WILLIAM C. GUICE
16794 East Tufts Avenue
Aurora, CO 80015
*Defendant, Pro Se*
E: guicemanmusic@gmail.com

SAMUEL C. STRETTON, ESQUIRE
301 South High Street
West Chester, PA 19381-3231
E: s.stretton@verizon.net

*****

*Respectfully submitted,*
FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

*/d/ August 1, 2014*