UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL V. MARINO,<br><br>      Plaintiff,<br><br>    v.<br><br>USHER (a/k/a Usher Terry Raymond IV);<br>SONY MUSIC ENTERTAINMENT; EMI<br>APRIL MUSIC, INC.; EMI BLACKWOOD<br>MUSIC, INC.; JAMES SAMUEL HARRIS III;<br>TERRY STEVEN LEWIS; BOBBY ROSS<br>AVILA, JR.; ISSIAH AVILA, JR.; WILLIAM<br>C. GUICE; DANTE E. BARTON; DESTRO<br>MUSIC PRODUCTIONS, INC.; DEFENDERS<br>OF MUSIC; FLYTE TYME TUNES;<br>SUBLIME BASEMENT TUNEZ; UR-IV<br>MUSIC, INC.; WARNER-TAMERLANE<br>PUBLISHING CORP.; MARK PITTS;<br>BYSTORM ENTERTAINMENT; TOMMY<br>VAN DELL; and IN2N ENTERTAINMENT<br>GROUP, LLC,<br><br>      Defendants. | 11 Civ. 6811 (PSD)<br><br><br><br><br>BEFORE THE HONORABLE<br>PAUL S. DIAMOND |

**DEFENDANT IN2N ENTERTAINMENT GROUP, LLC'S**
**REPLY IN FURTHER SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES**

Defendant IN2N Entertainment Group, LLC ("IN2N"), by the undersigned, respectfully submits this Reply in Further Support of its Motion for Attorneys' Fees as a prevailing defendant on the copyright infringement and other claims brought by Plaintiff Daniel V. Marino ("Marino").

I.      **INTRODUCTION**

Plaintiff makes unmeritorious arguments and ignores inconvenient facts to avoid taking responsibility for the attorneys' fees and costs his actions have forced moving defendants to incur.  Contrary to the many arguments he makes in his opposition brief, his dispute with co-defendants Dante Barton ("Barton") and William Guice ("Guice") does not justify suing IN2N and 17 other defendants on obviously unmeritorious grounds.  Plaintiff's arguments should be rejected, and IN2N's and the other moving defendants' motions for attorneys' fees and costs should be granted, for the reasons described below.

II.     **THE FEE MOTIONS ARE TIMELY**

Plaintiff argues, for at least the third time, that the present motions are "premature" because no final, appealable judgment has yet been entered in the action.  (Opposition, Dkt. No. 182, 5-6 ["Opp. 5-6"].)  That argument lacks merit for several reasons.

First, this Court has already rejected the argument at least twice before.  (See Dtkt. Nos. 157, 158-59, 172.)  Plaintiff's present re-argument says nothing new.  This Court should reject the argument now for the same reasons it rejected it previously.

Second, Plaintiff's argument is contrary to the language of the relevant statute.  17 U.S.C. § 505 requires only that one be a "prevailing party" to recover attorneys' fees.  It does not require, or even mention, a final, appealable judgment before fee motions may be made.  Plaintiff's argument seeks to impose a requirement that is nowhere in the statute.

Third, Fed. R. of Civ. Proc. 54(d) does not require that a final judgment be entered before a fee motion is filed.  Rule 54(d) describes the *latest* time, not the *earliest* time, IN2N may bring such a motion.  The "14 day" rule it describes is a deadline added in 1993 to accelerate the time in which fee motions are filed, not delay them.  As the Advisory Committee's Note to the 1993 Amendment to F.R.C.P. 54(d)(B) explains:

> "Subparagraph (B) provides a deadline for motions for attorneys' fees – 14 days after final judgment unless the court or a statute specifies some other time.  One purpose of this provision is to assure that the opposing party is informed of the claim before the

time for appeal has elapsed.  Prior law did not proscribe any specific time limit on claims for attorneys' fees . . .

"Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind.  It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case."

Fed. R. Civ. Proc. 54(d) thus supports moving for attorneys' fees and costs before a final judgment is entered.

Fourth, case law affirms that an appealable final judgment is not a prerequisite to a motion for fees and costs under the Copyright Act.  Courts in this district have granted fee motions made before a judgment was entered.  *See Malibu Media, LLC v. Flanagan*, 2014 WL 2957701, *6 (E.D. Pa. 2014) (granting motion for attorneys' fees and costs made before entry of default judgment).  Other courts have expressly ruled that a defendant may be a "prevailing party" for purposes of awarding fees and costs before there is an appealable judgment.  *Comcast of Illinois X, LLC v. Jung Kwak*, 2010 WL 3781768, *2 (D. Nev. 2010) ("the court finds that here, a final judgment on the merits is not a condition precedent to obtaining attorneys' fees . . . so long as the party requesting such fees is a 'prevailing party'").

Thus, IN2N and the other moving defendants must only establish that they are "prevailing parties" to be awarded attorneys' fees and costs under the Copyright Act.

## III.    IN2N AND THE OTHER MOVING DEFENDANTS ARE "PREVAILING PARTIES" PURSUANT TO 17 U.S.C. § 505

This Court dismissed all copyright infringement and related claims Plaintiff brought against IN2N and the other moving defendants in response to 12(b)(6) and summary judgment motions.  (Dkt. Nos. 42, 48, and 154.)  Those orders and judgments make IN2N and the other moving defendants "prevailing parties" under 17 U.S.C. § 505 as a matter of law.  *Caner v. Autry*, 2014 WL 2967607, * 4 (W.D.Va. 2014)("[w]hen a court grants summary judgment to a defendant facing allegations of copyright infringement, that defendant qualifies as a prevailing

party under 17 U.S.C. § 505"); *Shelton v. MRIGlobal*, 2014 WL 1016369, * 1 (D.Colo. 2014) ("where the Court granted defendants' motion to dismiss plaintiffs' copyright claim... defendants are prevailing parties under § 505").

Plaintiff's argument that IN2N and the other moving defendants nevertheless are not "prevailing parties" because summary judgment was not granted on Plaintiff's "multiple requests for equitable relief" (Opp. 8) is nonsense.  As this Court previously noted, the "multiple requests for equitable relief" Plaintiff describes in his prayer for relief are remedies, not causes of action, and standing alone they cannot support relief against anyone.  See Dkt. No. 172; *Lorterdan Properties at Ramapo I, LLC v. Watchtower Bible and Trust Society of New York*, Inc., 2012 WL 2873648 *9 (S.D.N.Y. 2012)("a remedy itself cannot be a cause of action"); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010)(declaratory and injunctive relief "are remedies, not causes of action"); *In re Minpeco*, USA, Inc. 237 B.R. 12, 31 (Bankr. S.D.N.Y. 1997)("a remedy . . . . cannot afford an independent basis for holding [defendant] liable").  Plaintiff's "equitable relief" remedies are available only when a party prevails on a claim and shows that legal remedies are inadequate, as even the cases he cites confirm.  See Fed. R. Civ. Proc. 65; *Chiste v. Hotels.com*, supra, 756 F. Supp.2d at 407; *Pacer Schwartz,* 680 F. Supp.2d 591, 594 (S.D.N.Y. 2010)(injunctive relief a remedy, not a cause of action)*; Benefit Control Methods v. Health Care Services*, 1998 WL 961357, *2 (E.D. Pa. 1998)(accounting claim dismissed because plaintiff had an adequate remedy at law).

The only causes of action Plaintiff alleged in this action that could have supported the equitable relief he requested were his copyright infringement claims.  (Amended Complaint; Dkt. Nos. 42,48.)  Those claims were dismissed on summary judgment ( Dkt. No. 154), and once dismissed, the only possible bases for "equitable relief" against IN2N and the other moving defendants vanished.  Because there are no claims pending against IN2N, there are no "equitable relief" remedies pending against IN2N.  Plaintiff's argument otherwise, like his claims against the moving defendants, is frivolous.

IV.   **PLAINTIFF'S "BARTON AND GUICE" ARGUMENT LACKS MERIT**

Plaintiff's argument that co-defendants Barton or Guice, rather than Plaintiff, should pay the fees and costs IN2N and the other moving defendants incurred in defending this action (Opp. 6) lacks merit for several reasons.

First, such fee shifting cannot be done under the Copyright Act.  Barton and Guice did not file a copyright infringement suit against IN2N or the other moving defendants.  IN2N and the other moving defendants are not "prevailing parties" on any copyright claims brought by those co-defendants.  There is no way to require Barton or Guice to pay the attorneys' fees and costs incurred defending Marino's copyright infringement claims under 17 U.S.C § 505.

Second, it would be inequitable to make Barton or Guice pay for Marino's misconduct.  Despite his many attempts to do so, Marino cannot meritoriously blame the Court, moving defendants, or Barton and Guice for his actions.  Marino, not Barton or Guice, chose to overplead this action by filing obviously unmeritorious copyright infringement claims against multiple licensee defendants who could not be held liable for copyright infringement under basic principles of copyright law.  Marino, not Barton or Guice, chose to obstruct discovery and undertake other actions that unnecessarily multiplied these proceedings.[1]  Marino, not Barton or Guice, chose to improperly make what should have been a straightforward accounting dispute between the three of them into a federal case that needlessly squandered this Court's judicial resources and the moving defendants' financial resources.  Therefore Marino, not Barton or Guice, should pay the attorneys' fees and costs Marino's improper actions forced the moving defendants to incur.

---

[1] Marino took those actions through his lawyer, but he cannot avoid responsibility for them on that basis.  Plaintiff "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent..."  *Tuff 'N' Rumble Management, Inc. v. Profile Records, Inc.,* 1997 WL 470114, *2 (S.D.N.Y. 1997)(awarding fees against plaintiff who filed objectively unreasonable copyright infringement claim, and rejecting plaintiff's argument that his  "former attorney is to blame for the highly inappropriate conduct and frivolousness of plaintiff's positions in this case").

## V.   PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ARE OBJECTIVELY UNREASONABLE

Plaintiff's arguments that his copyright infringement claims were reasonable (Opp. 9-12) lack merit for a number of reasons.

First, Plaintiff's opposition again ignores undisputed evidence that IN2N did not engage in any allegedly infringing activity for more than three years before Plaintiff filed his complaint, and could not be liable for copyright infringement for this fundamental reason.  (See IN2N's Memorandum  in Support of Motion For Attorneys' Fees ["Memo"] 9, Dkt. No. 176 #2; Dkt. No. 114, p. 8-9 and cases cited therein; Dkt. No. 128, p. 4.)  Marino's failure to address that argument abandons the issue, and implicitly acknowledges that his claims against IN2N were frivolous on this basis alone.  *See In re Hoti Enterprises, LLP*, 2014 WL 1244779, *4 (S.D.N.Y. 2014)(failure to address an argument abandoned it); *Jain v. McGraw-Hill Companies, Inc.*, 827 F.Supp.2d 272, 280 (S.D.N.Y. 2011)(failure to respond to arguments in motion abandoned the six claims to which those arguments related); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 950 F.Supp. 895, 907 n. 11 (S.D.N.Y 1997)("the failure to provide argument on the point at issue constitutes abandonment of the issue"), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

Second, Plaintiff's opposition does not change the fact that no authority supports his argument that co-authors Barton and Guice could not grant nonexclusive licenses to "Club Girl" without Plaintiff's consent, which is contrary to basic principles of copyright law.  The one case Plaintiff cites to "support" his position, *Weinstein Co. v. Smokewood Entm't Grp, LLC*, 664 F.Supp.2d 332, 335 n. 9 (S.D.N.Y. 2009), does nothing of the sort.  *Weinstein* simply states in a footnote that a party who negotiates but fails to enter into an express license agreement has not granted an implied license.  *Id.*  That has nothing to do with this case, where Barton and Guice not only negotiated but executed express license agreements that bound them, and Marino, as Marino's co-authors.  (See IN2N's Memo. 3)

*Weinstein* also has nothing to do with the consistent case law IN2N and other moving Defendants cited which holds that a co-author's written agreement characterizing a license as "exclusive" creates a valid license that is "exclusive" as to the granting co-author, but "non-

6

exclusive" as to other co-authors.  (IN2N's Memo. 7-8.)  Every reported case holds that written agreements like those Barton and Guice signed are valid without Marino's knowledge or consent; no reported case holds otherwise.  (Id.)

Plaintiff's related argument that his unsupported position to the contrary was reasonable because *Brownstein v. Lindsey*, 742 F.3d 55, 68 (3d Cir. 2014), did not issue until after the motion was briefed is frivolous.  *Brownstein* was not a departure from previous law.  To the contrary, it is consistent with every previous reported decision to address the issue.  No reported decision has ever supported Plaintiff's position, as the Third Circuit's *Brownstein* ruling underscores.  It was objectively unreasonable, if not frivolous, of Plaintiff to rely on a position that no court has ever accepted and is contrary to fundamental principles of copyright law to "support" a complaint that forced IN2N and other moving defendants to spend hundreds of thousands of dollars in legal fees.[2]

Third, Plaintiff's argument concerning this Court's "implied license" ruling similarly lacks merit.  Despite the arguments in his brief, Plaintiff admitted being paid consideration from co-defendant Barton for the use of "Bad Girl" he consented to.  ( See Opp. 10 and n.3; see also this Court's Summary Judgment, Dkt. No. 154 p. 3.)  Plaintiff's claim that his co-authors failed to pay him additional consideration does not affect the validity of the license he impliedly granted the moving defendants.

## VI.   PLAINTIFF'S UNDISPUTED BAD FAITH SUPPORTS A FEE AWARD

Plaintiff's opposition conspicuously does not dispute that he pursued this action in bad faith by (1) obstructing discovery, and (2) attempting to mislead co-Defendant Guice so Plaintiff

---

[2] Plaintiff's additional argument that this Court "failed to read the rest of" *Brownstein* because it did not order a trial on copyright ownership (Opp. 12) is similarly meritless.  Plaintiff in *Brownstein* pleaded a declaratory relief claim of joint authorship under the Copyright Act, which remained viable until dismissed by the Court on a Rule 50(a) motion during trial.  *Brownstein*, supra, 742 F.3d at 58, 62.  Plaintiff here never pleaded such a claim, instead pleading copyright infringement claims that were dismissed on summary judgment as described above.  (Dkt. Nos. 1, 2.)  There is no right to trial on claims that have been dismissed on summary judgment.  Once summary judgment is granted, there are no viable claims against IN2N or the other moving defendants, and thus nothing to try to the Court or a jury.

could elicit favorable testimony from him while obtaining a default against him.  (See IN2N's Memo. 10.)  Plaintiff's failure to dispute his bad faith implicitly admits it as described above.  *In re Hoti Enterprises, LLP, supra*, 2014 WL 1244779 at *4; *Jain v. McGraw-Hill Companies, Inc.*, supra, 827 F.Supp.2d at 280; *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 950 F.Supp. at 907, n. 11.

Marino's undisputed bad faith pursuit of this action to obtain a recovery unrelated to the merits of this dispute further supports an award of attorneys' fees.  *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3rd Cir. 1986) (bad faith can support an increased award); *Matthew Bender & Co. Inc. v. West Pub. Co.,* 240 F.3d 116, 125 (2nd. Cir. 2001) ("bad faith in the conduct of the litigation is a valid ground for the award of fees" even if claims are objectively reasonable).

## VII.   IN2N'S REQUESTED FEES AND COSTS ARE REASONABLE

### A.      Equity Demands that Fees and Costs be Awarded

Plaintiff's argument that no fees or costs should be awarded to IN2N because it did not identify him as a co-owner of "Club Girl" in a copyright registration (Opp. 13) lacks merit for at least two reasons.

First, "[t]here is no allegation that [IN2N or the other] moving defendants knew or should have known of Plaintiff's royalty or credit issues" with Baron or Guice.  Dkt. No. 154, p. 4; *Marino v. Usher*, __F.Supp.2d __, 2014 WL 2142118, *2 (E.D.Pa. May 21, 2014).  Absent such knowledge, there was no reason for IN2N to include Marino as a co-author, and nothing "inequitable" in not doing so.

Second, "equity demands" that Marino be required to pay for the attorneys' fees and costs that his bad faith pursuit of his objectively unreasonable claims forced IN2N and the other moving defendants to incur, as described above.  See Sections IV and V, *supra*.  Plaintiff's alleged grievances against Barton and Guice do not justify his misconduct against IN2N or the other moving defendants.

**B.      IN2N Has Demonstrated That Its Attorneys' Hourly Rates Are Reasonable**

Plaintiff argues that the hourly rates IN2N paid to its attorneys are not reasonable.  (Opp. 14.)  However, he does not dispute that those rates were actually charged to and paid by IN2N in this action, does not dispute the accuracy of the <u>National Law Journal</u> survey which shows that those rates are similar to those charged by comparable Philadelphia law firms, and does not dispute the professional qualifications, experience or reputation of the attorneys who performed the work.  (Opp. 14.)  That undisputed evidence demonstrates that the hourly rates sought by IN2N are reasonable.

Plaintiff's only substantive objection to the hourly rates is to mischaracterize IN2N's requested "$800" hourly rate as too high.  (Opp. 13.)  In fact, IN2N is requesting payment of less than 14 hours of work by a single lawyer at the highest requested rate of $780, not $800.  That rate was changed by one of the leading music lawyers in the country.  (See Motion Lee Decl. ¶ 4 and Ex. E.)  That highest rate is significantly lower than the maximum partner rates of $1050 per hour charged by Cozen O'Conner, $945 per hour charged by Reed Smith, $940 per hour charged by Blank Rome, or $850 per hour charged by Pepper Hamilton and Saul Ewing.  (IN2N's Memo 16-17; Motion Lee Decl. ¶ 17 and Ex. C.)

Further, the overwhelming majority of legal work done for IN2N was at rates significantly below $780, in fact below $700, with much of the work being charged at a discounted rate of $295 per hour.  IN2N's Memo 13, 15-16; Motion Lee Decl. ¶¶ 11, 14-15; Rogers Decl. ¶¶ 8-10; Exs. A and B.)  Plaintiff's complaints about the requested hourly rates are meritless.

**C.      IN2N Has Established That The Time It Spent Defending This Action is
          Reasonable.**

Plaintiff "contests" the amount of time IN2N spent defending this action, but his only specific complaints involve the time Manatt spent in January 2012, the month in which IN2N was served with summons and complaint in this action.  Those complaints lack merit because the time spent in that month was reasonable in the circumstances of this case.

When first served herein, the attorneys representing IN2N had to review Plaintiff's 83 page Amended Complaint.  (See Dkt. No. 2.)  They had to investigate the facts alleged in that Amended Complaint, which described events that took place up to 10 years before, even though IN2N had largely ceased business operations in 2005 and thus had no current employees with knowledge of those events.  (Id; See Van Dell Depo. 175-176, Ex. C to Dkt. No. 103.)  They had to review thousands of pages of documentation to reconstruct those events (a volume of documents Plaintiff can confirm from IN2N's document production herein).  (See IN2N's Motion Ex. A [Invoice Dated February 28, 2012, for services rendered through January 31, 2012]).

Once those facts were uncovered, IN2N's counsel had to conduct legal research to evaluate the merits of Plaintiff's expansive claims, and ascertain whether there were meritorious defenses available to IN2N and to formulate a defense in this action.  Counsel had to investigate and address indemnification and other issues with co-defendants.  IN2N's regular counsel had to locate and retain local counsel.  It was reasonable for IN2N to have the attorneys involved in those efforts spend the time that they did engaging in the events described in the invoice for that month, and to incur the fees and costs shown on that invoice, for those reasons.  Plaintiff makes no other specific objection about the actions of IN2N's counsel in other months, and thus has implicitly waived any such objections.

Further, Plaintiff's complaint about the lack of "specificity" in IN2N's counsel's invoices is meritless.  Those invoices clearly describe the work that IN2N's lawyers performed on its behalf, and provide a virtual road map of IN2N's counsel's efforts on behalf of IN2N.  (Motion Lee Decl. ¶ 18 and Ex A.)

The hours spent by IN2N's counsel in defending this action are reasonable in these circumstances.

## VIII.  PLAINTIFF'S UNDOCUMENTED "NO ASSETS" CLAIMS DO NOT SUPPORT DENIAL OR DELAY OF IN2N'S MOTION

Plaintiff's argument that this Court should not award fees and costs because he "has no money" (Opp. 17) lacks merit for several reasons.

First, although Plaintiff claims to lack assets in his brief, he provides no financial statement, asset listing, income tax return, or other evidence from which this Court can evaluate what his assets and income truly are.[3]  Absent such evidence, there is no basis to determine what plaintiff's financial condition is, and his argument should be rejected.  *Contractual Obligation Productions, LLC v. AMC Networks*, Inc., 546 F.Supp.2d 120, (S.D.N.Y.2008) (court declines to consider plaintiff's claims of financial inability to pay fee award because "plaintiff has not offered any documentation, such as income tax filings or balance sheets. Since plaintiff's submissions do not establish plaintiff's inability to pay an attorney's fee award, its claim of financial hardship is insufficiently supported"); see also, *Brown v. Perdue*, supra, 2006 WL 2679936, *7 (S.D.N.Y. 2006) ("in the absence of current data that reflect, comprehensively, [plaintiff] Perdue's income and assets, his forecast of financial ruin should an award of attorneys' fees be made by the court is not convincing").

Second, Plaintiff's argument misunderstands the nature of attorneys' fee motions.  "The decision to award attorney's fees is based on whether imposition of the fees will further the goals of the Copyright Act, not on whether the losing party can afford to pay the fees."  *Harrison Music Corp. v. Tesfaye*, 293 F.Supp.2d 80, 85 (D.D.C. 2003), citing *Mitek Holdings, Inc. v. ARCE Engineering Co.*, 198 F.3d 840, 843 (11th Cir. 1999).  "A party's mere 'lack of resources is not relevant to whether an award of fees is appropriate'."  *Harrell v. Van der Plas*, 2009 WL 3756327, *7 (S.D.N.Y. Nov. 9, 2009).  Thus, many courts award fees against even *pro se*

---

[3]Plaintiff did file a "Verification" with his Praecipe (See Dkt. No. 183 p.4), but it is not adequate because 1) it does not provide the foundational facts needed to make the conclusions in his brief admissible, and 2) the conclusions in his brief that Plaintiff "verifies" are not sufficiently detailed or comprehensive to permit this Court to meaningfully evaluate his assets or income and determine whether there is a "financial disparity" present that would support a reduced fee award.

plaintiffs who pursue objectively unreasonable copyright claims without taking into account any alleged financial disparities between the parties, because doing so furthers the Copyright Act's goal of deterring objectively unreasonable suits.  *See, e.g., Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, *2 (S.D.N.Y. 2000)(awarding attorneys' fees against *pro se* plaintiff), *see also, Attia v. Society of New York Hospital*, 12 Fed.Appx. 78 (2d Cir. 2001)(affirming an award of costs and fees against a *pro se* copyright plaintiff).

Third, courts require even plaintiffs who show a significant financial disparity with a prevailing defendant to pay a significant fee award to further the purposes of the Copyright Act.[4] For example, a plaintiff who proved an average annual income of $1200 was ordered to pay $10,000 in fees.  *Gordon v. McGinley*, 2013 WL 1455122, *4 (S.D.N.Y. 2013).  A plaintiff who proved an annual income of $7,124 was ordered to pay $40,000 in legal fees.  *Muller v. Twentieth Century Fox Film Corporation*, 2011 WL 3678712, *4 (S.D.N.Y. 2011).  Such awards are necessary to deter the filing of objectively unreasonable claims, and thereby further the purposes of the Copyright Act.  Id.

Finally, Plaintiff's request to "delay" ruling on this motion should be rejected. No authority supports such a request.  Any delay is contrary to the policies encouraging prompt disposition of fee motions embodied in Fed. R. Civ. Proc. 54(d) as described above.  As contemplated by that rule, this Court should consider and rule on the fee requests now so that any appeal of this Court's fee rulings can be considered together with the merits appeal Plaintiff has already filed or will file, rather than after any merits appeal is concluded.

---

[4] There is no such "disparity" here regardless of Plaintiff's financial condition, because IN2N has no assets.  It lost all of its assets in a 2005 foreclosure by a creditor, and at present it barely exists as a legal entity.  (Van Dell Depo. 175-176, Ex. C to Dkt. No. 103.)

## IX.    <u>CONCLUSION</u>

IN2N's motion for fees and costs should be granted for all the reasons stated in its motion and this reply.

Dated:  August 18, 2014                    Respectfully submitted,


/s/ Mark S. Lee
_____
Mark S. Lee
admitted *pro hac vice*
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
phone:  (310) 312-4000
fax:  (310) 312-4224
email:  mlee@manatt.com


/s/ Lance Rogers
_____
Lance Rogers
Rogers & Associates, LLC
26 E. Athens Ave.
Ardmore, PA  19003
Telephone:  (610) 649-1880
Fax:  (877) 649-1800
email:  lance@rogerscounsel.com

*Attorneys for Defendant IN2N*
*Entertainment Group, LLC*