IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL MARINO, : | |
|         Plaintiff, : | |
| : | |
| v. : | Civ. No. 11-6811 |
| : | |
| USHER, et al., : | |
|         Defendants. : | |

### O R D E R

On May 21, 2014, I granted Defendants' Motion for Sanctions against Attorney Francis Malofiy, stemming from his misconduct in connection with unrepresented Defendant William Guice. (Doc. No. 152.) Because Mr. Malofiy's misconduct necessitated a second Guice deposition session, I ruled that Defendants were entitled to reasonable attorneys' fees and costs incurred as a result of that second deposition session. (Doc. No. 153.) Defendants have submitted an itemization of fees and costs and supporting documents. (Doc. Nos. 161, 162.) Defendant IN2N seeks $48,382.68 in fees and costs (including almost $40,000 incurred in preparing and litigating the Motion for Sanctions). (Doc. No. 161.) Defendants Sony Music Entertainment, Usher Raymond IV, EMI April Music Inc., EMI Blackwood Music Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc., Bystorm Entertainment, Mark Pitts, Issiah Avila, Bobby Ross Avila, Sublime Basement Tunez, Defenders of Music, Flyte Tyme Tunes, James Samuel Harris III, and Terry Steven Lewis ("Sony Defendants") seek $25,853.38 in fees and costs. (Doc. No. 162.)

Mr. Malofiy, who is represented by counsel, argues—mostly without explanation or reason—that the requested fees and costs are unnecessary or excessive. Because I largely disagree, I will grant Defendants' Motions in part, awarding IN2N $8,558.16 in fees and costs

and the Sony Defendants $19,708.38 in fees and costs.  I will stay my Order, pending a determination of Mr. Malofiy's purported inability to pay the fees and costs sought.

Although I have reviewed all claimed fees and costs (and supporting documentation), I will address here only those fees and costs to which Mr. Malofiy objects.  Insofar as IN2N seeks fees and costs associated with preparing and litigating the sanctions motion—some $39,824—I will deny the request.  (Doc. No. 161.)  I have provided Mr. Malofiy with particularized notice that I would award Defendants only "the increased attorneys' fees, costs, and expenses arising from the second day of William Guice's deposition."  (Doc. No. 153); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 191 (3d Cir. 2002) (due process requires court to provide particularized notice of the precise sanction the court intends to impose).  Accordingly, I may not impose the additional sanctions IN2N seeks.

Attorneys' Fees

In evaluating a claimed fee, I must employ the "lodestar method": I will determine the appropriate billing rate for each attorney as well as the number of hours each attorney should reasonably have expended on each action.  See Blum v. Stenson, 465 U.S. 886, 888 (1984) (citing Hensley v. Eckerhart, 461 U.S. 424 (1983)); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

### *Hourly Rates*

IN2N is represented by Manatt, Phelps & Phillips, LLP and Rogers & Associates, LLC. (Doc. No. 161.)  IN2N seeks fees and costs only for the following Rogers & Associates attorneys: Lance Rogers, who was admitted to practice law in Pennsylvania in 2001, Bruce Castor, who was admitted to practice in Pennsylvania in 1986, and Kent Conway, who was admitted to practice in Pennsylvania in 2001.  Each attorney billed at a discounted local counsel

hourly rate of $295. (Id.)

Mr. Malofiy opines, without any explanation, that the $295 hourly rate "seems excessive." (Doc. No. 165.) I disagree. Although IN2N has not demonstrated that $295 per hour is the prevailing rate for attorneys of similar skill and experience in Philadelphia—an issue that Mr. Malofiy does not address—I find that this requested rate is reasonable and, indeed, is lower than the prevailing rate for attorneys with similar background and experience in the Philadelphia area. See, e.g., Washington v. Phila. Cnty. Court of Common Pleas, 89 F.3d 1031, 1036 (3d Cir. 1996) (when movant fails to demonstrate that the requested rates were the prevailing rates in the community, the district court must exercise its discretion in fixing a reasonable hourly rate). The Community Legal Services fee schedule—which is now over three years old—sets out a range of $260 to $335 for attorneys with comparable skill and experience. Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001) (relying on CLS fee schedule to determine prevailing market rates in Philadelphia); see also Mary Courtney T. v. Sch. Dist. of Phila., No. 06-2278, 2009 WL 185426, at *3 (E.D. Pa. Jan. 22, 2009) (cautioning that "the CLS schedule does not take into account any specialized skills or experience the attorneys bring to their practice").

The Sony Defendants are represented by New York City-based Jonathan D. Davis, P.C. and Philadelphia-based Fox Rothschild, LLP. (Doc. No. 162.) The Defendants seek attorneys' fees and costs only for the Davis firm. Jonathan D. Davis, admitted to practice law in New Jersey in 1982, billed at an hourly rate of $500. Derek A. Williams, admitted to practice in New York in 2005, billed at an hourly rate of $425. (Id.)

Mr. Malofiy protests that these rates "seem very excessive under the circumstances." (Doc. No. 166.) I do not agree. The rates requested for Messrs. Davis and Williams are similar

3

to those charged in Philadelphia by attorneys with comparable skill and experience. Messrs. Davis and Williams have been practicing specialized copyright law for quite some time. (Doc. No. 162.) The CLS rates thus do not provide an accurate indication of the rates for similarly skilled and experienced attorneys practicing specialized copyright litigation. See, e.g., Jama v. Esmor Corr. Servs., Inc., 577 F.3d 169, 181 (3d Cir. 2009) (in specialized case, fees ranging from $600 for a partner to $205 for a first-year associate were reasonable); Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 195 Fed. App'x 93, 97 (3d Cir. 2006) (holding, in 2006, that hourly rates up to $550 were reasonable); In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., MDL No. 1871, 2012 WL 6923367, at *10 (E.D. Pa. Oct. 19, 2012) (noting that partners in large Philadelphia firms routinely bill between $700 and $900); In re Budeprion XL Mktg. & Sales Litig., MDL No. 2107, 2012 WL 2527021, at *22 (E.D. Pa. July 2, 2012) (approving hourly rates of $225 to $700 for lead counsel and partners and $200 to $400 per hour for associates); Ripley v. Sunoco, Inc., No. 10–1194, 2012 WL 2402632, at *12 (E.D. Pa. June 26, 2012) (approving hourly rates of $600 per hour for partners and $300 per hour for associates); Chakejian v. Equifax Info. Serv., LLC, 275 F.R.D. 201, 216 (E.D. Pa. 2011) (approving hourly rates of $485 to $700 for partners and $125 to $175 for paralegals); Serrano v. Sterling Testing Sys., Inc., 711 F.Supp.2d 402, 422 & n. 13 (E.D. Pa. 2010) (holding that hourly rates up to $650 for attorneys were reasonable); Aerogroup Int'l, Inc. v. Ozburn–Hessey Logistics, LLC, No. 08-4217, 2011 WL 1599618, at *2–3 (D.N.J. Apr. 27, 2011) (rates of up to $625 for partners and $340 for associates are within the arena of reasonable rates); Nat'l Elec. Benefit Fund v. Starko Elec. Servs., Inc., No. 06-1446, 2010 WL 1049980, at *4 (D.N.J. Mar. 16, 2010) (rates up to $650 for partners and $425 for associates are reasonable); see also Yash Raj Films (USA) Inc. v. Rannade Corp., No. 01-5779, 2007 WL 1456193, at *12 (D.N.J. May 17, 2007) (awarding claimed hourly

rate in copyright litigation because of "this specialized area of the law").

### *Hours Expended*

IN2N seeks attorneys' fees for 21.8 total attorney hours incurred in connection with the second day of Mr. Guice's deposition. (Doc. No. 161.) Sony seeks fees for 48.5 total attorney hours. (Doc. No. 162.)

Once again, Mr. Malofiy's challenge to the hours claimed is less than clear. Without discussion or explanation, he labels all the claimed hours as "excessive." This is insufficient to impugn an otherwise reasonable fee request. Bell v. United Princeton Props., Inc., 884 F.2d 713, 715 (3d Cir. 1989) (the party opposing the claimed fee must do so with specificity); id. at 720 (court may not "decrease a fee award based on factors not raised at all by the adverse party"). For the same reason, merely suggesting (again, without explanation) that the fee awards should be "in the range of $5,000" for each attorney is insufficient. (Doc. Nos. 165, 166.) I find that Defendants have met their burden in establishing that the hours expended were reasonable. Rode, 892 F.2d at 1183 ("The party seeking attorney's fees has the burden to prove that its request is reasonable.").

Beginning with the hours billed in May 2013 for rescheduling the deposition, Mr. Malofiy complains that the fees "seem very excessive" and cannot be attributed to Mr. Malofiy. (Doc. No. 166.) I agree in part. Messrs. Rogers and Conway together billed 3.3 hours for rescheduling the deposition. (Doc. No. 161.) Messrs. Davis and Williams together billed 24.6 hours for rescheduling the deposition. (Doc. No. 162.) It appears that Mr. Rogers was on vacation during this period. (Doc. No. 161.) Additional hours were expended by Messrs. Davis and Williams on what should have been a simple task because Mr. Malofiy's obstructionist conduct compelled the Parties to seek two Court Orders related to the deposition rescheduling.

(See Doc. Nos. 76-81.) Still, it does not appear that 24.6 hours were necessary. Accordingly, I will reduce that total to 12 hours: 3 hours for Mr. Davis and 9 hours for Mr. Williams. As I ruled in granting Defendants' Motion for Sanctions, the time incurred rescheduling is plainly attributable to Mr. Malofiy, whose reprehensible conduct caused the abrupt termination of Mr. Guice's deposition, necessitating a second deposition session.

Mr. Davis spent 8.5 hours preparing for Mr. Guice's second deposition session and traveling from New York to Denver, where the deposition took place. Mr. Davis spent 11.4 hours on final preparation, the deposition itself, and his return travel to New York. (Doc. No. 162.) Mr. Williams billed 4 hours for reviewing the transcript of the second deposition. (Id.) Mr. Rogers spent 8.5 hours preparing for the second deposition session and travelling from Philadelphia to Denver. (Doc. No. 161.) Mr. Rogers spent 10 hours attending the deposition and travelling back to Philadelphia. (Id.) Although Mr. Malofiy argues—again, without explanation—that the hours were "excessive," I do not agree. Defense Counsel contend—and Mr. Malofiy does not dispute—that they spent a substantial portion of their travel time preparing for the multi-issue deposition of a critically important witness, requiring them to familiarize themselves with the transcript from Mr. Guice's first deposition and to reacquaint themselves with the facts and documents of the case. (Doc. No. 174 at 2 & n.1.) Combined with the time spent on air travel between the East Coast and Denver, the hours incurred were reasonable.

Mr. Malofiy protests that the second day of Mr. Guice's deposition took place in Denver and not in Philadelphia. (Doc. No. 165.) Yet, there is no indication in the record that Mr. Malofiy objected when the Denver location was first proposed. Moreover, as I discussed at length in granting Defendants' sanctions motion, Mr. Malofiy's outrageous conduct alone caused the abrupt termination of Mr. Guice's Philadelphia deposition session. The record shows that

Mr. Guice could not afford to travel to Philadelphia or pay for a hotel here. It was thus entirely appropriate to resume the deposition in Mr. Guice's city of residence, Denver, thus sparing him the expense, inconvenience, and indignity of a resumed Philadelphia deposition.

I also reject Mr. Malofiy's complaint that counsel should not have billed their full rate for travel time. Courts have reimbursed attorneys at both their full rates and reduced rates for travel time. Compare Posa v. City of East Orange, No. 03-233, 2005 WL 2205786, at *5 (D.N.J. Sept. 8, 2005) (allowing travel time at fifty percent of hourly rate) and Haberern v. Kaupp Vascular Surgeons, Ltd., 855 F. Supp. 95, 100 (E.D. Pa.) (reimbursement for attorney travel time allowed in this ERISA case at a 50% reduced hourly rate), vacated in part on other grounds, 24 F.3d 1491 (3d Cir. 1994), with Arietta v. City of Allentown, No. 04-226, 2006 WL 2850571, at *5-6 (E.D. Pa. Sept. 29, 2006) (compensating travel time at full hourly rate and concluding that "[b]ecause an attorney who is traveling may not meet with other clients or perform other legal work, we find that it is appropriate that the attorney should be able to bill at his standard hourly rate") and Rush v. Scott Specialty Gases, Inc., 934 F. Supp. 152, 156, order clarified, 940 F. Supp. 814 (E.D. Pa. 1996) (allowing travel time at full rate finding that "the attorney loses opportunity time by traveling to trial and should be compensated for that time as much as time spent otherwise on the client").

Here, Defense Counsel travelled to Denver solely for the Guice re-deposition, which was necessitated by Mr. Malofiy's misconduct. Moreover, it appears that the lawyers prepared for the deposition while traveling. (Doc. No. 162.) In these circumstances, it is reasonable to compensate Defense Counsel for travel at their full hourly rate.

Finally, Mr. Malofiy complains that the time sheets of Messrs. Davis and Willaims are redacted. (Doc. No. 165.) A comparison of those time sheets and the tables contained in the

Motion itself make plain that Defense Counsel have redacted only those entries for which they are not seeking fees or costs.  (Compare, e.g., Doc. No. 162 at 6 (requesting fees for 2 hours on May 2, 2013) with Doc. No. 162-2 at 3 (billing clients for 11.8 hours for May 2, 2013) and Doc. No. 162 at 6 (requesting fees for 1.5 hours for drafting a revising a letter on May 7, 2013) with Doc. No. 162-2 at 3 (billing clients for 8.5 hours on May 7, 2013).)  Thus, the redacted bills are permissible because they are not relevant to sanctions against Mr. Malofiy and do not prevent me from judging the reasonableness of the hours expended.

Costs

IN2N and the Sony Defendants seek compensation for costs they incurred in connection with the second Guice deposition session.  IN2N seeks $2,127.44; Sony seeks $2,833.38.  (Doc. Nos. 161, 162.)  The costs cover airfare, lodging, parking, meals, taxis, and related costs.  I find that the costs were reasonable and properly compensable.

Ability to Pay

Finally, Mr. Malofiy alleges that the claimed fees and costs would be "extremely punitive and burdensome" and "could affect his ability to practice law."  See, e.g., Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 196 (3d Cir. 1988) (in Rule 11 context, "courts must be careful not to impose monetary sanctions so great that they are punitive—or that might even drive the sanctioned party out of practice."); Oliveri v. Thompson, 803 F.2d 1265, 1281 (2d Cir. 1986) (in § 1927 context, "it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay"); Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1199 (10th Cir. 2008) (same); but see Shales v. Gen. Chauffeurs, Sales Drivers & Helpers Local Union No. 330, 557 F.3d 746, 748 (7th Cir. 2009) (district court should not consider ability to pay in fashioning § 1927 award).

Once again, Mr. Malofiy offers no support for his allegations. Moreover, I have greatly reduced the monetary awards to Defendants. In an abundance of caution, however, I will allow Mr. Malofiy to demonstrate his inability to pay the awards. Defendants may take interrogatory, document, and deposition discovery from Mr. Malofiy limited to his ability to pay the claimed fees and costs.

**AND NOW**, this 28th day of August, 2014, it is hereby **ORDERED** that the following fees and costs are reasonable and compensable:

<u>IN2N Fees and Costs</u>

May 2013 Fees: $973.00

June 2013 Fees: $5,457.50

Costs: $2,127.66

| | |
|---|---|
| Taxi | $65.15 |
| Hotel & Food | $410.22 |
| Taxi | $30.00 |
| Airfare | $915.20 |
| Wifi | $18.95 |
| Lunch | $2.95 |
| Coffee | $2.38 |
| Lunch | $26.91 |
| Parking | $40.00 |
| Transcript | $615.90 |

Total Fees and Costs: $8,558.16

<u>Sony Defendants Fees and Costs</u>

May 2013 Fees: $5,325.00

June 2013 Fees: $11,550.00

Costs: $2,833.38

Total Fees and Costs: $19,708.38

I will stay payment of these awards pending a determination of Mr. Malofiy's ability to pay them. Accordingly, it is **FURTHER ORDERED** that Mr. Malofiy shall submit to interrogatory, document, and deposition discovery regarding his ability to pay these fees and costs. That discovery shall be completed by September 29, 2014. If the Parties cannot agree upon a discovery schedule, they shall notify me immediately. The Parties shall submit to me by October 8, 2014 any additional briefing on the subject of Mr. Malofiy's ability to pay fees and costs.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.