UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL V. MARINO, *Plaintiff* <br><br> v. <br><br> USHER, *et al.*, *Defendants* | NO.: 11-CV-06811 <br><br> BEFORE THE HONORABLE PAUL S. DIAMOND |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF ON ABILITY OF PLAINTIFF TO PAY COSTS AND FEES

This Court, after imposing over $1 million in costs and fees on Plaintiff, permitted Defendants to take discovery of Plaintiff to determine his ability to pay those costs and fees. Plaintiff turned over every piece of relevant information and fully complied in every possible way with this Court's order. Plaintiff held back nothing regarding his financial history. The documentation he turned over, and his testimony in his deposition, establish beyond any doubt that Mr. Marino has no ability to pay the costs and fees in question. He simply does not have any major assets or savings.

Defendants have submitted a supplemental brief on this issue after completing discovery. It is a document full of regrettable and completely false ad hominem attacks on Plaintiff's honesty and openness in the discovery process. However, this brief largely avoids answering the central question it was supposed to be addressing: Whether Plaintiff has the ability to pay costs and fees. **Defendants' brief does not—and cannot—seriously contest that Mr. Marino does not have the ability to pay any amount of costs and fees**.

Plaintiff also notes that Defendants engaged in extremely inappropriate argument in their brief. Defendants included a section which is nothing more than a naked exhortation to Plaintiff to sue his attorney for malpractice. Whatever has previously happened in this case, such argument is reprehensible and has no place in a legal brief. Plaintiff asks that this section be stricken.

*****

I.   PLAINTIFF IS NOT WEALTHY

Plaintiff has no assets to speak of. The value of his liabilities far exceed his assets. Mr. Marino also owns a house in Springfield, PA, for which he is upside-down on the mortgage.[1] See Plaintiff's Answers to Interrogatories and Document Production. Currently, Mr. Marino's checking account has $52.84; his savings account has $1,027.31; and the bank account that he has with his wife has $15,654.49 (separate marital property which cannot be considered regarding Mr. Marino's ability to pay).

Plaintiff works each week to earn a salary to pay his bills. He earns approximately $70,000 a year working for mPower Trading Systems as a client services representative. Marino Deposition, at p.76. He only has a high school education. Id. at p.50–51. His wife earns approximately $32,000 a year doing administrative work for a real estate company called Alterra.[2] Id. at p.80. The amount his wife makes, albeit relatively modest, likewise, cannot be considered regarding Mr. Marino's ability to pay. See Plaintiff's Answers to Interrogatories and Document Production.

Plaintiff does co-own a company named Fuzztone, which was in operation for 2011, 2012, 2013, 2014 but has been winding down. Fuzztone, however, far from making money, lost money year after year—to the detriment of Mr. Marino who invested a substantial amount of time and money into the corporation. Id. at p.126. In 2012, Fuzztone received $25,000, *but the company still reported an annual loss*. Id. Indeed, the tax returns for Fuzztone—which were all provided to Defendants despite their claims the production was incomplete—verify that it lost money every year it was in operation. See Plaintiff's Answers to Interrogatories, specifically No. 8.

Mr. Marino also received approximately $48,000 in a workers' compensation settlement in February 2012 for serious and permanent injuries (which cannot be considered regarding Mr. Marino's ability to pay). See Plaintiff's Answers to Interrogatories and Document Production (Marino 620-631). Mr. Marino and his wife own a pickup truck, a Honda Civic, and a salvaged

---

[1] The house was appraised in 2013 for $161,000, and there is a mortgage on the house for $188,000. Marino Depo., at p.228. Defendants complain that Mr. Marino's appraisal is "outdated." Def. Supp. Brief, at p.8. Plaintiff does not get his house appraised annually.

[2] Defendants claim that Plaintiff could not remember the name of his wife's company, implying he is somehow being evasive or difficult. Def. Supp. Brief, at p.7. The truth is far more mundane: Plaintiff recalled his wife's company after a moment's thought because the company just changed its name. Marino Depo., at p.80. Defendants' claim to the contrary is simply not true—a "gotcha" tactic without merit—as a review of the transcript amply demonstrates.

Harley Davidson motorcycle that currently does not run. See Plaintiff's Answers to Interrogatories and Document Production. His wife owns the house they live in, in South Philadelphia, which is in an area that, to put it charitably, has not gentrified.

In other words—despite Defendants' incorrect attempts to characterize Plaintiff's financials as "very comfortable"—he and his wife are not wealthy individuals. In truth, **Plaintiff's liabilities are far greater than his assets.** Plaintiff's Answers to the Interrogatories and production of Documents provided regarding his financial situation are comprehensive and demonstrate that he, for all intents and purposes, is broke. Defendants' claims that "he can afford to maintain a very comfortable lifestyle" are highly misleading, and when they state that the fees and costs to be awarded "are not 'excessive in light of the plaintiff's resources,'" they are making a demonstrably false statement. Def. Supplemental Brief, at p.5.

## II. Plaintiff Made Complete Disclosure, Disclosing Far More than He was Required

Defendants claim that Plaintiff's production in discovery was less than complete. Id. at p.2. This is completely false. In fact, Plaintiff turned over far more than he was required to in the interest of transparency. For instance, he produced information concerning:

- His wife's financial records and their joint martial accounts, which are completely off-limits in terms of determining Plaintiff's ability to pay costs and fees.

- Information concerning a personal injury he had that resulted in a workers' compensation settlement, which are off limits.

- Information concerning insurance money he received after a flood damaged his house, which are off limits.

Plaintiff disclosed this information to illustrate that, regardless of what metric or records are used to evaluate his financial position, he simply does not have the ability to pay the costs and fees imposed by the Court.

## III. Defendants Failed to Download the Hundreds of Pages of Discovery Propounded Upon them—Only Realizing at Plaintiff's Deposition that They Bungled the Download.

Defendants' claims that Plaintiff failed to produce discovery are less than credible in light of the fact that during Plaintiff's deposition it became apparent that Defendants failed to download all of the documents produced to them. Marino Depo., at p.148–150 and p.212-223. Any failure to develop discovery issues lies with Defendants, not Plaintiff—who made every effort to comply with the discovery ordered by this Court.

### Defendants Failed to Properly Download Tax Returns, Insurance Documents, Personal Injury Documents, and Loan Modification Documents and Inaccurately Claim that Plaintiff Failed to Produce Them.

MR. ROGERS:
    Q.    Mr. Marino, let's take a look at Marino-5. That's an -- this is the tax information we received from you for 2013. **Missing from this document is your 1040 or at least the first page or two. We didn't receive any -- we didn't receive a first or a second page of a 1040.**

\*\*\*

MR. MALOFIY:    <u>I think you guys just made bad copies.</u>

\*\*\*

MR. MALOFIY:    I'll see what I can do. Perhaps we can run through whatever it is, in the end, you guys feel you don't have and see if it is in my document. I know it was produced; the whole series was produced. <u>It must have been a mistake in collecting. It must have been a mistake in collecting the documents on your [Defense Counsels'] part.</u>

Marino Depo., at p.148–150.

MR. DAVIS:
    Q.    And you submitted a claim to your insurance company?
    A.    Yes.
    Q.    I ask for production of the claim that you submitted with the insurance company.
MR. MALOFIY:    <u>I believe we did produce all that. I think maybe you guys didn't print all the documents. Maybe sloppy production. You didn't download it. If you look through the series, you should have been able to look at the PDFs, which were 1 through 631.</u>
MR. DAVIS:    So it's your belief that the claim -- that was submitted was produced?
MR. MALOFIY:    Absolutely. I believe so.
MR. DAVIS:    We'll check that. We'll check that. If you did it you did it. If you didn't, we will ask for it.

\*\*\*\*\*

MR. DAVIS:    And it's your belief that all of that information was produced?
MR. MALOFIY:    Yes.
MR. DAVIS:    I request to the extent that you have omitted any of that information or those documents, that it be produced.

| | |
|---|---|
| MR. MALOFIY: | Look through your production. The full production, not excerpts, and if you're not satisfied, let me know. |
| MR. DAVIS: | It's not a question of being dissatisfied. It is the extent that you produced everything pertaining to that claim, just as I'm asking for everything that's nonprivileged with respect to the personal injury claim. |
| MR. MALOFIY: | <u>Please review the documents. If -- once you review them, if you have an issue, please let me know.</u> |
| MR. DAVIS: | I didn't see anything related to the case file with respect to the personal injury action. |
| MR. MALOFIY: | <u>Well, you haven't looked at the documents, Mr. Davis, with all due respect.</u> |

\*\*\*

| | |
|---|---|
| MR. MALOFIY: | You never had a -- you knew there was 631 documents. I told you the production produced to you. You had plenty of time to download it. If you had a problem, you should have let me know. |

\*\*\*\*\*

| | |
|---|---|
| MR. MALOFIY: | <u>Let's be clear. I produced these things. If you don't have them, that's not my fault. I did produce them. Now, you're asking for what?</u> |
| MR. DAVIS: | The personal injury file. |

\*\*\*

| | |
|---|---|
| MR. DAVIS: | So if you have them there, Mr. Malofiy, just let me see them, and then we stand corrected that you did produce them, but I didn't recall seeing anything with respect to the personal injury case. |
| MR. MALOFIY: | We did produce things pursuant to the personal injury case. Marino620 to Marino -- |
| MR. DAVIS: | 620? |
| MR. MALOFIY: | Yes. To Marino631. Pictures of his injuries and, then, additional documents. |
| MR. DAVIS: | I'm sorry. |

\*\*\*\*\*

MR. DAVIS:
- Q. All right. You have a mortgage on the Greenbriar Lane residence?
- A. Yes.
- Q. You previously testified that the loan was modified pursuant to a government program; is that correct?
- A. Yes.
- Q. Do you have the paperwork with respect to that modification?

| | |
|---|---|
| MR. MALOFIY: | <u>Again, I would say we produced all the paperwork related to the modification. They were all in the document -- the document and in his document production.</u> |
| MR. DAVIS: | Even the modification of the original mortgage? |
| MR. MALOFIY: | <u>The original mortgage, the modification, the hardship letter, everything was collected -- was part of it. I'll represent for the record it was document production Marino474 to Marino537. Yes, 75 pages.</u> |
| MR. DAVIS: | Okay. Thank you. |

Marino Depo., at p.212-223.

## IV. Defendants' Accusations Plaintiff is Being Dishonest in His Discovery Answers are Absolutely False

Defendants begin their brief by complaining that Plaintiff "misrepresented and/or intentionally omitted facts about his financial circumstances." Def. Supplemental Brief, at p.2. This is categorically false—not having absolute recall of every financial detail regarding Plaintiff's life in the past three years is not grounds to accuse him of dishonesty. It is furthermore unclear exactly what Defendants believe Plaintiff misrepresented. Defendants had the ability to seek motions to compel information they thought were missing, **but chose not to do so**. This is an indication that Defendants' accusations are nothing more than rhetoric. Again, Plaintiff turned over everything about his financial situation and is hiding nothing. The idea that he was being evasive or trying hide anything is completely unsupported.

## V. Request to Strike

Defendants' devoted a full quarter of their brief on Plaintiff's ability to pay the costs and fees imposed by the Court on why and how Plaintiff should sue his attorney for malpractice. Not only is this matter completely irrelevant to the issue at hand, but it is grossly inappropriate argument. Plaintiff asks that the Court strike this section and require Defendants to file their supplemental brief without this material.

*Respectfully submitted,*
Francis Alexander, LLC

*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

*/d/ February 4, 2015*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF ON ABILITY OF PLAINTIFF TO PAY COSTS AND FEES has been ***Filed Under Seal***, served upon all appropriate counsel of record via electronic mail:

JONATHAN D. DAVIS, P.C.
Jonathan D. Davis, Esquire
Derek A. Williams
99 Park Avenue | Suite 1600
New York, NY 10016
T:  (212) 687-5464
E: jdd@jddavispc.com
E: DAW@jddavispc.com

FOX ROTHSCHILD, LLP
Michael Eidel, Esquire
Matthew Olesh, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103
T:  (215) 299-2000
E: MEidel@foxrothschild.com

*Attorneys for Defendants*
*Usher Raymond IV a/k/a Usher ("Usher"), Sony Music Entertainment, EMI April Music, Inc., EMI Blackwood Music, Inc., Warner-Tamerlane Publishing Corp., UR-IV Music, Inc., Bystorm Entertainment, Mark Pitts, Issiah Avila, Jr., Bobby Ross Avila, Jr., Sublime Basement Tunez, Defenders of Music, Flyte Tyme Tunes, James Samuel Harris III, and Terry Steven Lewis*

MANATT, PHELPS & PHILLIPS, LLP
Mark S. Lee, Esquire
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
T:  (310) 312-4000
F:  (310) 312-4224
E:  mlee@manatt.com

Rogers & Associates, LLC
Lance Rogers, Esquire
25 Elliot Avenue
Bryn Mawr, PA 19010
T:  (610) 649-1880
F:  (877) 649-1800
E:  lance@rogerscounsel.com
*Attorney for Defendant*
*IN2N Entertainment Group, LLC ("IN2N")*


\*\*\*\*\*

*Respectfully submitted,*
Francis Alexander, LLC

*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

*/d/ February 4, 2015*